# STATEMENT OF FACTS

Your affiant, Rosemaria Marketos, is a Special Agent of the Federal Bureau of Investigation. Currently, I am tasked with investigating criminal activity in and around the Capitol grounds on January 6, 2021. As a Special Agent, I am authorized by law or by a Government agency to engage in or supervise the prevention, detention, investigation, or prosecution of a violation of Federal criminal laws.

The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification were allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

Following this incident, I reviewed several open source videos in addition to video footage provided by the U.S. Capitol Police depicting the breach of security at the Capitol and several indoor areas where violators were observed.

Upon review of the video footage obtained from U.S. Capitol Police, at approximately 14:17:53, a male wearing a dark colored jacket, a black and tan fur-lined hat, and a black shirt with a yellow and red label on the front ("the Subject Male") was observed entering through the window of the Senate Wing entrance to the Capitol. Below is a screen capture taken from the aforementioned video footage.



The U.S. Capitol Police video footage also shows the Subject Male inside the Main Door Hall at approximately 14:40:24 where he and other violators forced their way past U.S. Capitol Police personnel. The Subject Male was wearing the same black and tan fur-lined hat, dark rimmed glasses, dark pants and the same black shirt with yellow and red logo on the front of it. The logo on the shirt reflects the label "Pirelli" with a "Nike" label on the right-side and an Inter-Milan Soccer Team logo on the left side of it. It is noted, during this time period of the footage, the Subject Male was not wearing the dark colored jacket he was wearing when he first entered the U.S. Capitol. The Subject Male was wearing a gray colored backpack around his shoulders. The Subject Male's demeanor appeared agitated as he walked down the hallway toward the East stairs. The Subject Male then walked toward a U.S. Capitol Police security official wearing a suit and an unknown female. The Subject Male immediately bypassed the female and got close to the U.S. Capitol Police official's face. Below are screenshots captured from the footage showing the Subject Male in these areas within the U.S. Capitol.







Several open source videos were reviewed by your affiant which also show a large, aggressive crowd, including the Subject Male, trying to breach a barricaded door to the Speaker's Lobby, a hallway that connects to the House of Representatives chambers. The words "Speaker's Lobby" are visible at the top of the doors. Chairs, visible through the door's glass panels, were used to barricade the door from the inside of the Speaker's Lobby. The door was guarded by three Capitol Police officers in front.

Videos depicting this entrance to the Speaker's Lobby captured the shooting of a woman identified as Ashli Babbitt. A closer vantage point of the Subject Male showed that the black and tan fur-lined hat had a "Canada Goose" label and that he also wore a red baseball hat underneath the fur-lined hat; he also had dark rimmed glasses and a black mask positioned down on his chin. The Subject Male was observed repeatedly punching the glass panels of the doors immediately behind the officers, causing the glass to splinter. While throwing two of the punches, the Subject

5

Case 1:21-cr-00190-DLF   Document 1-1   Filed 01/25/21   Page 6 of 15

Male pushed his body up against one of the Capitol Police officers guarding the door. Members of the crowd were shouting and gesticulating at the officers. The Subject Male is in video footage shouting "Fuck the blue" multiple times in the faces of the U.S. Capitol Police officers who were standing post outside the Speaker's lobby door. Additional officers in riot gear arrived behind the crowd at the Speaker's Lobby doors, and the three officers guarding the door appeared to move to the adjacent wall.

Seconds after the officers stepped away from the doorway, the Subject Male began kicking the glass panels of the Speaker's Lobby door. Shortly thereafter, he took a black-colored helmet from an individual with a yellow "Don't tread on me" flag, took off his fur-lined hat and red baseball hat, and violently struck the middle glass panel repeatedly with the helmet, further shattering the window. The Subject Male then smashed the window panel on the right with the helmet.. Chants could be heard of "Break it down!" and "Let's fucking go!" Babbitt was shot while attempting to climb through one of the shattered windows. After the shot, the Subject Male backed away toward the stairwell next to the U.S. Capitol Police tactical unit. The Subject Male put the helmet on and wore it as he stood on the steps of the stairwell. Still images from the video are produced below.



6



























On January 12, 2021, a FBI poster was posted to various social media platforms seeking public assistance in identifying the Subject Male. On January 13, 2021, the Subject Male was also included on a FBI "BOLO" (Be On The Lookout) which captured his photo as "BOLO #79."

On January 14, 2021, an anonymous tip to the FBI National Threat Operation Center ("NTOC") identified BOLO #79 as the tipster's "family member," Zachary ALAM, providing ALAM's age, phone number, email address, and other identifying information.

FBI agents later retrieved a driver's license photo of Zachary Jordan ALAM and determined the individual depicted in the driver's license matched the appearance of the Subject Male. FBI agents also viewed a Youtube channel and Facebook profile of ALAM based on the name provided by the tip and determined that the photos in the account matched the Subject Male.

On January 19, 2021, Witness-1 (hereinafter "W-1") submitted a tip, including his/her contact information, to the FBI NTOC identifying BOLO #79 as his/her relative, Zachary ALAM, providing ALAM's age, approximate location, and a phone number ALAM recently used to call W-1.

On January 24, 2021, the FBI interviewed W-1, who provided the following information.

W-1 stated that W-1 had submitted the anonymous tip on January 14, 2021, before following up with the tip on January 19.

W-1 positively identified ALAM, W-1's relative, as the male depicted in BOLO #79. W-1 also was shown several photographs from video footage of the Capitol events described above and identified the Subject Male s ALAM, W-1's relative. One of the aforementioned photographs depicts a tattoo "2020" on the Subject Male's inner left arm. W-1 reviewed the photograph with the partial "2020" and advised agents that ALAM has such a tattoo and that it states in full, "$250k

in 2020." W-1 circled the area and provided his/her initials as confirmation that the Subject Male was ALAM.

W-1 recognized the black Pirelli shirt bearing the red and yellow logo as ALAM's shirt.

W-1 stated that a few days after the events at the U.S. Capitol, another relative sent W-1 an open-source video depicting the breaking of the glass windows of the doorway to the Speaker's Lobby. W-1 advised that W-1 and the relative reviewed the video approximately 20 times and confirmed that the male hitting the glass with the helmet was their relative ALAM.

W-1 advised that ALAM subsequently called W-1 from the phone number that W-1 provided in the January 19, 2021 tip. ALAM and W-1 are in routine contact, but this was the first time ALAM used the number to communicate with W-1; ALAM has used a different phone number for years. ALAM declined to provide his exact location. ALAM told W-1 that he was sorry for what he had done at the U.S. Capitol but he was not going to turn himself into authorities because he did not want to go to jail again.

W-1 also advised that ALAM has, since the events at the Capitol, asked relatives if ALAM may stay at their residences, and has stated that the FBI is looking for him.

Based on the foregoing, your affiant submits that there is probable cause to believe that ALAM violated 18 U.S.C. §§ 111(a) and (b), which make it a crime to forcibly assault, resist, oppose, impede, intimidate, or interfere with an officer or employee of the United States or of any agency in any branch of the United States government while engaged in or on account of the performance of official duties; and punish the commission of such acts using a deadly or dangerous weapon. Pursuant to 18 U.S.C. § 1114, officers of the U.S. Capitol Police are "officers and employees of the United States or of any agency in any branch of the United States government."

Your affiant submits there is probable cause to believe that ALAM violated 18 U.S.C. § 1361, by willfully injuring or committing any depredation against any property of the United States. The window in the United States Capitol that ALAM broke is property of the United States government. The Architect of the Capitol has represented that the repair cost for the damaged doors of the Speaker's Lobby exceeds $1,000.

Your affiant submits there is probable cause to believe that ALAM violated 18 U.S.C. § 1512(c)(2), which makes it a crime to obstruct, influence, or impede any official proceeding, or attempt to do so. Under 18 U.S.C. § 1515, congressional proceedings are official proceedings.

Your affiant submits there is probable cause to believe that ALAM violated 18 U.S.C. §§ 1752(a) and (b). Section 1752(a) makes it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do so, (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions, or (4) knowingly engage in any act of physical violence against any person or property in any restricted building or grounds, or attempt or conspire to do so; and § 1752(b) punishes the commission of such acts if the person, during and in relation to the offense,

uses or carries a deadly or dangerous weapon. For purposes of Section 1752 of Title 18, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance.

       Finally, your affiant submits there is probable cause to believe that ALAM violated 40 U.S.C. §§ 5104(e)(2)(D), (F) and (G), which make it a crime to willfully and knowingly (D) utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress; (F) engage in an act of physical violence in the Grounds or any of the Capitol Buildings; and (G) parade, demonstrate, or picket in any of the Capitol Buildings.

_____
SPECIAL AGENT ROSEMARIA MARKETOS
FEDERAL BUREAU OF INVESTIGATION

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 25th day of January, 2021.

_____
THE HONORABLE ZIA M. FARUQUI
U.S. MAGISTRATE JUDGE