UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CASE NO. 21-cr-190-DLF |
| v. | : | |
| | : | |
| ZACHARY JORDAN ALAM, | : | |
| | : | |
| Defendant. | : | |

**UNITED STATES' MOTION TO CONTINUE TRIAL AND TO
EXCLUDE TIME UNDER THE SPEEDY TRIAL ACT**

At the status hearing held on August 17, 2021, the Court set a status hearing for September 15, 2021, for the defendant, Zachary Jordan Alam, to have additional time to consider a plea offer previously extended by the government. The Court stated that if the defendant rejects the plea offer by such date, the Court would discuss setting a trial date. The undersigned explained that for reasons including the ongoing collection and production of discovery, setting a trial date on September 15, 2021, would likely be premature. The Court ordered the United States to file any motion to exclude time under the Speedy Trial Act ("STA"), 18 U.S.C. § 3161 *et seq.*, no later than August 30, 2021. Accordingly, the United States of America hereby moves for a 60-day continuance of the above-captioned proceeding, beginning on September 15, 2021, and further to exclude the time within which a trial must commence under the STA, on the basis that the ends of justice served by taking such actions outweigh the best interest of the public and the defendant in a speedy trial pursuant to the factors described in 18 U.S.C. § 3161(h)(7)(A), (B)(i), (ii), and (iv).[1] In support of its motion, the government states as follows:

---

[1] At the status hearing on August 17, 2021, the Court excluded the time period through September 15, 2021, for the reasons stated at the hearing, including the pending plea offer and the need for the defense to review voluminous and forthcoming discovery and to determine how best to defend this case. *See* Minute Order 8/17/2021.

## FACTUAL AND PROCEDURAL BACKGROUND

The defendant is charged via indictment with eight felony and three misdemeanor offenses arising out of his conduct in connection with the breach of the U.S. Capitol on January 6, 2021.  The Court is familiar with the allegations that support these offenses from prior filings and hearings.  In brief, the defendant entered the Capitol through a broken window by the Senate Wing Door.  He made his way past several law enforcement officers seeking to hold the crowds back and attempted to breach a barricaded door to the Speaker's Lobby by repeatedly punching, kicking, and striking the door's glass panels with a helmet, at one point pushing his body against an officer guarding the door.  The defendant was also involved in two other aggressive interactions with officers during his over-30-minute stay inside the Capitol.  The pending charges include statutory maximum penalties totaling up to over 94 years in prison.  Two of the felony charges, for assaulting, resisting, or impeding officers while using a dangerous weapon, and obstruction of an official proceeding, carry maximum penalties of 20 years' incarceration.

The defendant was arrested approximately seven months ago, on January 30, 2021, and has been detained since his arrest.  For the reasons set forth in the Court's detailed opinion from the bench denying the defendant's motion for bond on June 24, 2021, and in the magistrate judge's original detention decision delivered on February 2, 2021, the defendant poses an articulable threat to public safety and a flight risk.

The government has provided defense counsel with significant case-specific discovery, as outlined in seven discovery notices filed with the Court between March 26, 2021, and July 14, 2021.  *See* ECF Nos. 10, 14, 17, 20-22, 24.  The materials provided include videos encompassing surveillance footage from the U.S. Capitol Police, body-worn-camera footage from the Metropolitan Police Department, open-source videos posted on news and social media platforms,

and videos obtained through legal process or voluntary productions in other Capitol investigations that depict the defendant. Case-specific discovery provided to the defendant also includes reports of interviews with civilian and law enforcement witnesses, grand jury materials, search warrant returns, subpoena returns, and jail calls. As the defendant was inside the Capitol for over half an hour, covered four floors, and had multiple interactions while he was there, the government continues to identify and produce additional case-specific materials. Also forthcoming are extractions of the multiple digital devices recovered from the defendant upon his arrest, for which law enforcement is still attempting to decrypt the defendant's password protections.

On July 13, 2021, the government filed a memorandum regarding the status of discovery (ECF No. 23), incorporated herein by reference. On August 26, 2021, the government filed a memorandum regarding the status of discovery (ECF No. 25), incorporated herein by reference. Collectively, these documents are referred to as our "Status Memoranda." The Status Memoranda provided updates as to the overall production of discovery from voluminous sets of data that the government collected in its investigation of the Capitol Breach cases, among which may be interspersed information the defense may consider material or exculpatory.[2]

---

[2] The materials upon which the Status Memoranda focused include, for example, thousands of hours of video footage from multiple sources (e.g., Capitol surveillance footage, body-worn-camera footage, results of searches of devices and Stored Communications Act ("SCA") accounts, digital media tips, Parler video, and unpublished news footage), and hundreds of thousands of investigative documents including but not limited to interviews of tipsters, witnesses, investigation subjects, defendants, and members of law enforcement.

# ARGUMENT

In brief, it is the government's commitment to ensuring that all arguably exculpatory materials are produced in a comprehensive, accessible, and useable format that, in the main, underlies the government's request to toll the STA.

### I. The Government's Approach to Discovery is Intended to Ensure that All Arguably Exculpatory Materials are Produced in a Comprehensive, Accessible, and Useable Format.

As a preliminary matter to the government's motion, the government's approach to the production of voluminous discovery, as elaborated in our previously filed Status Memoranda, is consistent with the *Recommendations for Electronically Stored Information (ESI) Discovery Production* developed by the Department of Justice and Administrative Office of the U.S. Courts Joint Working Group on Electronic Technology in the Criminal Justice System.[3] It is also the generally accepted approach in cases involving voluminous information. Notably, every circuit to address the issue has concluded that, where the government has provided discovery in a useable format, and absent bad faith such as padding the file with extraneous materials or purposefully hiding exculpatory material within voluminous materials, the government has satisfied its *Brady*[4] obligations. *See United States v. Yi*, 791 F. App'x 437, 438 (4th Cir. 2020) ("We reject as without merit Yi's argument that fulfillment of the Government's obligation under *Brady* requires it to identify exculpatory material."); *United States v. Tang Yuk*, 885 F.3d 57, 86 (2d Cir. 2018) (noting that the "government's duty to disclose generally does not include a duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence") (internal citations omitted); *United States v. Stanford*, 805 F.3d 557, 572 (5th Cir. 2015) ("We

---

[3] *See* https://www.justice.gov/archives/dag/page/file/913236/download.
[4] *Brady v. Maryland*, 373 U.S. 83 (1963).

4

have previously rejected such 'open file' *Brady* claims where the government provided the defense with an electronic and searchable database of records, absent some showing that the government acted in bad faith or used the file to obscure exculpatory material."); *United States v. Gray*, 648 F.3d 562, 567 (7th Cir. 2011) ("The government is not obliged to sift fastidiously through millions of pages (whether paper or electronic). . . [and] is under no duty to direct a defendant to exculpatory evidence [of which it is unaware] within a larger mass of disclosed evidence.") (quotation marks and citations omitted); *Rhoades v. Henry*, 638 F.3d 1027, 1039 (9th Cir. 2011) (rejecting *Brady* claim on the ground that the defendant "points to no authority requiring the prosecution to single out a particular segment of a videotape, and we decline to impose one"); *United States v. Warshak,* 631 F.3d 266, 297 (6th Cir. 2010) ("As a general rule, the government is under no duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence"); *United States v. Skilling*, 554 F.3d 529, 576 (5th Cir. 2009) (same), *aff'd in part, vacated in part, remanded*, 561 U.S. 358 (2010); *United States v. Pelullo*, 399 F.3d 197, 212 (3d Cir. 2005) ("*Brady* and its progeny . . . impose no additional duty on the prosecution team members to ferret out any potentially defense-favorable information from materials that are so disclosed."); *United States v. Jordan,* 316 F.3d 1215, 1253-54 (11th Cir. 2003) (concluding that the defendant's demand that the government "identify all of the *Brady* and *Giglio* material in its possession," "went far beyond" what the law requires).[5]

---

[5] Even in the unusual cases where courts have required the government to identify *Brady* within previously produced discovery, no court found that this was a substantive right held by the defendant in every case. For example, in *United States v. Saffarinia*, 424 F. Supp. 3d 46 (D.D.C. 2020), in which the court ordered the government to identify any known *Brady* material within its prior productions because the production involved over a million records and defense counsel was working "*pro bono* with time constraints and limited financial resources," the Court acknowledged that "persuasive authority has articulated a 'general rule' that 'the government is under no duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence.'" *Id.* at 84 n.15 (quoting *Skilling*, 554 F.3d at 576).

## II. An Ends-of Justice Tolling of the Speedy Trial Act is Warranted.

Given the due diligence that the United States continues to apply to meet its discovery obligations, as set forth above and in our Status Memoranda, the government has established that an ends-of-justice continuance under the STA is warranted.

As the Supreme Court has observed, the STA "recognizes that criminal cases vary widely and that there are valid reasons for greater delay in particular cases." *Zedner v. United States,* 547 U.S. 489, 497 (2006). "Much of the Act's flexibility is furnished by § 3161(h)([7]), which governs ends-of-justice continuances." *Id.* at 498. "Congress clearly meant to give district judges a measure of flexibility in accommodating unusual, complex, and difficult cases." *Id.* at 508. And it knew "that the many sound grounds for granting ends-of-justice continuances could not be rigidly structured." *Id.*

The need for reasonable time to address discovery obligations is among multiple pretrial preparation grounds that Courts of Appeals, including our Circuit, have routinely held sufficient to grant continuances and exclude time under the STA – and in cases involving far less complexity in terms of the volume and nature of data, and the number of defendants entitled to discoverable materials. *See, e.g., United States v. Bikundi*, 926 F.3d 761, 777-78 (D.C. Cir. 2019) (upholding ends-of-justice continuances totaling 18 months in two co-defendant health care fraud and money laundering conspiracy case, in part because the District Court found a need to "permit defense counsel and the government time to both produce discovery and review discovery"); *United States v. Bell*, 925 F.3d 362, 374 (7th Cir. 2019) (upholding two-month ends-of-justice continuance in firearm possession case, over defendant's objection, where five days before trial a superseding indictment with four new counts was returned, "1,000 pages of new discovery materials and eight hours of recordings" were provided, and the government

6

stated that "it needed more than five days to prepare to try [the defendant] on the new counts"); *United States v. Vernon*, 593 F. App'x 883, 886 (11th Cir. 2014) (District court did not abuse its broad discretion in case involving conspiracy to commit wire and mail fraud by granting two ends-of-justice continuances due to voluminous discovery); *United States v. Gordon*, 710 F.3d 1124, 1157-58 (10th Cir. 2013) (upholding ends-of-justice continuance of ten months and twenty-four days in case involving violation of federal securities laws, where discovery included "documents detailing the hundreds of financial transactions that formed the basis for the charges" and "hundreds and thousands of documents that needs to be catalogued and separated, so that the parties could identify the relevant ones") (internal quotation marks omitted); *United States v. O'Connor*, 656 F.3d 630, 640 (7th Cir. 2011) (upholding ends-of-justice continuances totaling five months and 20 days in wire fraud case that began with eight charged defendants and ended with a single defendant exercising the right to trial, based on "the complexity of the case, the magnitude of the discovery, and the attorneys' schedules"); *United States v. Lewis*, 611 F.3d 1172, 1177-78 (9th Cir. 2010) (upholding 90-day ends-of-justice continuance in case involving international conspiracy to smuggle protected wildlife into the United States, where defendant's case was joined with several co-defendants, and there were on-going investigations, voluminous discovery, a large number of counts, and potential witnesses from other countries).

The government has conferred with defense counsel and understands that the defendant intends to oppose this motion. Notably, however, the defendant's lack of consent to the United States' request for an ends-of-justice continuance is irrelevant. There is no requirement that a defendant personally consent to an ends-of-justice continuance; the only question is whether the district court has complied with the procedural requirements of section 3161(h)(7). *See United States v. Sobh*, 571 F.3d 600, 603 (6th Cir. 2009) ("By its terms, § 3161(h)([7])(A) does not

require a defendant's consent to the continuance 'if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.'"); *accord United States v. Jones*, 795 F.3d 791, 798 (8th Cir. 2015); *United States v. Williams*, 753 F.3d 626, 635 (6th Cir. 2014); *United States v. Lynch*, 726 F.3d 346, 355 (2d Cir. 2013); *United States v. Gates*, 709 F.3d 58, 65-66 (1st Cir. 2013) ("We hold . . . that in the ordinary course and within the confines of the STA exclusion provisions, defense counsel has the power to seek an STA continuance without first informing his client or obtaining his client's personal consent."); *United States v. Herbst*, 666 F.3d 504, 510 (8th Cir. 2012) ("Herbst's opposition to his counsel's request for a continuance does not prevent that time from being excluded from the speedy trial calculation."); *United States v. Stewart*, 628 F.3d 246, 254 (6th Cir. 2010) ("[W]here an attorney seeks a continuance without the client's approval, this court has held that the Speedy Trial Act 'does not require a defendant's consent to the continuance' in order for a judge to be able to grant a motion in furtherance of the ends of justice."); *see also United States v. Stoddard*, 74 F. Supp. 3d 332, 341–42 (D.D.C. 2014) ("Even assuming *arguendo* that Stoddard was not advised of his statutory Speedy Trial rights by his counsel and that his counsel consented to the tolling of the time without Stoddard's consent, Stoddard was not prejudiced by this error. The Court tolled the time under the Speedy Trial Act pursuant to 18 U.S.C. §§ 3161(h)(8)(A), (B)(i), (B)(ii) & B(iv)(2004). None of those provisions require the consent of the defendant."); *cf. Zedner*, 547 U.S. at 500-01 (holding the STA cannot be tolled by virtue of a defendant's waiver of its application).

Further, the fact that the defendant is detained is not relevant to the Court's consideration of this motion.  Pursuant to 18 U.S.C. § 3164:

> (a) The trial or other disposition of cases involving—
>
>> (1) a detained person who is being held in detention solely because he is awaiting trial, and
>>
>> (2) a released person who is awaiting trial and has been designated by the attorney for the Government as being of high risk,
>
> shall be accorded priority.
>
> (b) The trial of any person described in subsection (a)(1) or (a)(2) of this section shall commence not later than ninety days following the beginning of such continuous detention or designation of high risk by the attorney for the Government. *The periods of delay enumerated in section 3161(h) are excluded in computing the time limitation specified in this section.*

18 U.S.C. § 3164 (emphasis added). At the same time that the STA requires the trial of a person who is being detained to commence within 90 days, it also categorically excludes from this computation of time periods of delay enumerated in section 3161(h), including a judicial finding under section 3161(h)(7) that an ends-of-justice continuance is warranted. So long as the court's findings are warranted and "seriously weigh the benefits of granting the continuance against the strong public and private interests served by speedy trials," *United States v. Bryant*, 523 F.3d 349, 361 (D.C. Cir. 2008), as is the case here, the excluded periods must be omitted from the computation of 90-day time limitation for bringing a detained defendant to trial.

In this case, a 60-day ends-of-justice continuance is warranted under 18 U.S.C. § 3161(h)(7)(A) based on the factors described in 18 U.S.C. § 3161(h)(7)(B)(i)(ii) and (iv). The Capitol Breach is likely the most complex investigation ever prosecuted by the Department of Justice, and we are diligently implementing our discovery plan to produce voluminous materials to Capitol Breach defendants.[6] As described above, the undersigned has provided defense

---

[6] Shortly after the last hearing, in recognition of the current high rate of transmission of the Delta variant in the District of Columbia, Chief Judge Howell issued Standing Order 21-47, limiting the number of jury trials that may be conducted at one time until at least October 31, 2021.

counsel in this case with vast, case-specific discovery to date, *see* ECF Nos. 10, 14, 17, 20-22, 24, and is also diligently executing its plan to produce voluminous materials to the defense in a comprehensive, accessible, and useable format.

## **CONCLUSION**

For the reasons described above, the government requests the Court grant its motion for a continuance of the above-captioned proceeding for 60 days, beginning September 15, 2021, in order to provide discovery in this case, and further to exclude the time within which a trial must commence under the STA on the basis that the ends of justice served by taking such actions

---

Further, the Court found that "for those cases that cannot be tried consistent with those health and safety protocols and limitations, the additional time period from August 31, 2021 through October 31, 2021 is excluded under the Speedy Trial Act as the ends of justice served by the continuances to protect public health and safety and the fair rights of a defendant outweigh the best interest of the public and any defendant's right to a speedy trial, pursuant to 18 U.S.C. 3161(h)(7)(A)." (As detailed in Standing Order 21-47, the Court had previously found that due to the exigent circumstances created by the COVID-19 pandemic, the time period from March 17, 2020 through August 31, 2021, would be excluded in criminal cases under the STA.)  We believe that the effect of the continuing pandemic on the ability to hold jury trials also supports tolling of the STA in this case.

outweigh the best interest of the public and the defendant in a speedy trial.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
D.C. Bar No. 415793

By:   /s/ *Emily A. Miller*                    By:                                        

EMILY A. MILLER                        Candice C. Wong
Capitol Breach Discovery Coordinator    Assistant United States Attorney
D.C. Bar No. 462077                     D.C. Bar No. 990903
555 4th Street, N.W., Room 5826        555 4th Street, N.W., Room 4816
Washington, D.C. 20530                 Washington, D.C. 20530
Emily.Miller2@usdoj.gov                candice.wong@usdoj.gov
(202) 252-6988                             (202) 252-7849