# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES** | * | |
| | * | |
| **v.** | * | **Case No. 21-cr-00190-DLF** |
| | * | |
| **ZACHARY JORDAN ALAM** | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MOTION TO DISMISS COUNT THREE, FIVE, SIX, SEVEN & EIGHT OF THE FIRST SUPERSEDING INDICTMENT

The Defendant, Zachary Jordan Alam, by and through his attorneys, Michael E. Lawlor, and Brennan, McKenna & Lawlor, Chtd, respectfully requests that this dismiss Counts Three, Five and Six, Seven and Eight of the First Superseding Indictment, and in support of this Motion states as follows.

## I.   Introduction

Mr. Alam is charged in an eleven-count criminal Indictment for alleged offenses related to the storming of the U.S. Capitol on January 6, 2021.  Specifically, Mr. Alam is charged with assaulting, resisting, or impeding certain officers, in violation of 18 USC § 111(a)(1) ("Count One"); assaulting, resisting, or impeding certain officers using a dangerous weapon, in violation of 18 USC §§ 111(a)(1) and (b) ("Count Two"); civil disorder and aiding and abetting, in violation of 18 USC §§ 231 (a)(3) and 2 ("Count Three"); destruction of government property, in violation

of 18 USC § 1361 ("Count Four"); obstruction of an official proceeding and aiding and abetting, in violation of 18 USC §§ 1512 (c)(2) and 2 ("Count Five"); entering and remaining in a restricted building with a deadly or dangerous weapon, in violation of 18 USC § 1752(a)(1) and (b)(1)(A) ("Count Six"); disorderly and disruptive conduct in a restricted building with a deadly or dangerous weapon, in violation of 18 USC § 1752(a)(2) and (b)(1)(A) ("Count Seven"); engaging in physical violence in a restricted building with a deadly or dangerous weapon, in violation of 18 USC § 1752(a)(4) and (b)(1)(A) ("Count Eight"); disorderly conduct in a capitol building, in violation of 40 USC § 5104(e)(2)(D) ("Count Nine"); act of physical violence in the capitol building, in violation of 40 USC § 5104(e)(2)(F) ("Count Ten"); parading, demonstrating, or picketing in a capitol Building, in violation of 40 USC § 5104(e)(2)(G) ("Count Eleven).

Mr. Alam moves this Honorable Court to dismiss Counts Three, Five, Six, Seven and Eight of the First Superseding Indictment for the reasons set forth below.

## II.    Applicable Law

### a.  *Motion to Dismiss*

An indictment must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." FED. R. CRIM. P. 7(c)(1). An indictment "must provide the defendant sufficient detail to allow him to prepare a

defense, to defend against a subsequent prosecution of the same offense, and to ensure that he be prosecuted upon facts presented to the grand jury." *United States v. Apodaca*, 275 F. Supp. 3d 123, 153 (D.D.C. 2017) (citing *Russell v. United States*, 369 U.S. 749 (1962), and *Stirone v. United States*, 361 U.S. 212 (1960)).

A defendant "may raise by pretrial motion any defense, objection, or request that the Court can determine without a trial on the merits." FED. R. CRIM. P. 12(b)(3)(B). Rule 12 provides that a defendant may also move to dismiss the indictment for "failure to state an offense" and "lack of specificity." FED. R. CRIM. P. 12(b)(3)(B)(iii), (v). In considering a Rule 12 motion to dismiss, "the Court is bound to accept the facts stated in the indictment as true." *United States v. Syring*, 522 F. Supp. 2d 125, 128 (D.D.C. 2007); *United States v. Sampson*, 371 U.S. 75, 78 (1962). Accordingly, "the Court cannot consider facts beyond the four corners of the indictment." *United States v. Ring*, 628 F. Supp. 2d 195, 204 (D.D.C. 2009) (internal quotations omitted).

b.  *Statutory Interpretation*

To determine the legislative intent of a law, courts "always, [ ] begin with the text of the statute." *Am. Fed'n of Gov't Emps., AFL-CIO, Local 3669 v. Shinseki*, 709 F.3d 29, 33 (D.C. Cir. 2013). "It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and

if that is plain . . . the sole function of the courts is to enforce it according to its terms." *United States v. Hite*, 769 F.3d 1154, 1160 (D.C. Cir. 2014) (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917) (internal quotes omitted)). "The search for the meaning of the statute must also include an examination of the statute's context and history." *Hite*, 769 F.3d at 1160 (citing *Bailey v. United States*, 516 U.S. 137, 144-45 (1995)). Importantly, "due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *United States v. Lanier*, 520 U.S. 259, 266 (1997).

c. *Vagueness*

A criminal statute is unconstitutionally vague if it "fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *United States v. Bronstein,* 849 F.3d 1101, 1106 (D.C. Cir. 2017) (quoting *Johnson v. United States*, 576 U.S. 591, 595 (2015)). "The touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259 (1997). The void-for-vagueness doctrine protects against arbitrary or discriminatory law enforcement. *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018) (citing *Kolender v. Lawson,* 461 U.S. 352, 358 (1983)).

4

### III.    The Court Should Dismiss Count Three Alleging Civil Disorder

Count Three of the Superseding Indictment charges Mr. Alam with a violation

of 18 U.S.C. § 231(a)(3), as follows:

> On or about January 6, 2021, within the District of Columbia, Zachary
> Jordan Alam, committed and attempted to commit an act to obstruct,
> impede, and interfere with a law enforcement officer, that is, an officer
> from the United States Capitol Police, lawfully engaged in the lawful
> performance of his official duties incident to and during commission of
> a civil disorder which in any way and degree obstructed, delayed, and
> adversely affected commerce and the movement of any article and
> commodity in commerce and the conduct and performance of any
> federally protected function.

ECF Dkt. No. 36, 3.

18 U.S.C. § 231(a)(3), Civil disorders, provides that:

> Whoever commits or attempts to commit *any act to obstruct, impede,
> or interfere with* any fireman or law enforcement officer lawfully
> engaged in the lawful performance of his official duties *incident to and
> during the commission of a civil disorder* which in any way or degree
> obstructs, delays, or adversely affects commerce or the movement of
> any article or commodity in commerce or the conduct or performance
> of any federally protected function shall be fined under this title or
> imprisoned not more than five years or both.

18 U.S.C. § 231(a)(3) (emphasis added). This subsection of the civil disorder penal

statute is overbroad and unconstitutionally vague because §231(a)(3)'s imprecise

and subjective standards fail to provide fair notice and creates significant risk of

arbitrary enforcement. Further, several of the statute's terms are so broad and indefinite as to impose unqualified burdens on a range of protected expression.

    a.  *Section 231(a)(3) is Unconstitutionally Vague*

"The prohibition of vagueness in criminal statutes 'is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law,' and a statute that flouts it 'violates the first essential of due process.'" *Johnson v. United States*, 576 U.S. 591, 595 (2015) (quoting *Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926)). As the Supreme Court has explained,

> [i]t is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute abuts upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of those freedoms.

*Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) (internal citations and quotations omitted). As mentioned by the Supreme Court in *Grayned*, vagueness

concerns are most acute when the statute imposes criminal penalties and implicates the First Amendment by chilling exercise of protected expression. *See Kolender v. Lawson*, 461 U.S. 352, 358-59 n. 8 (1983); *Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 498-99 (1982); *see also Smith v. Goguen*, 415 U.S. 566, 573 (1974) (Where "a statute's literal scope [reaches] expression sheltered by the First Amendment, the [vagueness] doctrine demands a greater degree of specificity than in other contexts.").

Section 231(a)(3) is replete with vague and imprecise terms that fail to provide a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited. The following examples are illustrative of §231(a)(3)'s vagueness.

### *"Any Act to Obstruct, Impede, or Interfere"*

By penalizing "any act to obstruct, impede, or interfere," §231(a)(3) reaches the outer limits of verbal and expressive conduct without drawing *any* distinction that could exclude acts undertaken merely to convey a message or symbolic content. *See Roy v. City of Monroe*, 950 F.3d 245, 252 (5th Cir. 2020) (acknowledging that "[s]tanding alone . . . a prohibition on 'any act [undertaken] in such a manner as to disturb or alarm the public' fails meaningfully to guide the police and thus poses a substantial risk of arbitrary or discriminatory enforcement.") (quoting *Louisiana v. Cox*, 379 U.S. 536, 551-52 (1965)). The phrase "any act to obstruct, impede, or

interfere" can fairly include within its plain meaning such diverse acts as pure speech, expressive conduct, minimal jostling, or even grievous, violent assaults.

### "*Incident to and During the Commission of a Civil Disorder*"

The phrasing "incident to and during the commission of a civil disorder" is also problematic for its vagueness. The term "civil disorder," as defined under §232(1), is extremely far-reaching, applying to "any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of . . . injury to the property." 18 U.S.C. § 232(1). This definition of "civil disorder" offers no limitation to solve the vagueness problem because it could apply to virtually any tumultuous public gathering to which police might be called, not just large- scale protests or riots. Further, there is no indication within the statute whether the defendant is required to have participated in the civil disorder, or if it is sufficient that he or she be in the general vicinity of the event.

### Lack of Scienter

The Supreme Court has repeatedly affirmed that "a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." *Vill. of Hoffman Ests.* at 499. But here, there is no such mitigation, because Section 231(a)(3) contains no scienter requirement, thus creating 'a trap for those who act in good faith.'" *Colautti v.*

8

*Franklin*, 439 U.S. 379, 395 (1979) (quoting *United States v. Ragen*, 314 U.S. 513, 524 (1942)). Because the statute omits an express *mens rea* requirement, it is left to police, prosecutors, and judges to decide whether the statute requires knowledge or specific intent or neither. The absence of a scienter/*mens rea* element weighs in further favor of the statute's unconstitutionality.

By enacting a statute with such imprecise language, Congress created "a criminal prohibition of alarming breadth." *United States v. Stevens,* 559 U.S. 460, 474 (2010). "Vague statutes threaten to hand responsibility for defining crimes to relatively unaccountable police, prosecutors, and judges, eroding the people's ability to oversee the creation of the laws they are expected to abide." *United States v. Davis*, 139 S. Ct. 2319, 2325 (2019). Section 231(a)(3)'s scope "may entirely depend" on a law enforcement official's unbounded speculation about subjective factors, *Coates v. Cincinnati,* 402 U.S. 611, 614 (1971), thus subjecting "individuals to the risk of arbitrary or discriminatory prosecution and conviction." *United States v. Kozminski*, 487 U.S. 931, 949-50 (1988) (holding statute unconstitutionally vague where liability "depend[ed] entirely upon the victim's state of mind").

In *Houston v. Hill*, 482 U.S. 451 (1987), the Supreme Court declared unconstitutional a municipal ordinance that made it unlawful to interrupt a police officer in the performance of his or her duties, finding that the ordinance's sweeping

nature was neither "inevitable" nor "essential to maintain public order." 482 U.S. at 464. Because the ordinance was "not narrowly tailored to prohibit only disorderly conduct or fighting words," it wrongly gave police "unfettered discretion to arrest individuals for words or conduct that annoy or offend them." *Id.* at 465. Similarly, here, §231(a)(3) casts far too wide a net. By expansively encompassing "any act" that could interfere with the duties of a police officer or firefighter during a civil disorder, §231(a)(3) is not limited to "violent acts" or acts that result in bodily injury or that otherwise put persons or property in imminent danger. *C.f. United States v. Reese*, 92 U.S. (2 Otto) 214, 221 (1876) ("It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large."). Moreover, the statute does not weed out those acts with protected expressive content or those that occur in a traditional public forum. Instead, as shall be developed further, *infra*, §231(a)(3) reaches a substantial amount of expressive conduct, and without clear boundaries, the law chills free speech and invites discriminatory application by law enforcement and the government.

b. *Section 231(a)(3) Impermissibly Criminalizes Protected Speech under the First Amendment*

"In the First Amendment context, . . . a law may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *United States v. Stevens*, 559 U.S. 460, 473 (2010) (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008)). The first Amendment protects expressive conduct like cross-burning, flag-burning and assembly in inconvenient places.[1] Conduct is considered expressive, and therefore protected, under the First Amendment when it "is intended to convey a 'particularized message' and the likelihood is great that the message would be so understood." *Knox v. Brnovich*, 907 F.3d 1167, 1181 (9th Cir. 2018) (quoting *Nunez v. Davis*, 169 F.3d 1222, 1226 (9th Cir. 1999)).

The plain language of §231(a)(3) is at odds with the protections of the First Amendment. Indeed, the broadness of §231(a)(3)'s scope would presumably authorize a felony conviction for a bystander who yells at police to desist from an

---

[1]     *See Virginia v. Black*, 538 U.S. 343, 365-66 (2003) ("[S]ometimes the cross burning is a statement of ideology, a symbol of group solidarity"); *Texas v. Johnson*, 491 U.S. 397, 405-06 (1989) (flag burning constituted "expressive conduct" protected by the First Amendment); *Clark v. Cmty. For Creative Non-Violence*, 468 U.S. 288, 293 (1984) (assuming that "sleeping in connection with the demonstration is expressive conduct protected to some extent by the First Amendment.").

arrest, one who flips off officers to distract or encourage resistance, or one who records police activity with a cell phone. *See Hill*, 482 U.S. at 459 ("[W]e have repeatedly invalidated laws that provide the police with unfettered discretion to arrest individuals for words or conduct that annoy or offend them."); *Glick v. Cunniffe*, 655 F.3d 78, 83 (1st Cir. 2011) ("[T]he First Amendment protects the filming of government officials in public places."). The First Amendment does not permit an unqualified prohibition on "interference" with police duties because "the freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Hill*, 482 U.S. at 462-462; *see also McCoy v. City of Columbia*, 929 F. Supp. 2d 541, 550 (D.S.C. 2013) (invalidating a state statute for overbreadth that made it "unlawful for any person to interfere with or molest a police officer in the lawful discharge of his duties.").

Such broad criminal statutes like §231(a)(3) "must be scrutinized with particular care." *Hill*, 482 U.S. at 459; *see also Winters v. New York*, 333 U.S. 507, 515 (1948) ("The standards of certainty in statutes punishing for offenses is higher than in those depending primarily upon civil sanction for enforcement."). Criminal laws that "make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application." *Id.*

Section 231(a)(3) extends to a substantial amount of constitutionally protected speech and expressive conduct, well in excess of the law's legitimate sweep.

### c. *Section 231(a)(3) Cannot be Saved by Construction without Violating the Constitutional Separation of Powers*

Judicial interpretation cannot save §231(a)(3) from its constitutional invalidity. A statute's vagueness does not permit judges to "rewrite a law to confirm it to constitutional requirements, for doing so would constitute a serious invasion of the legislative domain, and sharply diminish Congress's incentive to draft a narrowly tailored law in the first place." *Stevens*, 559 U.S. at 481. Rather, "[w]hen Congress passes a vague law, the role of the courts under our Constitution is not to fashion a new, clearer law to take its place, but to treat the law as a nullity and invite Congress to try again." *Davis*, 139 S. Ct. at 2323.

For all of the foregoing reasons, Count Three of the Superseding Indictment must be dismissed.

## IV.  The Court Should Dismiss Count Five Alleging Obstruction of an Official Proceeding

Count Five of the First Superseding Indictment charges Mr. Alam with violation 18 USC § 1512(c)(2), claiming that,

> On or about January 6, 2021, within the District of Columbia and elsewhere, Zachary Jordan Alam, attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of

13

the Electoral College vote as set out in the Twelfth Amendment of the
Constitution of the United States and 3 U.S.C. §§ 15-18.

ECF Dkt. No. 36, 3.

Section 1512(c) falls under Chapter 73 of Title 18, which deals with
"Obstruction of Justice." *See generally*, 18 U.S.C. §§ 1501-1521. As the Ninth
Circuit has carefully considered and recognized, based on the plain language of the
statute, an offense under §1512(c) does not prohibit the obstruction of every
governmental function; it only prohibits the obstruction of proceedings such as a
hearing that takes place before a tribunal. *See United States v. Ermoian*, 752 F.3d
1165, 1179 (9th Cir. 2013). Stated differently, Section 1512(c), by its plain language,
does not criminalize the obstruction of legislative action by Congress. Any alleged
obstruction of the certification of the Electoral College vote is simply outside the
scope of §1512(c). Alternatively, on its face §1512 is constitutionally infirm because
of its inherent vagueness and arbitrary enforcement in the panoply of January 6th
cases.

    a.  *Section 1512 Must be Strictly Construed*

18 U.S.C. § 1512 prohibits "corruptly. . . obstruct[ing], influenc[ing], or
imped[ing] any *official proceeding*, or attempt[ing] to do so." *Id.* (emphasis added).
Section 1515(a)(1) of Chapter 73 of Title 18 defines an official proceeding as:

14

(A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;

(B)  a proceeding before the Congress;

(C)  a proceeding before a Federal Government agency which is authorized by law; or

(D) a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce[.]

18 USC § 1515(a)(1). Count Five of the First Superseding Indictment against Mr. Alam concerns "a proceeding before the Congress" as set forth in 18 USC § 1515(a)(1)(B).

With respect to 18 U.S.C. § 1512, the Supreme Court has instructed lower courts to "exercise[] restraint in assessing the reach of [the] . . . statute both out of deference to the prerogatives of Congress . . . and out of concern that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed." *United States v. Arthur Anderson, LLP,* 544 U.S. 696, 703 (2005) (internal citations and quotations omitted) (strictly construing §1512(b)(2)'s broadly worded language in finding that jury instructions failed to instruct that knowledge of wrongdoing and proof of a nexus

between the alleged obstruction and an official proceeding were required elements of the offense).

> b. *An "Official Proceeding" under 1512(c) Concerns the Administration of Justice*

A review of the text, history, and judicial interpretations of §1512, especially in light of the Supreme Court's long-standing guidance to strictly construe penal statutes, demonstrates that §1512(c), which punishes obstruction of "official proceedings," does *not* apply to the Electoral College certification.[2]

*Ermoian* was one of the first appellate decisions to consider the meaning of "official proceeding" as that term is used in §1512(c) and defined in §1515. *See Ermoian*, 752 F.3d at 1168 ("Our circuit has never before addressed the meaning of the term 'official proceeding' as used in the obstruction of justice statute at 18 U.S.C. § 1512"). The *Ermoian* court, tasked with deciding whether a criminal investigation by the FBI was considered an "official proceeding" for purposes of §1512(c), noted

---

[2]     Congress counts the electoral votes pursuant to the Twelfth Amendment to the United States Constitution and the Electoral Count Act of 1887, later codified in 3 U.S.C. § 15. Congress counts the electoral votes after the states have already heard any disputes and certified the vote. *See Bush v. Gore*, 531 U.S. 98, 154 (2000) (Breyer, J., dissenting). Members of Congress may make an objection, in writing, and without argument. 3 U.S.C. § 15. According to the statute, there is no testimony, no witnesses, no argument, and no evidence introduced at the electoral count. The event is merely ceremonial. *See* Stephen A. Siegel, *The Conscientious Congressman's Guide to the Electoral Count Act of 1887*, 56 FLLR 541, 585 (2004).

that "the definition of the phrase 'official proceeding' depends heavily on the meaning of the word 'proceeding.'" *Id*. at 1169.

Reviewing the plain language of §1515, the *Ermoian* court explained that "[s]everal aspects of the definition for 'official proceeding' suggest that the legal – rather than lay – understanding of the term 'proceeding' is implicated in the statute." *Id*. at 1170. The court noted that "the descriptor 'official' indicates a sense of formality normally associated with legal proceedings," and not "a mere 'action or series of actions.'" *Id*. (citing "*Proceeding*," Oxford English Dictionary, *available at* http://www.oed.com). Moreover, the court pointed to the fact that "the word 'proceeding' is surrounded with other words that contemplate a legal usage of the term, including 'judge or court,' 'Federal grand jury,' 'Congress,' and 'Federal Government agency.'" *Id.*

The Ninth Circuit further observed that:

Examining the term 'proceeding' within the grammatical structure of the definition at issue, it becomes clear that the term connotes some type of formal hearing. [Section 1515(a)(1)(C)] refers to proceedings "before a Federal Government agency" – a choice of phrase that would be odd if it were referring to criminal investigations. The use of the preposition "before" suggests an appearance in front of the agency *sitting as a tribunal.*

*Id.* at 1170-71 (internal citation omitted) (emphasis added); *see also United States v. Ramos*, 537 F.3d 439, 462-63 (5th Cir. 2008) ("use [of] the preposition 'before' in

connection with the term 'Federal Government agency' . . . implies that an 'official proceeding involves some formal convocation of the agency in which parties are directed to appear."). The court also considered that §1512 uses the terms "attendance, "testimony," "production" and "summon[]" when describing an official proceeding, and found the use of these terms "strongly implie[d] that some formal hearing before a tribunal is contemplated." *Id.* at 1172.

The logic and reasoning used by the *Ermoian* court in considering whether an FBI investigation fell under the scope of §1512(c) applies with equal force to interpreting the term "proceedings before the Congress." Taking §1512 and the definitions contained in §1515 as a whole, it is plain that the statute is directed at conduct that interferes with the administration of justice.[3] Even the title of the statute, "Tampering with a witness, victim, or an informant," suggests an adversarial

---

[3]     *See McAndrew v. Lockheed Martin Corp.,* 206 F.3d 1031, 1039 (11th Cir. 2000)("Section 1512 . . . applies to attempts to *prevent or influence testimony* not only in federal courts but also *before Congress*, federal agencies, and insurance regulators.")(emphasis added); *United States v. Dunn*, 434 F. Supp. 2d 1203, 1207 (MD. Ga. 2006)(" . . . § 1515(a)(1) . . . describe[s] events that are best thought of as hearings (or something akin to hearings): for example, federal court cases, grand jury testimony, *Congressional testimony*, and insurance regulatory hearings.")(emphasis added); *United States v. Georgia*, 2014 WL 2084891 (N.D. Georgia 2014) ("official proceeding" for purposes of §1512(c) did not include a FBI investigation); *United States v. Sutherland*, 921 F.3d 421 (4th Cir. 2019) (the term "proceeding" implies 'some formal convocation . . . in which parties are directed to appear") (quoting *United States v. Young*, 916 F.3d 368, 384 (4th Cir. 2019)).

proceeding related to the administration of justice.[4] There is little doubt that §1512 only criminalizes obstructive conduct related to a hearing before a tribunal affecting the administrative of justice and the ceremonial certification of the Electoral College votes does not qualify as an "official proceeding" under the statute.[5]

     c.  *The Legislative History Demonstrates that § 1512(c) Concerns the Administration of Justice*

Section 1512(c)(2) was enacted as part of the Sarbanes-Oxley Act of 2002, which was titled "Corporate Fraud Accountability," and had the express purpose of targeting "corporate malfeasance." Pub. L. No. 107-204, 116 Stat. 745. Nothing in the legislative history of the Sarbanes-Oxley Act supports the notion that Congress enacted §1512(c)(2) to criminalize the disruption of a ceremony before Congress by persons engaged in a political rally, no matter how large the crowd or how disorderly the activities of some in the crowd may have become. Rather, the Sarbanes-Oxley

---

[4]    *See I.N.S. v. Nat'l Ctr. for Immigrants' Rts., Inc.*, 502 U.S. 183, 189 (1991) ("[T]he title of a statute or section can aid in resolving an ambiguity in the legislation's text.").

[5]    This interpretation is consistent with the case law that has clarified the meaning of the statutory language at issue here. *See e.g. Arthur Anderson, LLP,* 544 U.S. at 708 (interpreting §1512(c) as requiring that the defendant have "knowledge that his actions are likely to affect [a]judicial proceeding" in order to have the "requisite intent to obstruct"); *United States v. Burge*, 711 F.3d 803, 809 (7th Cir. 2013)(considering the application of §1512 and noting that "[o]bstruction of justice occurs when a defendant acts to impede the types of proceedings that take place before judges or grand juries.") *cert. denied*, 571 U.S. 888 (2014); *United States v. Sampson*, 898 F.3d 287, 300 (2d Cir. 2018)(noting that §1512 "broadly criminalizes various forms of witness tampering").

Act "was prompted by the exposure of Enron's massive accounting fraud and revelations that the company's outside auditor, Arthur Andersen LLP, had systematically destroyed potentially incriminating documents." *Yates v. United States*, 574 U.S. 528, 535-36 (2015). The Senate Judiciary Committee report described the Act's purpose as "provid[ing] for criminal prosecution and enhanced penalties of persons who defraud investors in publicly traded securities or alter or destroy evidence in certain Federal investigations," S. REP. NO. 107-146, at 2 (2002) (emphasis added).

In *Yates*, the Supreme Court narrowly construed the term "tangible object" as set forth in 18 U.S.C. § 1519, which penalized a person who:

> knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . .

18 U.S.C. § 1519. Keeping in mind that Congress designed the Sarbanes-Oxley Act with a "trained [] attention on corporate and accounting deception and cover- ups," the Court held that the Act did not contemplate penalizing the act of tossing undersized fish overboard to avoid the consequences of an inspection by federal authorities. *Id*. at 532. Rather, in the context of the statute's purpose, a "tangible object" must be one used to record or preserve information. *Id.* Thus, while fish are

20

tangible objects in the lay sense of that phrase, they do not qualify as tangible objects under §1519 given the broader context of the Sarbanes-Oxley Act. In rendering the *Yates* decision, the Supreme Court clearly telegraphed that legal terms are to be narrowly construed given the legislative history and purpose of the Sarbanes-Oxley Act.

In short, when considering the Act's preamble and legislative history, it is clear that §1512(c) was aimed at preventing corporations from destroying records relevant to a federal hearing related to the administration of justice. The legislative background of §1512(c) makes plain that it was not intended to apply in all circumstances where *any* government function may have been impeded, and given this context, the certification of the Electoral College votes does not qualify as an "official proceeding" under the statute.

   d. *Other Tools of Statutory Interpretation Support Mr. Alam's Motion to Dismiss*

Sections 1512 and 1515 are contained in Chapter 73 of Title 18 of the United States Code. Examining the surrounding statutory provisions in Chapter 73 further supports Mr. Alam's interpretation of the statute at issue.[6] Several of the subsections

---

[6]     *See NASDAQ Stock Mkt., LLC v. Sec. & Exch. Comm'n*, 961 F.3d 421, 426 (D.C. Cir. 2020)(quoting *Util. Air Regulatory Grp. V. E.P.A.*, 573 U.S. 302, 321 (2014))("A statutory provision that may seem ambiguous in isolation is often clarified by the remainder of the

of Chapter 73 explicitly relate to the administration of justice. *See* 18 U.S.C. §§ 1503, 1504 (Influencing or injuring a juror); §1513 (Retaliating against a witness, victim or informant); § 1521 (Retaliating against a federal judge or law enforcement officer by false claim or slander of title). There is even a statute within Chapter 73 that prohibits "picketing or parading" near the residence of a judge, juror, witness, or court officer "with the intent of interfering with, obstructing, or impeding *the administration of justice*." 18 U.S.C. § 1507 (emphasis added). All of these laws are related to the obstruction of the administration of justice. Section 1512(c) falls right within their midst.

e. *Alternatively, Section 1512(c)(2) is Unconstitutionally Vague*

Under the same principles of *United States v. Johnson*, 576 U.S. 591 (2015) and its progeny, 18 U.S.C. § 1512(c)(2) violates due process because it is vague and does not provide fair notice to Mr. Alam as to the conduct it punishes. Section 1512(c)(2) provides that:

Whoever *corruptly* –

───────────────

statutory scheme[,] because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law.").

(1)  alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or

(2)  *Otherwise* obstructs, influences, or impedes any official proceeding, or attempts to do so, . . . shall be fined . . . or imprisoned . . .

18 U.S.C. §§ 1512(c)(1) and (2).

First, §1512(c) uses words throughout both subsections that require courts to speculate as to their meaning in the context of the defendant's particular actions. To wit, courts must speculate as to the meaning of the word "corruptly" and the phrase "official proceeding." Perhaps more problematic is the residual clause of subsection (c)(2), one that is so ambiguous, requiring courts to line-draw when determining if a defendant has "otherwise" obstructed, impeded, or influenced an official proceeding before Congress.

In *Johnson*, the Supreme Court considered the constitutionality of residual clause of the Armed Career Criminal Act, which enhanced a defendant's sentence if the defendant had a conviction for a prior felony that "otherwise involved conduct that presented a serious potential risk of physical injury to another." *Johnson,* 576 U.S. at 591. In finding a due process violation, the Supreme Court explained that the residual clause required a "wide-ranging inquiry" in each case as to what could potentially cause injury in each set of circumstances. *Johnson,* 576 U.S. at 597. Observing that the ambiguity of the residual clause resulted in disparate

23

interpretations, the Supreme Court acknowledged that the "failure of persistent efforts to establish a standard can provide evidence of vagueness." *Id*. at 598. Similarly, here, the residual clause of §1512(c) is constitutionally vague, requiring courts to speculate and line-draw when distinguishing "official proceedings" from mere ancillary proceedings or investigations. As discussed at length above, courts have generally interpreted "official proceeding" to mean something more formal than an investigation, but there has been no established standard, leaving the courts to deal with this ambiguity.

    Further, the vagueness of the statute is not limited to the confusion that surrounds what constitutes an "official proceeding." The D.C. Circuit has acknowledged that the word "corruptly" is vague on its face as used in a similar statute, 18 U.S.C. § 1505, that prohibits obstruction of a proceeding before departments, agencies, or congressional investigations. The court held that "in the absence of some narrowing gloss, people must guess at its meaning and application." *United States v. Poindexter*, 951 F.2d 369, 398 (D.C. Cir. 1991). Previously, in *Ricks v. District of Columbia*, 414 F.2d 1097 (D.C. Cir. 1968), the court had held that a statute that criminalized "leading an immoral or profligate life" vague because it found "immoral" to be synonymous with "corrupt, depraved, indecent, dissolute, all of which would result in 'an almost boundless area for the individual assessment of

another's behavior.'" *Poindexter*, 951 F.2d at 399 (quoting *Ricks*, 414 F.2d at 1097). The court explained that various dictionary definitions of the word "corrupt" did not reduce the confusion as to its meaning for purposes of the statute. *Id.* After an assessment of the legislative history and judicial interpretation, the court concluded that neither of those inquiries provided defendants with the constitutionally required notice that the statute requires, and found the term vague as applied to the defendant making false statements. *Id.* at 406.

Following *Poindexter*, Congress amended §1515 to define "corruptly" for purposes of §1505 only to mean "acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information." §1515(b). However, this amendment did not resolve the vagueness that still exists in §1512 as Congress did not amend §1515 as it applies to §1512.

Even though the D.C. Circuit later held that the word "corruptly" was not vague as applied, it was because in that case the defendant influenced a witness, which fits squarely within the non-vague category that Poindexter established. *See United States v. Morrison*, 98 F.3d 619, 630 (D.C. Cir. 1996). In *Morrison*, the defendant tried to influence a witness's testimony and "exhorted her to violate her legal duty to testify truthfully in court." *Id.* The *Poindexter* Court explained that

25

influencing another to "violate their legal duty" was not vague because "it would both take account of the context in which the term 'corruptly' appears and avoid the vagueness inherent in words like 'immorally.'" *Poindexter*, 951 F.2d at 379. However, *Morrison* was not faced with the question of what "corruptly" means in the context of §1512(c) and does not resolve the ambiguity that the word presents in conjunction with the rest of the statute. Even taking "corruptly influences" together is still vague because "influence" alone is another vague word and means something different than "influencing another to violate their legal duty" as described in §1515.

Further, analyzing the government's approach to charging defendants with a violation of §1512(c)(2) arising out of events on January 6, 2021, illustrates how vague and arbitrary the enforcement of this statute can be. Initially, it seemed that the government was only charging those individuals who had entered the Senate chamber[7] with a §1512(c)(2) violation. However, a snapshot of some of defendants that have been charged with a violation of §1512(c)(2) brings the inconsistencies into stark relief.

(1) *United States v. Isaac Sturgeon*, 21-cr-91, Mr. Sturgeon is alleged to have assisted in pushing a barricade outside the Capitol building but never entered the

---

[7]      The ceremonial Electoral College certification took place in the Senate Chamber.

Senate chamber, never went inside the Capitol building, and never made any threats to law enforcement or on social media suggesting he wished to disrupt the vote. Mr. Sturgeon is not alleged to be part of the Oath Keepers or the Proud Boys.

(2) *United States v. Kenneth Grayson*, 21-cr-224, Mr. Grayson is alleged to have entered the Capitol building, but not alleged to have entered the Senate chamber. Prior to January 6, 2021, he allegedly wrote in a private message, "I am there for the greatest celebration of all time after Pence leads the Senate flip! OR IM THERE IF TRUMP TELLS US TO STORM THE FUKIN CAPITOL IME DO THAT THEN!"

(3) *United States v. Benjamin Larocca*, 21-cr-317, Mr. Larocca allegedly entered the Capitol building while screaming "Our House!" He was with an individual who was allegedly yelling, "You fucking oath breakers!" Mr. Larocca is not alleged to have entered the Senate floor and is not a member of the Proud Boys or Oath Keepers.

(4) *United States v. Sean Michael McHugh*, 21-cr-436, Mr. McHugh allegedly employed bear spray in direction of officers and yelled insults at officers. He also allegedly used a megaphone and engaged the crowd with chant, such as "our house!" There is no evidence he entered the Capitol building or the Senate floor.

27

(5) *United States v. Dale Jeremiah Shalvey*, 21-cr-334, Mr. Shalvey allegedly entered the Senate chamber and is captured on video rummaging through Senator Cruz's notes. However, he is not alleged to be a part of the Oath Keepers or the Proud Boys.

As illustrated by these cases, the facts and circumstances of each vary drastically from each other and make it clear that the government's charging decisions are inconsistent. Some cases allege entry into the Capitol building while others do not. More importantly, the government does not specify what "influence" these defendants had or how exactly they "impeded."

The inconsistent charging decisions along with the inherently vague words of the statute, as well as the "residual clause" that is the basis for charging Mr. Alam all show that 18 U.S.C. § 1512(c)(2) is unconstitutionally vague and does not provide fair notice to Mr. Alam.

## V.   The Court Should Dismiss Counts Six, Seven & Eight Alleging Offenses Committed within A Restricted Building

Count Six of the First Superseding Indictment charges Mr. Alam with a violation of 18 U.S.C. § 1752(a)(1) as follows:

> On or about January 6, 2021, within the District of Columbia, Zachary Jordan Alam, did unlawfully and knowingly enter and remain in a restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its

grounds, where the Vice President was temporarily visiting, without lawful authority to do so, and during and in relation to the offense, did use and carry a deadly and dangerous weapon, that is, a helmet.

ECF Dkt. No. 36, 3-4.

Count Seven of the First Superseding Indictment charges Mr. Alam with a

violation of 18 U.S.C. § 1752(a)(2) as follows:

On or about January 6, 2021, within the District of Columbia, Zachary Jordan Alam, did knowingly, and with intent to impede and disrupt the orderly conduct of Government business and official functions, engage in disorderly and disruptive conduct in and within such proximity to, restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its grounds, where the Vice President was temporarily visiting, when and so that such conduct did in fact impede and disrupt the orderly conduct of Government business and official functions, and, during and in relation to the offense, did use and carry a deadly and dangerous weapon, that is, a helmet.

ECF Dkt. No. 36, 4.

Count Eight of the First Superseding Indictment charges Mr. Alam with a

violation of 18 U.S.C. § 1752(a)(4) as follows:

On or about January 6, 2021, within the District of Columbia, Zachary Jordan Alam, did knowingly, engage in any act of physical violence against any person and property in a restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its grounds, where the Vice President was temporarily visiting, and, during and in relation to the offense, did use and carry a deadly and dangerous weapon, that is, a helmet.

ECF Dkt. No. 36, 4-5.

These charges concern certain conduct related to statutorily "restricted building or grounds." 18 U.S.C. § 1752(c) provides the following definition:

> (1) the term "restricted building or grounds" means any posted, cordoned off, or otherwise restricted area –
>
> (A)  of the White House or its grounds, or the Vice President's official residence or grounds;
>
> (B)  **of a building or grounds where the President or other person protected by the Secret Service is or will temporarily be visiting; or**
>
> (C)  of a building or grounds so restricted in conjunction with an event designated as a special event of national significance.

18 U.S.C. § 1782(c)(1)(A)-(C) (emphasis added).

The United State Capitol and its grounds are not specifically included in the definition set forth above. Rather, the government alleges that the Capitol was a "restricted building and grounds" on January 6th because it was a "building or grounds where the President or other person protected by the Secret Service is or will temporarily be visiting." 18 U.S.C. § 1752(c)(1)(B). The "other person," as set forth in the Indictment, was then-Vice President Michael Pence. Accordingly, Mr. Alam did not violate §1752 unless then-Vice President Pence was 1) "visiting" or "temporarily visiting" the specific area that Mr. Alam traversed; and 2) the Secret Service designated that area as a restricted zone. The government cannot establish either element for the reasons that follow.

30

a. *Vice President Pence was not "temporarily Visiting the Capitol*

Then -Vice President Pence was not "temporarily visiting" the Capitol on January 6, 2021. The Capitol is a federal government building in the District of Columbia. Vice President Pence lived and worked in D.C. at his official residence, and actually worked at the Capitol Building and grounds – it was his place of employment. Vice President Pence had a permanent office "within the United States Capitol and its grounds," in his capacity as President of the Senate. On January 6th, Vice President Pence was working -- he was presiding in the Senate chamber to count the electoral votes. *See* U.S.C. § 15 ("Congress shall be in session on the sixth day of January succeeding every meeting of the electors. The Senate and House of Representatives shall meet in the hall of the House of Representatives at the hour of 1 o'clock in the afternoon on that day, and *the President of the Senate shall be their presiding officer.*") (emphasis added).

Past cases support this plain, common-sense reading of the statute, as they involve conduct in or near areas where the President and Vice President were clearly "temporarily visiting." *See United States v. Bursey*, 416 F.3d 301 (4th Cir. 2005) (defendant entered and remained in a restricted area at an airport in South Carolina where the President was visiting for a political rally); *United State v. Junot*, 902 F.2d 1580 (9th Cir. 1990) (defendant pushed his way through a restricted area where then-

Vice President George Bush was speaking at a rally at a park in Los Angeles that was secured by Secret Service agents); *Blair v. City of Evansville, Ind.*, 361 F. Supp. 2d. 846 (S.D. Ind. 2005) (defendant charged with 18 U.S.C. § 1752 at protest during then-Vice President Richard Cheney's visit to the Centre in Evansville, Indiana). These cases all involve the President and Vice President traveling *outside* of the District of Columbia and "visiting" that area for a "temporary" purpose, consistent with the plain meaning of §1752(c)(1)(B). Vice President Pence was not traveling to a speaking event or political rally on January 6th – rather he was performing a duty of his office in a building where he had a permanent office. Based on the plain language of 18 U.S.C. § 1752, he was not "temporarily visiting" the Capitol building and §1752 does not apply as charged.

  b.  *The Secret Service did not "Restrict" the Capitol or its Grounds on January 6th*

The legislative history of 18 U.S.C. § 1752 and the statutory authorization of 18 U.S.C. § 3056[8] make it clear that only the United States Secret Service ("Secret Service") can restrict areas for temporary visits by the President or Vice President. A particular place does not become restricted just because the Vice President enters

_____

  [8] This statute authorizes the Secret Service to protect high-ranking officials, including the Vice President.

it; rather, the Secret Service, the agency in charge of protecting the Vice President, must create the temporary restricted zone to facilitate its duty to protect. Indeed, the Government has specifically argued that it is the "Secret Service" that "exercise[s] its discretion to determine the scope of the restricted area necessary to protect" a designated person. *United States v. Jabr*, Cr. No. 18-105 (PLF), ECF #26 at page 9. The Government does not allege that any of the barriers that Mr. Alam allegedly crossed were specifically erected for the Vice-President's visit *at the direction of the Secret Service*. On January 6, 2021, the restrictions placed on the Capitol were created by the Capitol Police, not the Secret Service.[9] As such, a necessary factual predicate to an 18 U.S.C. § 1752 offense is lacking, and Counts Six, Seven and Eight must be dismissed for failure to state a claim.

---

[9]     Additional legislative history and language also confirm that the "posted, cordoned off, or otherwise restrict area[s]" must be created by the Secret Service to trigger the statute. As originally passed in 1970, the statute, 84 Stat. 1891, authorized the Treasury Department, which included the Secret Service at that time, to prescribe regulations for restricting grounds where the President and other protected leaders would visit. *See* 18 U.S.C. § 1752(d)(2); 84 Stat. 1891. Accordingly, the Treasury Department implemented numerous regulations, including requirements that the Secret Service designate certain "temporary residences" and "temporary offices" of their protectees and provide "notice to prospective visitors." 31 C.F.R. § 408.2(c). In 2006, Congress, likely because the Secret Service was reassigned to the Department of Homeland Security, repealed subsection (d) of §1752, which authorized the Treasury Department to promulgate regulations. *See* Pub. L. 109-177, Title VI, Sec. 602, 120 Stat. 252 (March 9, 2006). Nonetheless, the clear legislative intent behind §1752 from the date of its enactment was to provide the Secret Service with authorization to create temporary protected zones to facilitate its role in protecting the President and other protectees.

33

## VI.    Conclusion

For the reasons set forth above, Mr. Alam respectfully requests that this Honorable Court grant the foregoing motion to dismiss.

Respectfully submitted,

/s/

_____

Michael E. Lawlor
Brennan, McKenna & Lawlor, Chtd.
6305 Ivy Lane, Suite 700
Greenbelt, Maryland 20770
(301) 474-0044
mlawlor@verizon.net

34

## CERTIFICATE OF SERVICE

I hereby certify that on this day, July 13, 2022, a copy of the foregoing was sent via ECF to the United States Attorney's Office for the District of Columbia.

/s/

_____

Michael E. Lawlor