**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | )( | |
| | )( | **Criminal No. 21-190 (DLF)** |
| **v.** | )( | **Judge Friedrich** |
| | )( | **Motions Hearing: May 31, 2023** |
| **ZACHARY ALAM** | )( | |

**MOTION TO SUPPRESS
CONTENTS OF TWO NOTEBOOKS FOUND IN MOTEL ROOM
AND ANY DERIVATIVE EVIDENCE AND INFORMATION
AND POINTS AND AUTHORITY IN SUPPORT THEREOF**

COMES NOW the defendant, Zachary Alam, by and through undersigned counsel, and respectfully moves this Honorable Court, pursuant to the Fourth Amendment to the United States Constitution, to suppress the contents of two notebooks that were seized from the motel room that he had previously been arrested in and then searched.   Additionally, Mr. Alam moves the Court to suppress any evidence and information derived from the contents of those notebooks.  In support of this motion, Mr. Alam would show:

1.      After developing evidence that Mr. Alam may have been involved in illegal activity related to the events at the United States Capitol on January 6, 2021, FBI agents, armed with a warrant that had been obtained for his arrest, located Mr. Alam in a motel room in Denver, Pennsylvania and took him into custody.  This occurred on January 30, 2021.

2.      Sometime after the FBI agents arrested Mr. Alam and removed him from his motel room, a magistrate judge issued a warrant authorizing law-enforcement agents to search the motel room and seize and search various items and categories of items that

1

might be located in the room.  The warrant was obtained upon an application that
included an Affidavit in Support of an Application for a Search Warrant (Affidvit) that
had been sworn to by an FBI agent.  The items and categories of items to be seized and
searched pursuant to the warrant were described in an attachment ("Attachment B")  that
was affixed to the warrant.  Attachment B to the warrant is being submitted as an
attachment to this motion.  Attachment, "Attachment B."

      3.      Attachment B to the warrant spells out the items and categories of items to
be seized and searched by the agents executing the warrant in paragraphs lettered "a"
through "n."  In paragraph "a" of Attachment B, the agents were authorized to seize and
search "[i]tems of clothing or objects that could associate Mr. Alam with the events of
January 6."  These "items of clothing and objects" would be items of clothing and objects
that a person identified as Mr. Alam appears to be wearing and possessing in videos that
captured events inside the Capitol on January 6.  See Attachment  B ¶ "a"; Affidavit at
12-26.  In paragraph "b" of Attachment B, the agents executing the warrant were
authorized to seize and search "[a]ny mobile phones."  In paragraph "c," they were
authorized to seize and search "[a]ny laptop computer."  In paragraph "d," they were
authorized to seize and search "[e]vidence concerning planning to unlawfully enter the
U.S. Capitol, including any maps or diagrams of the buildings or its internal offices."  In
paragraph "e," they were authorized to seize and search "[e]vidence concerning unlawful
entry into the U.S. Capitol, including any property of the U.S. Capitol."  After paragraph
"e," the remaining paragraphs (paragraphs "f" through "n") do not identify any specific
items that may be seized and searched.  Rather, they only describe general categories of

"[e]vdience" concerning the events at the Capitol on January 6 that may be seized and searched.  For instance, in paragraph "h," the agents are authorized to seize and search "[e]vidence concerning the breach and unlawful entry of the United States Capitol, and any conspiracy or plan to do so, on January 6,"  and in paragraph "i," they are authorized to seize and search "[e]vidence concerning the riot and/or civil disorder at the United States Capitol on January 6."

4.      In the affidavit that was submitted for the search-and seizure warrant, the affiant indicated that, when the FBI agents arrested Mr. Alam in his motel room, they noticed that there was a "spiral bound notebook" in the room.  Affidavit at 32.   The affiant then stated:

> Based on my training and experience, as well as the investigation in dozens of other cases relating to the intrusion into the U.S. Capitol and rioting outside of it, I know that individuals like Alam take notes about the research, planning, and implementation of their crimes.  There is probable cause to believe that the Subject Premises [the motel room] contains other such repositories of research, planning and implementation of the Subject Offenses [crimes in and near the Capitol on January 6].

Id.  Nowhere in the Affidavit does the affiant provide any specific reasons for thinking that Mr. Alam actually engaged in any research or planning in relation to his alleged conduct at the Capitol on January 6 or that he ever took any notes about that alleged conduct or that he ever drew any maps or diagrams of the Capitol and its offices.  See Affidavit at 12-33 (section of Affidavit captioned, "Facts Specific to this Application").

5.      When law-enforcement agents executed the warrant to search Mr. Alam's motel room and seize and search items located therein, they seized and searched two

notebooks that were among Mr. Alam's personal effects in the room.  Copies of the

contents of these notebooks have been turned over to Mr. Alam in discovery.

6.       Nowhere in Attachment B to the search-and seizure warrant were the

agents specifically authorized to seize and search any notebooks that might be found in

Mr. Alam's motel room.

7.       The seizure and search of the notebooks was outside the scope of the

search-and-seizure warrant at issue.  Accordingly, the contents of the notebooks and any

evidence and information developed from those contents must be suppressed under the

Fourth Amendment.  Moreover, even if it could somehow be said that the seizure and

search of the notebooks was within the scope of the warrant, the authorization provided

by the warrant for that seizure and search was not based on probable cause, and

additionally, the agents could not have relied on that authorization in good faith.

Accordingly, even if the seizure and search of the notebooks could somehow be said to

be within the scope of the warrant, the contents of the notebooks and evidence and

information developed from those contents must still be suppressed under the Fourth

Amendment.

## DISCUSSION

It is a "basic principle of Fourth Amendment law that searches and seizures inside

a home without a warrant are presumptively unreasonable."  Groh v. Ramirez, 540 U.S.

551, 559 (2004).  Moreover, "[n]o less than a tenant of a house…,  a guest in a hotel

room is entitled to constitutional protection against unreasonable searches and seizures.

Stoner v. California, 376 U.S. 483, 490 (1964) (internal citations omitted) (holding that

warrantless search of hotel room violated the Fourth Amendment).   To comport with the Fourth Amendment, search-and-seizure warrants must be based upon a showing of probable cause.  See Nathanson v. United States, 291 U.S. 41, 46 (1933).  An affidavit submitted to obtain a search-and-seizure warrant will be said to make out probable cause where it shows that "there is a fair probability that contraband or evidence of a crime will be found in [the] particular place [to be searched]." Illinois v. Gates, 462 U.S. 213, 238 (1983).  It should be noted that the simple fact that there is probable cause to believe that a person has committed a crime does not mean that there is probable cause to search his effects.  See Steagald v. United States, 451 U.S. 204, 212-213 (1981); see also United States v. Griffith, 867 F.3d 1265, 1271 (D.C. Cir. 2017) ("probable cause to arrest a person will not itself justify a warrant to search his property").

The Fourth Amendment's probable-cause requirement demands that search-and-seizure warrants particularly describe the place to be searched and the items to be seized. Groh, 540 U.S. at 568; Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 307 (1967); Stanford v. Texas, 379 U.S. 476, 481-85 (1965).  The Fourth Amendment's particularity requirement is to "ensure that [a] search will be carefully tailored to its justifications, and will not take the character of the wide-ranging exploratory searches the Framers intended to prohibit." Maryland v. Garrison, 480 U.S. 79, 84 (1987).  The particularity requirement "makes general searches… impossible and prevents the seizure of one thing under a warrant describing another.  As to what is to be taken, nothing is to be left to the discretion of the officer executing the warrant." Marron v. United States, 275 U.S. 192, 196 (1927).  Accordingly, items that are to be seized and searched pursuant to a warrant

must be described in the warrant itself and not just in the documents submitted to obtain the warrant.  Groh, 540 U.S. at 557 ("The fact that the application adequately described the 'things to be seized' does not save the warrant from its facial invalidity.  The Fourth Amendment by its terms requires particularity in the warrant, not the supporting documents.")

As a general matter, where a search is conducted in violation of the Fourth Amendment, the fruits of that search must be suppressed.  Additionally, evidence and information developed from those fruits must also be suppressed Taylor v. Alabama, 457 U.S. 687, (1982); United States v. Crews, 445 U.S. 463, 471 (1980); Dunaway v. New York, 442 U.S. 590 (1975); Brown v. Illinois, 422 U.S. 590 (1975); Wong Sun v. United States, 371 U.S. 471 (1973).  Of course, in a situation involving a search warrant that is not supported by probable cause, the government can sometimes avoid application of the exclusionary if it can show that the agents conducting the search nevertheless relied on the warrant in good-faith.  United States v. Leon, 468 U.S. 897 (1984).  However, the government cannot rely on such a good-faith exception "when the affidavit [used to obtain a warrant] is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable."  Leon, 468 U.S. at 914.  Additionally, the good-faith exception does not apply where the judicial officer's action in authorizing the warrant is a "mere ratification of the bare conclusions of others."  Leon 468 U.S. at 915 (quoting Aguilar v. Texas, 378 U.S. 108, 114-115 (1964)).  Furthermore, "[e]ven if the warrant application was supported by more than a 'bare bones' affidavit, a reviewing court may properly conclude that, notwithstanding the deference that magistrates deserve, the

warrant was invalid because the magistrate's probable-cause determination reflected an improper analysis of the totality of the circumstances." Leon, 468 U.S at 915 (citing Gates, 462 U.S. at 238-239).   Also, "a warrant may be so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." Leon, 468 U.S. at 923.

**A.      The Seizure and Search of the Notebooks was Outside the Scope of the Warrant, and Suppression is Therefore Required**

Here, while the affidavit that was submitted in connection with the application for the warrant at issue did make mention of one "spiral bound notebook" that was observed by the law-enforcement agents in Mr. Alam's motel room at the time they arrested him there, the fact remains that the warrant itself did not authorize the agents executing it to seize and search any notebooks that might be found in the motel room.  Accordingly, the seizure and search of the two notebooks that were found in the room was outside the scope of the warrant and must therefore simply be viewed as a warrantless seizure and search of items found in a location that is akin to a person's home (a motel room).  Such a seizure and search is, of course, presumptively unreasonable.  Thus, the contents of the notebooks must be suppressed.  Additionally, evidence and information developed from whatever was in the notebooks must also be suppressed.

**B.      Even if the Seizure and Search of the Notebooks is Deemed to be Within the Scope of the Warrant, Suppression is Still Required**

It is recognized that, notwithstanding the fact that the warrant did not specifically authorize the agents executing it to seize and search any notebooks found in Mr. Alam's

motel room, the government will still undoubtedly argue that the seizure and search of the notebooks at issue here was nevertheless within the scope of the warrant.  However, on this point, it must be acknowledged that there is really only one lettered paragraph in Attachment B to the warrant that the government could possibly try to rely on for making such an argument—that is, paragraph "d," which authorized the agents to seize and search "[e]vidence concerning planning to unlawfully enter the U.S. Capitol, including any maps or diagrams of the building or its internal offices."  Citing this paragraph, the government could conceivably try to argue that the notebooks were covered by the warrant because they might contain planning notes that Mr. Alam might have made in regards to entering the Capitol on January 6 or maps or diagrams that he made in preparation for such entry.  However, before explaining why the government cannot rely on paragraph "d" to justify the seizure and search of the notebooks at issue here, it is perhaps worthwhile to point out how none of the other lettered paragraphs in Attachment B could possibly justify the seizure and search of the notebooks.

In Attachment B, paragraph "a" authorized the agents to seize and search "[i]tems of clothing or objects that could associate Mr. Alam with the events of January 6."  Paragraph "b" authorized them to seize and search "[a]ny mobile phones."  Paragraph "c" authorized to seize and search "[a]ny laptop computer."  And paragraph "e" authorized them to seize and search "[e]vidence concerning unlawful entry into the U.S. Capitol, including any property of the U.S. Capitol."  It seems patently obvious that the notebooks at issue here are simply not covered by paragraphs "a," "b," "c," and "e."  Moreover, as for paragraphs "f" through "n," these paragraphs do not reference any specific items but

rather only general categories of "[e]vdience" concerning events at the Capitol on

January 6.  Thus, to the extent it might be said that these paragraphs authorized the

seizure and search of the notebooks, such authorization would be facially invalid.  As

already stated, supra at 5-6, to comport with the Fourth Amendment, a warrant must state

with particularity the items to be seized and searched and not leave the decision as to

what is to be seized and searched up to the discretion of the officers executing the

warrant.  It cannot be credibly claimed that a blanket authorization to seize and search

items based on the executing officers' determination that the items could fall under

general categories of  "[e]vidence" concerning events at the Capitol on January 6

comports with the Fourth Amendment's particularity requirement.  Nor can it be credibly

claimed that, given the facial deficiency of such an authorization, the agents executing

the warrant at issue here could have reasonably presumed that such an authorization

allowed them to seize and search the notebooks.

Given the above, it must be acknowledged that paragraph "d" of Attachment B is

the only paragraph that the government could possibly cite in support of any argument

that the seizure and search of the notebooks at issue here came within the scope of the

warrant.  However, to the extent the government would cite paragraph "d" to justify the

agents' seizure and search of the notebooks, the argument would fail.  This is because the

affidavit that was submitted with the application for the warrant provides no information

to indicate that, prior to entering the Capitol of January 6, Mr. Alam ever took any notes

or drew and maps or diagrams of the Capitol and its offices.  Indeed, the affidavit does

not provide any specific information to show that Mr. Alam ever even performed any

pre-planning at all in regards to the conduct he is alleged to have engaged in on January 6. To be sure, the affiant does indicate that, "based on my training and experience, as well as the investigation in dozens of other cases relating to the intrusion into the U.S. Capitol and rioting outside of it, I know that individuals like Alam take notes about the research, planning, and implementation of their crimes." However, using such a sweeping and completely unsupported generalization about what other people have purportedly been known to do as a basis for showing what Mr. Alam might have done can hardly be said to provide a particularized reason for establishing that Mr. Alam probably took notes in regards to the crimes he is alleged to have committed in connection with the events of January 6 so as to justify the seizure and search of any notebooks he might have on the belief that they might contain such notes. Additionally, given that the authorization provided by paragraph "d" to seize and search the notebooks was based on an affidavit that was so "bare bones" and lacking in indicia of probable cause in regards to establishing that any notebooks that might be in Mr. Alam's motel room would contain notes about his research, planning, and implementation of the crimes he is alleged to have committed, it cannot be credibly claimed that it was objectively reasonable for the agents executing the warrant to have relied on that authorization to seize and search the notebooks. See Griffith, 867 F.3d at 1278 (the Leon good-faith exception did not apply where law-enforcement agents executed a search warrant at the defendant's residence for any phone he might have but the affidavit that was submitted with the application for the warrant provided no specific information to indicate that incriminating information would be found on any such phone).

For the above reasons, to the extent it could be said that the seizure and search of the notebooks found in Mr. Alam's motel room did fall within the scope of the warrant at issue here, that seizure and search was still not based on a proper showing of probable cause, and additionally, the law-enforcement agents executing the warrant could not have relied on it in good faith.  Thus, even if the seizure and search of the notebooks was within the scope of the warrant, the contents of the notebooks must still be suppressed.

## **CONCLUSION**

WHEREFORE, the defendant, Zachary Alam, moves this Honorable Court to suppress the contents of the notebooks that were seized in his motel room and then searched and any evidence and information derived from the contents of those notebooks.

Respectfully submitted,

_____/s/_____
Jerry Ray Smith , Jr.
Counsel for Zachary Alam
D.C. Bar No. 448699
717 D Street, N.W.
Suite 310
Washington, DC 20004
E-mail: jerryraysmith@verizon.net
Phone: (202) 347-6101

11

**ATTACHMENT B**

***Particular Things to be Seized***

1) The items to be seized are fruits, evidence, information, contraband, or instrumentalities, in whatever form and however stored, relating to violations of 18 U.S.C. § § 111(a) and (b) (interference with official duties); § 1361 (depredation of United States property); § 1512(c)(2) (obstruction of Congress); § 231 (civil disorders); § 1752(a)(1) and (2) (unlawful entry on restricted buildings or grounds); and Title 40 U.S.C. Section 5104(e)(2) (violent entry, disorderly conduct, and other offenses on capitol grounds) (the "Target Offenses") that have been committed by Zachary Alam ("the Subject") as described in the search warrant affidavit; including, but not limited to the following:

   a) Items of clothing or objects that could associate Alam with the events of January 6, 2021, including but not limited to: (i) a yellow and black shirt bearing the word "Pirelli;" (ii) a fur lined hat; (iii) a dark-colored helmet; (iv) a dark-colored jacket; (v) a pair of dark-colored glasses; (vi) a dark-colored face mask; (vii) a light-colored backpack; (viii) dark pants; and (ix) a dark-colored smart phone.

   b) Any mobile phones, including but not limited to the dark-colored smartphone and the dark-colored flip phone.

   c) Any laptop computer, including but not limited to the dark-colored Apple computer.

   d) Evidence concerning planning to unlawfully enter the U.S. Capitol, including any maps or diagrams of the building or its internal offices;

   e) Evidence concerning unlawful entry into the U.S. Capitol, including any property of the U.S. Capitol;

   f) Evidence concerning awareness of the official proceeding that was to take place at Congress on January 6, 2021, i.e., the certification process of the 2020 Presidential Election;

   g) Evidence concerning efforts to disrupt the official proceeding that was to take place at Congress on January 6, 2021, i.e., the certification process of the 2020 Presidential Election;

   h) Evidence concerning the breach and unlawful entry of the United States Capitol, and any conspiracy or plan to do so, on January 6, 2021;

   i) Evidence concerning the riot and/or civil disorder at the United States Capitol on January 6, 2021;

   j) Evidence concerning the assaults of federal officers/agents and efforts to impede such federal officers/agents in the performance of their duties the United States Capitol on January 6, 2021;

2

k) Evidence of any conspiracy, planning, or preparation to commit those offenses;

l) Evidence concerning efforts after the fact to conceal evidence of those offenses, or to flee prosecution for the same;

m) Evidence of the state of mind of the subject and/or other co-conspirators, *e.g.*, intent, absence of mistake, or evidence indicating preparation or planning, or knowledge and experience, related to the criminal activity under investigation; and

n) Evidence concerning the identity of persons who either (i) collaborated, conspired, or assisted (knowingly or unknowingly) the commission of the criminal activity under investigation; or (ii) communicated with the unlawful actors about matters relating to the criminal activity under investigation, including records that help reveal their whereabouts.