UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CASE NO. 21-CR-190 (DLF) |
| v. | : | |
| | : | |
| ZACHARY ALAM, | : | |
| | : | |
| Defendant | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE OBTAINED PURSUANT
TO SEARCH WARRANTS**

Defendant Zachary Alam moves to suppress spiral notebooks, and derivative evidence, recovered from his motel room under an authorized search warrant shortly after his arrest. ECF No. 56. The Court should deny Alam's motion. First, the warrant described the items, including the notebooks, subject to seizure with sufficient particularity. Second, the search warrant affidavit provided a sufficient nexus to establish the likelihood that evidence of Alam's participation in the January 6 breach would be located in the motel room. Finally, law enforcement objectively, reasonably, and in good faith, relied upon the magistrate's authorizations in concluding that the warrant articulated probable cause and identified the items to be seized with the requisite specificity. Quite simply, the evidence should not be suppressed.

**I. Statement of Relevant Facts**

Alam traveled to attend the "Stop the Steal" rally on January 6, 2021, in Washington, D.C. From the rally, he proceeded to U.S. Capitol grounds, penetrated the restricted perimeter and joined throngs of rioters on the lower west terrace. Alam, who was wearing a gray backpack, jumped through a broken-out window on the Senate wing of the building at 2:17 p.m., shortly after this first breach of the buildings walls occurred.

Once inside the building, Alam traveled to different areas, changed his clothes, and threw a red velvet rope from a third-floor House balcony at police officers who were below on the level down.  At 2:33 p.m., Alam headed to the Will Rogers corridor, a hallway connecting Statuary Hall to the House Chamber's Main Door.  A line of officers stood guard between the corridor and the House Main Door, which led directly into the House chamber.  Alam yelled at officers, laughed, argued with other rioters, and joined the mob that pushed through the police line.  He stood toward the back as the rioters in the front attacked the glass in the House Main Door, clamoring to get in.

At 2:41 p.m., after unsuccessfully trying to breach the House Main Door, Alam and others headed to the Speaker's Lobby Door—another entry point at the rear of the House chamber.  Three officers stood guard at the Speaker's Lobby Door, with furniture piled behind them to provide a barricade.  Alam walked up to these officers and looked through the glass of the door, where members of Congress and staff were evacuating the House chamber.

Now at the front of the mob, and acutely aware that his quarry was escaping, Alam punched the glass repeatedly with his fist and shattered two panes of glass in the doors.  As he punched, he pushed up against two officers.  Eventually, Alam used a black helmet to smash the glass and other rioters yelled that there was a gun behind the door.  Officers behind the House chamber door drew their guns in response to the crowd. But Alam continued to smash the last glass pane in the door, enabling a woman to climb through the window, where she was shot.

On January 25, 2021, an arrest warrant was issued for Alam.  On January 29, a "ping" order was issued for a telephone number associated with Alam.  Using that data, Alam was tracked to the Penn Amish Motel in Denver, Pennsylvania.  The next day, agents executed the warrant and arrested Alam inside his motel room.  During the arrest, agents observed, in plain view, several items, including spiral notebooks, next to the backpack Alam wore on January 6.

An FBI agent obtained a warrant to search the motel and seize fruits, evidence, and instrumentalities of Alam's criminal offenses on January 6, just a few weeks before. *See* Exhibit A. In the accompanying affidavit, the agent identified the "spiral bound notebooks" observed during Alam's arrest and explained that they may document research, planning, and implementation of his activities of January 6:

> Based on my training and experience, and discussions with other law enforcement officers, as well as the investigation in this case and the FBI's investigation in dozens of other cases relating to the intrusion into the U.S. Capitol and the rioting outside of it, I know that individuals like Alam take notes about the research, planning, and implementation of their crimes. There is probable cause to believe that the spiral bound notebook contains fruits, evidence, and/or instrumentalities of the Subject Offenses. There is also probable cause to believe that the Subject Premises contains other such repositories of research, planning and implementation of the Subject Offenses.

Patterson Aff. ¶ 82. Attachment B listed the items to be seized. Paragraph one reads:

> The items to be seized are fruits, evidence, information, contraband, or instrumentalities, in whatever form and however stored, relating to violations of 18 U.S.C. §§ 111(a) and (b) (interference with official duties); § 1361 (depredation of United States property); § 1512(c)(2) (obstruction of Congress); § 231 (civil disorders); § 1752(a)(1) and (2) (unlawful entry on restricted buildings or grounds); and Title 40 U.S.C. Section 5104(e)(2) (violent entry, disorderly conduct, and other offenses on capitol grounds) (the "Target Offenses") that have been committed by Zachary Alam ("the Subject") as described in the search warrant affidavit; including, but not limited to the following:

The attachment then listed various categories of fruits, evidence, information, contraband, or instrumentalities. Of note, paragraphs (d) through (n) list "evidence" concerning planning, efforts, awareness, or preparation of the crimes alleged. Paragraph (m) sought any evidence regarding motive and intent. And paragraph (n) sought any evidence pertaining to identity of perpetrators of the alleged crimes from January 6, 2021.

A magistrate judge authorized the search warrant. Law enforcement then searched Alam's motel and seized the two spiral bound notebooks. The contents on the notebooks contain references to January 6 and evidence of Alam's consciousness of guilt.

## II.     Applicable Legal Standards

In evaluating probable cause, the assessment should be a "practical, common-sense decision whether, when given all the circumstances set forth in the affidavit … there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Cardoza*, 713 F.3d 656, 659 (D.C. Cir. 2013) (citing *Illinois v. Gates*, 462 U.S. 213 (1983)). The sufficiency of the showing underlying the issuance of a search warrant requires "not a prima facie showing" but only a "fair probability." *Gates*, 462 U.S. at 235. In *District of Columbia v. Wesby*, the Supreme Court recently further reaffirmed that:

> Because probable cause deals with probabilities and depends on the totality of the circumstances, it is a fluid concept that is not readily, or even usefully, reduced to a neat set of legal rules. It requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.

138 S. Ct. 577, 586 (2018) (citations and punctuation omitted).

As articulated by the Court, "[p]robable cause is not a high bar." *Id*. Probable cause is satisfied when the search warrant application provides (1) a substantial basis for concluding that a search will uncover evidence of wrongdoing from a particular location, and (2) that a nexus exists between the item seized and criminal behavior. *United States v. Griffith*, 867 F.3d 1265, 1721 (D.C. Cir. 2017) (citations and punctuation omitted).

Moreover, "[u]nder *United States v. Leon*, [468 U.S. 897 (1984)] suppression of evidence is usually not required when officers conduct a search in reasonable reliance on a search warrant issued by a detached and neutral magistrate." *Cardoza*, 713 F.3d at 658 (citing *Leon*, 468 U.S. at 913).

### III.	Argument

This Court should deny Alam's Motion to Suppress the spiral bound notebooks—and derivative evidence and information—recovered from his motel room during the warrant-authorized search.

    **A.	The warrant authorized the seizure of the spiral bound notebooks with the requisite particularity.**

The Fourth Amendment requires that warrants "particularly describe[e]" the "things to be seized." U.S. Const. amend. IV. This requirement ensures that a search is "carefully tailored" to avoid a "wide-ranging exploratory search." *Griffith*, 867 F.3d at 1275 (citing *Maryland v. Garrison*, 480 U.S. 79, 84 (1987)). "In assessing particularity, 'courts are concerned with realities of administration of criminal justice if the warrant signed by the judicial officer is particular enough if read with reasonable effort by the officer executing the warrant." *United States v. Dale*, 991 F.2d 819, 846 (D.C. Cir. 1993). Furthermore, in certain circumstances, courts read the warrant and the affidavit as one document if the warrant incorporates the affidavit by reference. *See United States v. Maxwell*, 920 F.2d 1028, 1031 (D.C. Cir. 1990).

Attachment B specifically authorized the seizure of the notebooks during the search of Alam's motel room. They accordingly qualify "evidence, information, contraband, or instrumentalities" of Alam's alleged obstruction, property, civil disorder, and unlawful entry offenses on January 6. *See* Attachment B, ¶ 1. In addition, the warrant specifically authorized the seizure of evidence showing Alam's:

- "planning to unlawfully enter the U.S. Capitol,"
- "unlawful entry into the U.S. Capitol,"
- "awareness of the official proceeding that was to take place at Congress on January 6, 2021,"
- "efforts to disrupt the official proceeding,"
- "breach and unlawful entry of the United States Capitol
- "the riots and/or civil disorder at the United States Capitol"

- "assault of federal officers/agents in the performance of their duties"
- "conspiracy, planning, or preparation"
- "effort after the fact to conceal evidence of those offenses, or to flee prosecution for the same"
- "state of mind"
- "identity"

*See* Attachment B, ¶ 1 (d)-(n). Because the provisions plainly describe the spiral bound notebooks' contents, the officers justifiable seized them during the search.

Lest any doubt remain, Attachment B also "incorporate[d] the affidavit by reference." *Maxwell*, 920 F.2d at 1031 (citation omitted). Namely, Attachment B authorized the seizure of "fruits, evidence, information, contraband, or instrumentalities, in whatever form and however stored, relating to [the target offenses] that have been committed by Zachary Alam … *as described in the search warrant affidavit*." Attachment B, ¶ 1 (emphasis added). And, as noted, the affidavit stated that arresting officers had observed the spiral bound notebooks in Alam's motel room and explained that such notebooks may contain fruits, evidence, or instrumentalities of Alam's criminal conduct on January 6, including his research, planning, and implementation. In this instance, the search warrant should also be "construed with reference to the affidavit supporting it for purposes of satisfying the particularity requirement." *Maxwell*, 920 F.2d at 1031. When read together, the warrant and affidavit focused the executing officer's search and seizure on records (such as the spiral bound notebooks) in Alam's motel room showing his planning or participation in the U.S. Capitol siege on January 6.

All told, the warrant did not authorize the type of "wide-ranging exploratory search[] the Framers intended to prohibit." *Garrison*, 480 U.S. at 84. It was limited to one geographic area (Alam's motel room) and to evidence concerning one particular subject (criminal offenses at the U.S. Capitol on January 6). The warrant accordingly satisfied the particularity requirement.

### B. The warrant was supported by probable cause.

The search warrant also demonstrated "a nexus" between the evidence targeted by the warrant and the alleged "criminal behavior." *Griffith*, 867 F.3d at 1271 (citing *Groh*, 540 U.S. at 568); *Warden v. Hayden*, 387 U.S. 294, 307 (1967)). In evaluating whether a sufficient nexus exists, the issuing magistrate must make "a practical common sense decision whether, given all the circumstances set forth in the affidavit … there is a fair probability that [ ] evidence of a crime will be found in a particular place." *United States v. Ribeiro*, 397 F.3d 43, 48 (1st Cir. 2005) (quoting *Gates*, 462 U.S. at 238). "[T]he nature of the item and the normal inferences of where one would likely keep such evidence" may establish a nexus. *United States v. Anderson*, 851 F.2d 727, 729 (4th Cir. 1988); *see also Ribeiro*, 397 F.3d at 48.

The probable-cause standard "is not a high bar," *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (citation omitted), and "is less than a preponderance of the evidence," *United States v. Burnett*, 827 F.3d 1108, 1114 (D.C. Cir. 2016). In the context of a search warrant, a magistrate need only determine whether "reasonable inferences" from the evidence described in the warrant application establish a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 240 (1983). Because the probable-cause standard deals not "with hard certainties, but with probabilities," *id*. at 231 (citation omitted), the facts presented to the magistrate need only "'warrant a person of reasonable caution in the belief' that contraband or evidence of a crime is present," *Florida v. Harris*, 568 U.S. 237, 243 (2013) (brackets and citation omitted).

The affidavit in this case set forth compelling facts and circumstances showing a fair probability that Alam's motel room would contain evidence of a crime. First, it documented various criminal activities by Alan and others on January 6. The U.S. Capitol building was locked

and secured; only authorized individuals could enter it. Yet a mob, including Alam, forced entry into the building: breaking windows, assaulting U.S. Capitol Police officers, and forcing the suspension of the joint session of Congress. Second, the affidavit explained why Alam's motel room would likely contain evidence of those activities. It noted that many rioters, Alam included, took steps to research and prepare for their siege on the U.S. Capitol. Aff. ¶¶ 81-82. And the affidavit explained that law enforcement had observed a gray backpack in the motel room during Alam's arrest consistent with the one he was carrying on the day of his offense. *Id*. ¶ 79. Because that backpack matched the one carried by Alam on January 6 at the U.S. Capitol, *id*. ¶ 45, the magistrate judge reasonably concluded that relevant evidence would be found at the motel room. Ample probable cause accordingly supported this search.

        C.        **The good-faith exception independently forecloses relief.**

In all respects, the good-faith exception forecloses application of the exclusionary rule in this case. The exclusionary rule is a "'judicially created remedy'" that is "designed to deter police misconduct." *United States v. Leon*, 468 U.S. 897, 906, 916 (1984) (citation omitted). The Supreme Court has explained that in order to justify suppression, a case must involve police conduct that is "sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system" in suppressing evidence. *Herring v. United States*, 555 U.S. 135, 144 (2009); *see Davis v. United States*, 564 U.S. 229, 236-239 (2011).

*Leon* recognized a good-faith exception to the exclusionary rule in the context of search warrants: evidence should not be suppressed if officers acted in an "objectively reasonable" manner in relying on a search warrant, even if the warrant was later deemed deficient. 468 U.S. at 922. *Leon* noted, for instance, that an officer's reliance would not be objectively reasonable

and secured; only authorized individuals could enter it. Yet a mob, including Alam, forced entry into the building: breaking windows, assaulting U.S. Capitol Police officers, and forcing the suspension of the joint session of Congress. Second, the affidavit explained why Alam's motel room would likely contain evidence of those activities. It noted that many rioters, Alam included, took steps to research and prepare for their siege on the U.S. Capitol. Aff. ¶¶ 81-82. And the affidavit explained that law enforcement had observed a gray backpack in the motel room during Alam's arrest consistent with the one he was carrying on the day of his offense. *Id*. ¶ 79. Because that backpack matched the one carried by Alam on January 6 at the U.S. Capitol, *id*. ¶ 45, the magistrate judge reasonably concluded that relevant evidence would be found at the motel room. Ample probable cause accordingly supported this search.

    C.    **The good-faith exception independently forecloses relief.**

In all respects, the good-faith exception forecloses application of the exclusionary rule in this case. The exclusionary rule is a "'judicially created remedy'" that is "designed to deter police misconduct." *United States v. Leon*, 468 U.S. 897, 906, 916 (1984) (citation omitted). The Supreme Court has explained that in order to justify suppression, a case must involve police conduct that is "sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system" in suppressing evidence. *Herring v. United States*, 555 U.S. 135, 144 (2009); *see Davis v. United States*, 564 U.S. 229, 236-239 (2011).

*Leon* recognized a good-faith exception to the exclusionary rule in the context of search warrants: evidence should not be suppressed if officers acted in an "objectively reasonable" manner in relying on a search warrant, even if the warrant was later deemed deficient. 468 U.S. at 922. *Leon* noted, for instance, that an officer's reliance would not be objectively reasonable

and secured; only authorized individuals could enter it. Yet a mob, including Alam, forced entry into the building: breaking windows, assaulting U.S. Capitol Police officers, and forcing the suspension of the joint session of Congress. Second, the affidavit explained why Alam's motel room would likely contain evidence of those activities. It noted that many rioters, Alam included, took steps to research and prepare for their siege on the U.S. Capitol. Aff. ¶¶ 81-82. And the affidavit explained that law enforcement had observed a gray backpack in the motel room during Alam's arrest consistent with the one he was carrying on the day of his offense. *Id*. ¶ 79. Because that backpack matched the one carried by Alam on January 6 at the U.S. Capitol, *id*. ¶ 45, the magistrate judge reasonably concluded that relevant evidence would be found at the motel room. Ample probable cause accordingly supported this search.

    C.    **The good-faith exception independently forecloses relief.**

In all respects, the good-faith exception forecloses application of the exclusionary rule in this case. The exclusionary rule is a "'judicially created remedy'" that is "designed to deter police misconduct." *United States v. Leon*, 468 U.S. 897, 906, 916 (1984) (citation omitted). The Supreme Court has explained that in order to justify suppression, a case must involve police conduct that is "sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system" in suppressing evidence. *Herring v. United States*, 555 U.S. 135, 144 (2009); *see Davis v. United States*, 564 U.S. 229, 236-239 (2011).

*Leon* recognized a good-faith exception to the exclusionary rule in the context of search warrants: evidence should not be suppressed if officers acted in an "objectively reasonable" manner in relying on a search warrant, even if the warrant was later deemed deficient. 468 U.S. at 922. *Leon* noted, for instance, that an officer's reliance would not be objectively reasonable

when a warrant was "so facially deficient … in failing to particularize the place to be searched or the things to be seized … that the executing officers cannot reasonably presume it to be valid." *Id.* at 923 (citation and internal quotation marks omitted). "[T]he threshold for establishing" such a deficiency "is a high one, and it should be." *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012). "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *Leon*, 468 U.S. at 921.

Because the officers who executed the search warrant reasonably relied on the magistrate judge's probable cause and particularity determinations, they engaged in "nonculpable, innocent police conduct." *Davis*, 564 U.S. at 240. Suppression is thus unwarranted in all respects.

## IV. **CONCLUSION**

For the foregoing reasons, Alam's motion to suppress evidence (ECF No. 56) should be denied.

        Respectfully submitted,

        MATTHEW M. GRAVES
        United States Attorney
        D.C. Bar No. 481052

By:   /s/ Rebekah Lederer

        REBEKAH LEDERER
        Pennsylvania Bar No. 320922
        Assistant U.S. Attorney
        601 D Sreet. N.W
        Washington, DC 20530
        (202) 252-7012
        rebekah.lederer@usdoj.gov

        /s/ Joseph S. Smith, Jr.
        JOSEPH S. SMITH. JR.
        CA Bar No. 200108
        Assistant U.S. Attorney
        601 D Street, N.W.
        Washington, D.C. 20530
        (619) 546-8299
        joseph.s.smith@usdoj.gov