**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CASE NO. 21-CR-190 (DLF)** |
| **v.** | : | |
| | : | |
| **ZACHARY ALAM,** | : | |
| | : | |
| **Defendant** | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S**
**MOTION FOR A UNANIMITY INSTRUCTION**

Zachary Alam traveled to Washington, D.C., where he joined a mob outside of the U.S. Capitol on January 6, 2021. Alam entered the restricted perimeter, made his way past barriers and through Capitol grounds to the Senate wing doors and entered the Capitol Building. Alam traveled throughout the Capitol and at one point approached the rear door to the House Chamber at the Speaker's Lobby.  Once there, he smashed a window that separated the mob from the retreating members of Congress and their staff.  In doing so, he is also alleged to have assaulted U.S. Capitol Police Officers. His journey was documented extensively through photos and videos.

Alam now moves for the Court to instruct the jury at trial that they must unanimously agree on the specific officer or officers that his charged conduct involved in Counts One, Two, and Three of the Indictment. ECF No. 59. As detailed below, Alam has provided no compelling reason for the Court to do so, and the Court should deny his motion as the facts and the law do not support it.

## I.    STATEMENT OF FACTS

Alam traveled from his home to attend the "Stop the Steal" rally on January 6, 2021, in Washington, D.C.  From the rally, he proceeded to U.S. Capitol grounds, penetrated the restricted perimeter and joined throngs of rioters on the lower west terrace.  Alam, who was wearing a gray backpack, jumped through a broken-out window on the Senate wing of the building at 2:17 p.m.,

1

shortly after this first breach of the building's walls occurred.  Once inside the building, Alam traveled to different areas, changed his clothes, and threw a red velvet rope from a third-floor House balcony at police officers the next level down. At 2:33 p.m., Alam headed to the Will Rogers corridor, a hallway connecting Statuary Hall to the House Chamber's Main Door. A line of officers stood guard between the corridor and the House Main Door, which led directly into the House chamber. Alam yelled at officers, laughed, argued with other rioters, and joined the mob that pushed through the police line. He stood toward the back as the rioters in the front attacked the glass in the House Main Door, clamoring to get in.

At 2:41 p.m., after unsuccessfully trying to breach the House Main Door, Alam and others headed to the doors to the Speaker's Lobby—another entry point at the rear of the House chamber. Three U.S. Capitol Police officers stood guard at the Speaker's Lobby Doors, with furniture piled behind them to provide a barricade. Alam walked up to these officers and looked through the glass of the door, where members of Congress and staff were evacuating the House chamber.

Now at the front of the mob, and acutely aware that his quarry was escaping, Alam punched the glass repeatedly with his fist and shattered two glass door panes of glass in the doors. As he punched, he pushed up against two officers. Eventually Alam used a black helmet to smash the glass and other rioters yelled that there was a gun behind the door. Officers behind the House chamber door drew their guns in response to the crowd. But Alam continued to smash the last glass pane in the door, enabling a woman to climb through the window, where she was shot.

Throughout his path through the U.S. Capitol Building Alam's movements and activities were captured by closed circuit television, along with numerous videos being recorded by other rioter in the building. In fact, during the exact activities that Alam focuses on in the present unanimity instruction, there exist multiple videos which recorded the very conduct in question.

Below are still images from those videos which were included in the Criminal Complaint in this

case. ECF No. 1-1 at 6-13.

IMAGES OF ALAM PUSHING UP AGAINST OFFICERS AND PUNCHING THE WINDOWS



IMAGE 1



IMAGE 2



IMAGE 3

IMAGES OF ALAM GRASPING HELMET AND SMASHING DOORS AND SIDELIGHT



IMAGE 4



IMAGE 5[1]

---

[1] Images 5, 6, and 7 are taken starting at approximately minute 34:00 of a video posted and still publicly viewable at https://archive.org/details/nYiFQbNc65jwFYCWY



IMAGE 6



IMAGE 7



IMAGE 8



IMAGE 9

The Defendant was charged in a Superseding Indictment on November 10, 2021, with, among other charges, the following:

## COUNT ONE

On or about January 6, 2021, within the District of Columbia, **ZACHARY JORDAN** ALAM, did forcibly assault, resist, oppose, impede, intimidate, and interfere with, an officer and employee of the United States, and of any branch of the United States Government (including any member of the uniformed services), that is, officers from the United States Capitol Police Department located on both sides of the door in proximity to the Speaker's Lobby, while such persons were engaged in and on account of the performance of official duties, and where the acts in violation of this section involve the intent to commit another felony.

**(Assaulting, Resisting, or Impeding Certain Officers,** in violation of Title 18, United States Code, Section 11 l(a)(l))

## COUNT TWO

On or about January 6, 2021, within the District of Columbia, **ZACHARY JORDAN ALAM,** using a deadly or dangerous weapon, that is, a helmet, did forcibly assault, resist, oppose, impede, intimidate, and interfere with, an officer and employee of the United States, and of any branch of the United States Government (including any member of the uniformed services), that is, officers from the United States Capitol Police Department located on both sides of the door in proximity to the Speaker's Lobby, while such persons were engaged in or on account of the performance of official duties.

**(Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon,** in violation of Title 18, United States Code, Sections 11 l(a)(l) and (b))

## COUNT THREE

On or about January 6, 2021, within the District of Columbia, **ZACHARY JORDAN ALAM,** committed and attempted to commit an act to obstruct, impede, and interfere with a law enforcement officer, that is, an officer from the United States Capitol Police, lawfully engaged in the lawful performance of his official duties, incident to and during the commission of a civil disorder which in any way and degree obstructed, delayed, and adversely affected commerce and the movement of any article and commodity in commerce and the conduct and performance of any federally protected function.

**(Civil Disorder and Aiding and Abetting,** in violation of Title 18, United States Code,Sections 23l(a)(3) and 2)

## II.    ARGUMENT

In this present motion, citing only two cases, neither of which directly support his position, Alam argues that the Court should instruct the jury they must unanimously agree on the specific officer or officers that his charged conduct involved.in Counts One, Two, and Three of the Indictment. This motion is unsupported by the law and the facts and should be denied.

As an initial matter, Alam concedes in his motion that "[a]ssaultive conduct directed at multiple officers can constitute but a single offense under 18 U.S.C. § 111." ECF No. 59 at 3(citing *Ladner v. United States*, 358 U.S. 168, 177 (1958).

Importantly in *Ladner*, the Supreme Court held that the unit of prosecution for a predecessor statute to 18 U.S.C. 111 is not the number of officers assaulted, impeded, etc., but instead the number of assaultive acts: "the act of hindrance as the unit of prosecution without regard to the number of federal officers affected by the act." *Id*. at 176. Thus, so long as the jury is unanimous as to the act of assault, it would be immaterial whether it is unanimous as to the identity of the federal officers affected.

The Sixth Circuit addressed this issue directly in *United States v. Cooks*, 455 F. App'x 584, 586 (6th Cir. 2012). In *Cooks* the Sixth Circuit rejected the defendant's argument that "the one-count indictment…. actually charged four separate offenses, one offense for each corrections officer named, and created the potential for a non-unanimous verdict." The court explained that "the brief melee that ensued when the four corrections officers intervened in the fight and struggled to subdue the defendant represented a single assaultive event against multiple officers. Irrespective of how many federal officers defendant managed to hit in the process, defendant has not shown that it was error, much less plain error, to instruct the jury that it could convict if it found defendant had assaulted, resisted, or impeded one or more of the named corrections officers." *Id.* at 587.

Generally speaking, there is "a distinction between the elements of an offense and means by which the Government may satisfy an element." *United States v. Powell*, 266 F.3d 1181, 1196 (10th Cir. 2000). "Elements . . . must be found unanimously by the jury. . . . On the other hand, the jury need not agree unanimously on the means by which an element is proven." *Id.*; *see also, e.g.*, *United States v. Adams*, 200 F. Supp. 3d 141, 146 (D.D.C. 2016) ("the Supreme Court and other circuits have generally held that juries must be unanimous about the elements of offenses, but not the means by which defendant's actions satisfy those elements").

As the Second Circuit recently noted in finding no special unanimity is required under Section 111 with regard to "which theory of the offense — assaulting, resisting, opposing, impeding, intimidating, or interfering — supports the verdict":

> Indeed, "different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict." *McKoy v. North Carolina*, 494 U.S. 433, 449 (1990) (Blackmun, J., concurring) (footnotes omitted); see also *Schad*, 501 U.S. at 649 (Scalia, J., concurring in part and concurring in the judgment) ("[I]t has long been the general rule that when a single crime can be committed in various ways, jurors need not agree upon the mode of commission.").

*United States v. McIntosh*, 753 F.3d 388, 392-93 (2d Cir. 2014).

In summary, it is clear from the events of that day as alleged and charged, that Alam was engaged in a single and contining assaultive event against multiple officers, *Cooks*, 455 F. App'x at 586, that he can be charged without regard to the number of federal officers affected by the act, *Ladner*, 358 U.S.at 176, and that the jury need not agree unanimously on the means by which an element is proven. *Powell*, 266 F.3d 1181, 1196.

10

### III. CONCLUSION

For the foregoing reasons, Alam's motion for a unanimity instruction, ECF No. 59, should be denied.

Respectfully submitted,

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:      /s/ Rebekah Lederer

REBEKAH LEDERER
Pennsylvania Bar No. 320922
Assistant U.S. Attorney
601 D Sreet. N.W
Washington, DC 20530
(202) 252-7012
rebekah.lederer@usdoj.gov

 /s/ Joseph S. Smith, Jr.
JOSEPH S. SMITH. JR.
CA Bar No. 200108
Assistant U.S. Attorney
601 D Street, N.W.
Washington, D.C. 20530
(619) 546-8299
joseph.s.smith@usdoj.gov