UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 21-CR-190 (DLF) |
| v. : | |
| : | |
| ZACHARY ALAM, : | |
| : | |
| Defendant : | |

**GOVERNMENT'S OPPOSITION TO
DEFENDANT'S MOTION ON MULTIPLICITY**

Zachary Alam traveled to Washington, D.C., where he joined a mob outside of the U.S. Capitol on January 6, 2021. Alam entered the restricted perimeter, made his way past barriers and through Capitol grounds to the Senate wing doors and entered the Capitol Building. Alam traveled throughout the Capitol and at one point approached the rear door to the House Chamber at the Speaker's Lobby. Once there, he smashed a window that separated the mob from the retreating members of Congress and their staff. In doing so, he is also is alleged to have assaulted U.S. Capitol Police Officers. His journey was documented extensively through photos and videos. Alam now moves for the Court to address multiplicity concerns regarding counts oneand two of the indictment. ECF No. 57. Alam suggest one of three remedies to the claimed issue: (1) , to have the Court direct the government to elect between either count one or count two prior to trial; (2) to allow the government to proceed to trial on both counts but to specially instruct the jury that it can convict Mr. Alam on only one of the counts; or, (3) to allow the jury to consider both counts without being specially instructed but then, if it convicts on both counts, vacate one count and only sentence Mr. Alam on the other. ECF No 57 at 3. For the reasons detailed below the Government believes any ruling at this time would be premature.

I.      **STATEMENT OF FACTS**

Alam traveled from his home to attend the "Stop the Steal" rally on January 6, 2021, in Washington, D.C.  From the rally, he proceeded to U.S. Capitol grounds, penetrated the restricted perimeter and joined throngs of rioters on the lower west terrace.  Alam, who was wearing a gray backpack, jumped through a broken-out window on the Senate wing of the building at 2:17 p.m., shortly after this first breach of the buildings walls occurred.Once inside the building, Alam traveled to different areas, changed his clothes, and threw a red velvet rope from a third-floor House balcony at police officers the next level down. At 2:33 p.m., Alam headed to the Will Rogers corridor, a hallway connecting Statuary Hall to the House Chamber's Main Door. A line of officers stood guard between the corridor and the House Main Door, which led directly into the House chamber. Alam yelled at officers, laughed, argued with other rioters, and joined the mob that pushed through the police line. He stood toward the back as the rioters in the front attacked the glass in the House Main Door, clamoring to get in.

At 2:41 p.m., after unsuccessfully trying to breach the House Main Door, Alam and others headed to the doors to the Speaker's Lobby—another entry point at the rear of the House chamber. Three U.S. Capitol Police officers stood guard at the Speaker's Lobby Doors, with furniture piled behind them to provide a barricade. Alam walked up to these officers and looked through the glass of the door, where members of Congress and staff were evacuating the House chamber.

Now at the front of the mob, and acutely aware that his quarry was escaping, Alam punched the glass repeatedly with his fist and shattered two glass door panes of glass in the doors. As he punched, he pushed up against two officers. Eventually Alam used a black helmet to smash the glass and other rioters yelled that there was a gun behind the door. Officers behind the House

chamber door drew their guns in response to the crowd. But Alam continued to smash the last glass pane in the door, enabling a woman to climb through the window, where she was shot.

The Defendant was charged in a Superseding Indictment on November 10, 2021, with, among other charges, the following:

### COUNT ONE

On or about January 6, 2021, within the District of Columbia, **ZACHARY JORDAN** ALAM, did forcibly assault, resist, oppose, impede, intimidate, and interfere with, an officer and employee of the United States, and of any branch of the United States Government (including any member of the uniformed services), that is, officers from the United States Capitol Police Department located on both sides of the door in proximity to the Speaker's Lobby, while such persons were engaged in and on account of the performance of official duties, and where the acts in violation of this section involve the intent to commit another felony.

**(Assaulting, Resisting, or Impeding Certain Officers,** in violation of Title 18, United States Code, Section 11 l(a)(l))

### COUNT TWO

On or about January 6, 2021, within the District of Columbia, **ZACHARY JORDAN ALAM,** using a deadly or dangerous weapon, that is, a helmet, did forcibly assault, resist, oppose, impede, intimidate, and interfere with, an officer and employee of the United States, and of any branch of the United States Government (including any member of the uniformed services), that is, officers from the United States Capitol Police Department located on both sides of the door in proximity to the Speaker's Lobby, while such persons were engaged in or on account of the performance of official duties.

**(Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon,** in violation of Title 18, United States Code, Sections 11 l(a)(l) and (b))

II.     ARGUMENT

The Double Jeopardy Clause "protects against multiple punishments for the same offense." *United States v. Crosby*, 20 F.3d 480, 483 (D.C. Cir. 1994) (citations omitted). "To claim benefit of the guarantee, 'a defendant must show that the two offenses charged are **in law and fact** the same offense.'" *Id.* (emphasis added) (citing *United States v. Benefield*, 874 F.2d 1503, 1505 (11th Cir. 1989)). One of the factors courts consider as to whether counts are multiplicitous is "whether there is more than one act resulting in the assaults." *See* ECF No. 63 at 5 (citing *United States v.*

*Theriault,* 531 F.2d 281 (5th Cir. 1976)).  Courts also consider whether each assault has a separate, corresponding victim, or took place in separate locations.  *See, e.g., United States v. Duran*, 96 F.3d 1495, 1498 (D.C. Cir. 1996); *United States v. Mejia*, 545 F.3d 179, 205 (2d Cir. 2008) (no multiplicity issues where the appellants were "convicted of three counts of the same criminal violation, assault, but the assaults were based on two separate drive-by shootings that resulted in the shooting of three separate victims"); *see also, e.g., United States v. Sandstrom*, 594 F.3d 634, 652 (8th Cir. 2010) (denying any multiplicity issues where "the two attacks on McCay . . . were separated by both time and location. The first attack occurred at 9th Street and Spruce Avenue at 6:00 a.m. The second attack occurred at 9th Street and Brighton Avenue approximately ten minutes later.") (citations omitted).  On closer calls, courts often apply the "impulse test," where they review whether "'the unlawful course of conduct is set on foot by a single impulse . . ..*"  See United States v. Ali*, 982 F. Supp. 2d 85, 87 (D.D.C. 2013) (citing *United States v. McGoff*, 831 F.2d 1071, 1078 (D.C.Cir.1987) ((quoting *Toussie v. United States*, 397 U.S. 112, 136 (1970) (White, J., dissenting))); *see also, e.g., Sandstrom*, 594 F.3d at 652 ("To determine how many courses of conduct [the defendants] undertook, we apply the so-called 'impulse test.' Applying this test, 'we treat as one offense all violations that arise from that singleness of thought, purpose or action, which may be deemed a single impulse.' If an attack is 'uninterrupted,' then we will 'discern a single impulse.' Here, the two attacks on McCay were not 'uninterrupted.'") (citations omitted).

"To determine multiplicity vel non, courts generally apply the *Blockburger* test: '[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not,' i.e., whether either is a lesser included offense

of the other." *United States v. Mahdi*, 598 F.3d 883, 888 (D.C. Cir. 2010) (quoting *United States v. Weathers*, 186 F.3d 948, 951 (D.C. Cir. 1999), and *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). If the two offenses each require proof of a fact the other does not, then the charges are not multiplicitous. *Id.* at 890. The *Blockburger* "test focuses on the statutory elements of the offense, not on the proof offered in a given case." *United States v. McLaughlin*, 164 F.3d 1, 8 (D.C. Cir. 1998). Thus, it is irrelevant whether there is significant overlap in the factual proof of each count at trial, or even whether two counts "are based upon the exact same set of facts and circumstances," as long as each count's elements require proof of a fact that the others do not. *United States v. Manafort*, 313 F. Supp. 3d 311, 314 (D.D.C. 2018); *see id.* ("[T]he test for multiplicity is not whether two counts are based on the same set of facts; rather, it is whether the statutory elements of the two offenses are the same.").

Here, the Defendant's multiplicity argument fails both in fact and in law. In addressing the facts, it is clear that Alam's decision to repeatedly punch the glass near the officers while yelling was replaced by a new impulse when he placed the helmet on his hand and began to use it to smash the glass. Moreover, because he endangered multiple victims with his two charged assault, the circumstances here are similar to those in which the D.C. Circuit has upheld multiple 18 U.S.C. § 111(a) convictions. In *United States v. Duran*, the defendant imperiled the lives of four Secret Service officers who were present on White House grounds when the defendant "ran east along the White House fence, spraying gunfire across the North Lawn." *Id.* at 1498. The D.C. Circuit upheld the four 18 U.S.C. § 111(a) convictions "because, viewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact could have concluded beyond a reasonable doubt that as the defendant ran east along the White House fence, spraying gunfire across the North Lawn, he acted with the purpose of putting Secret Service agents on the North

Lawn in fear of imminent serious bodily harm." *Id*.  Because the facts support separate charges, both in the form of multiple victims and multiple impulses, the defendant's motion should be denied.

Additionally, when evaluating Count One and Count Two of the Indictment, as each clearly "requires proof of a fact which the other does not." *Blockburger*, 284 U.S. at 304.  Each Counts require proof of at least one fact that is not required by the other Count.  Thus, the indictment satisfies *Blockburger.*

> **Count 1**:  Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1).
>
> The elements of this crime are:
>
> - The defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with any officer or employee of the United States or of any agency in any branch of the United States Government, as designated in 18 U.S.C. § 1114, or someone assisting officers of the United States;
> - The defendant did so forcibly;
> - The defendant did so while the officer or employee was engaged in or on account of the performance of official duties; and
> - The act involved physical contact with the victim or the intent to commit another felony.
>
> **Count 2**:  Assaulting, Resisting, or Impeding Certain Officers while using a deadly or dangerous weapon, in violation of 18 U.S.C. § 111(b)
>
> The elements of this crimes are:
>
> - The defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with any officer or employee of the United States or of any agency in any branch of the United States Government, as designated in 18 U.S.C. § 1114, or someone assisting officers of the United States;
> - The defendant did such acts forcibly.
> - The defendant did such acts voluntarily and intentionally.
> - The defendant did so with an officer or an employee of the United States who was then engaged in the performance of his official duties.
> - In doing such acts, the defendant intentionally used a deadly or dangerous weapon.

The two counts clearly satisfy the *Blockburger* test, as each count's elements require proof of a fact that the other does not. Thus, from both a factual and legal analysis, these two counts are not multiplicitous, and the defendant's motion should be denied.

### III. DEFENDANT'S MOTION IS PREMATURE

The Defendant's motion is premature, given that multiplicity plainly does not provide grounds for dismissal. Further, even if the defendant had established that the two assault counts are multiplicitous, the United States Supreme Court has explained how a trial court should address an indictment that charges potentially multiplicitous counts:

> [W]hile the Government may seek a multiple-count indictment . . . the accused may not suffer two convictions or sentences on that indictment. If, upon the trial, the district judge is satisfied that there is sufficient proof to go to the jury on both counts, he should instruct the jury as to the elements of each offense. Should the jury return guilty verdicts for each count, however, the district judge should enter judgment on only one of the statutory offenses.

*Ball v. United States*, 470 U.S. 856, 865 (1985); *see also Ohio v. Johnson*, 467 U.S. 493, 500 (1984) ("While the Double Jeopardy Clause may protect a defendant against cumulative punishments for convictions on the same offense, the Clause does not prohibit the State from prosecuting respondent for such multiple offenses in a single prosecution."). As the D.C. Circuit has stated, "[t]he primary evil of multiplicitous charges is that a defendant will be punished twice for the same offense. This harm, if it exists at all, may be remedied during the sentencing phase if the jury returns a conviction on all counts of the Superseding Indictment." *United States v. Sanford, Ltd.*, 859 F. Supp. 2d 102, 124 (D.D.C. 2012); *see also, e.g., United States v. Platter*, 514 F.3d 782, 786 (8th Cir. 2008) (affirming trial court's refusal to require the government to elect among multiplicitous charges because "the proper remedy when a defendant is convicted of multiplicitous counts is merger of the counts into one count"). Thus, any potential for multiplicity in an

indictment may be remedied after trial if and when the jury convicts on each of the two assault charges. For this additional reason, the defendant's motion is premature and should be denied.

## IV.     CONCLUSION

For the foregoing reasons, Alam's motion to address multiplicity concerns, ECF No. 57, is premature and should be denied.

                                                      Respectfully submitted,

                                                     MATTHEW M. GRAVES
                                                     United States Attorney
                                                     D.C. Bar No. 481052

By:     /s/ Rebekah Lederer

                                                   REBEKAH LEDERER
                                                 Pennsylvania Bar No. 320922
                                                 Assistant U.S. Attorney
                                                 601 D Sreet. N.W
                                                 Washington, DC 20530
                                                 (202) 252-7012
                                                 rebekah.lederer@usdoj.gov

                                                  /s/ Joseph S. Smith, Jr.
                                                 JOSEPH S. SMITH. JR.
                                                 CA Bar No. 200108
                                                 Assistant U.S. Attorney
                                                 601 D Street, N.W.
                                                 Washington, D.C. 20530
                                                 (619) 546-8299
                                                 joseph.s.smith@usdoj.gov