**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CASE NO. 21-cr-190-DLF** |
| **v.** | : | |
| | : | |
| **ZACHARY JORDAN ALAM,** | : | |
| | : | |
| **Defendant.** | : | |

### UNITED STATES' MEMORANDUM IN SUPPORT OF PROPOSED JURY INSTRUCTIONS ON COUNT FIVE – TITLE 18, U.S.C. SECTION 1512(c)(2)

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its proposed instruction on Count Five of the second superseding indictment, which was filed with the Court on August 17, 2023. ECF No. 90-1, at 32-37. This instruction is in line with instructions previously given by this Court and other courts in this District and is supported by the controlling precedent in this Circuit. Defendant Alam's proposed instruction on Count Five, however, is not consistent with instructions given by this Court and other courts in this district, is not supported by precedent, and should be rejected.

#### I.    Procedural History

On August 15, 2022, the parties jointly submitted proposed jury instructions for this case. ECF No. 51-2. Thereafter, on July 9, 2023, Defendant submitted through previous counsel, additional proposed jury instructions, including a revised proposed instruction as to Count Five. ECF No. 79. The Government responded in opposition to that proposed instruction and the others on July 24, 2023. ECF No. 85. The parties thereafter submitted joint proposed jury instructions on August 17, 2023, in which each party submitting its own proposed instruction for Count Five. ECF No. 90-1

1

**II      The Government's Instruction as it Varies from the Defendant's Instruction**

In both the July 9, 2023, filing and the subsequent August 17, 2023, filing the Defendant requested the Court instruct the jury that in order to find the Defendant had acted corruptly, they must find that he acted with the "intent to procure an unlawful benefit either for himself or for some" third party. ECF No. 79 at 3 and ECF No. 90-1 at 39. In each of its responses to Defense request for this definition of "corruptly" the Government proposed that the jury be instructed that, "[t] o act 'corruptly,' the defendant must use independently unlawful means or act with an unlawful purpose, or both. The defendant must also act with 'consciousness of wrongdoing.' 'Consciousness of wrongdoing' means with an understanding or awareness that what the person is doing is wrong or unlawful. ECF No. 85 at 4 and ECF No. 90-1 at 33.

**III      The Government's Proposed § 1512 Instruction**

The government again requests the Court to instruct the jury as follows:

Count Five of the Indictment charges the defendant with corruptly obstructing an official proceeding, which is a violation of federal law.

Count Five also charges the defendant with attempt to obstruct or impede an official proceeding and aiding and abetting others to commit that offense. First, I will explain the elements of the substantive offense, along with its associated definitions. Then, I will explain how to determine whether the defendant attempted the offense and whether the defendant aided and abetted the offense.

<u>Elements</u>

In order to find the defendant guilty of this offense, you must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant attempted to or did obstruct or impede an official proceeding.

Second, the defendant intended to obstruct or impede the official proceeding.

Third, the defendant acted knowingly, with awareness that the natural and probable effect of his conduct would be to obstruct or impede the official proceeding.

Fourth, the defendant acted corruptly.

Definitions

To "obstruct" or "impede" means to block, interfere with, or slow the progress of an official proceeding.

The term "official proceeding" includes a proceeding before Congress. The official proceeding need not be pending or about to be instituted at the time of the offense. If the official proceeding was not pending or about to be instituted, the government must prove beyond a reasonable doubt that the official proceeding was reasonably foreseeable to the defendant. For purposes of this count, the term "official proceeding" means Congress' Joint Session to certify the Electoral College vote.[1]

The term "knowingly" has the same meaning described in the instructions for Count Three. To act "corruptly," the defendant must use independently unlawful means or act with an unlawful purpose, or both. The defendant must also act with "consciousness of wrongdoing." "Consciousness of wrongdoing" means with an understanding or awareness that what the person is doing is wrong or unlawful.

Not all attempts to obstruct or impede an official proceeding involve acting corruptly. For example, a witness in a court proceeding may refuse to testify by invoking his or her constitutional privilege against self-incrimination, thereby obstructing or impeding the proceeding, but that person does not act corruptly. In contrast, an individual who obstructs or impedes a court proceeding by bribing a witness to refuse to testify in that proceeding, or by engaging in other

---

[1] In *United States v. Fischer*, 64 F.4th 329, 342 (D.C. Cir. 2023), the D.C. Circuit held "that congressional certification of the Electoral College count is an 'official proceeding'" for purposes of § 1512(c)(2). *See also* 18 U.S.C. § 1515(a)(1)(B) (defining "official proceeding" to include "a proceeding before the Congress"); § 1512(f)(1) ("For the purposes of this section—(1) an official proceeding need not be pending or about to be instituted at the time of the offense"). For the nexus requirement (that the official proceeding need be reasonably foreseeable), see *United States v. Sandlin*, 575 F. Supp. 3d 16, 32 (D.D.C. 2021); *United States v. Aguilar*, 515 U.S. 593, 599-600 (1995). For other January 6 trials that have used this instruction, see*, e.g.*, *United States v. Reffitt*, No. 21-cr-32 (DLF) (ECF No. 119 at 25-26), *United States v. Robertson*, No. 21-cr-34 (CRC) (ECF No. 86 at 12), *United States v. Thompson*, No. 21-cr-161 (RBW) (ECF No. 832 at 26), *United States v. Williams*, No. 21-cr-377 (BAH) (ECF No. 112 at 7); and *United States v. Thomas*, No. 21-cr-552 (DLF) (ECF No. 150 at 23).

independently unlawful conduct, does act corruptly.[2] Often, acting corruptly involves acting with the intent to secure an unlawful advantage or benefit either for oneself or for another person.[3]

While the defendant must act with intent to obstruct the official proceeding, this need not be his sole purpose. A defendant's unlawful intent to obstruct an official proceeding is not negated by the simultaneous presence of another purpose for his conduct.[4]

### **ATTEMPT**[5]

In Count Five, the defendant is also charged with attempt to commit the crime of obstruction of an official proceeding. An attempt to commit obstruction of an official proceeding is a crime even if the defendant did not actually complete the crime.

In order to find the defendant guilty of attempt to commit obstruction of an official proceeding, you must find that the government proved beyond a reasonable doubt each of the following elements:

First, that the defendant intended to commit the crime of obstruction of an official proceeding, as I have defined that offense above.

Second, that the defendant took a substantial step toward committing obstruction of an official proceeding which strongly corroborates or confirms that the defendant intended to commit that crime.

---

[2] The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit; *Arthur Andersen LLP v. United States*, 544 U.S. 696, 706 (2005); *United States v. Fischer*, 64 F.4th 329, 340 (D.C. Cir. 2023) (opinion of Pan, J.); *United States v. Gordon*, 710 F.3d 1124, 1151 (10th Cir. 2013); *United States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011); *United States v. Watters*, 717 F.3d 733, 735 (9th Cir. 2013); *United States v. North*, 910 F.2d 843, 883 (D.C. Cir. 1990), *withdrawn and superseded in part by United States v. North*, 920 F.2d 940 (D.C. Cir. 1990); *United States v. Sandlin*, 575 F. Supp. 3d 16, 32 (D.D.C. 2021); *United States v. Caldwell*, 581 F. Supp. 3d 1, 19-20 (D.D.C. 2021); *United States v. Mostofsky*, 579 F. Supp. 3d 9, 26 (D.D.C. 2021); *United States v. Montgomery*, 578 F. Supp. 3d 54, 82 (D.D.C. 2021); *United States v. Lonich*, 23 F.4th 881, 902-03 (9th Cir. 2022). For other January 6 trials that have used similar instructions, see*, e.g.*, *United States v. Williams*, No. 21-cr-377 (BAH) (ECF No. 112 at 7), and *United States v. Reffitt*, No. 21-cr-32 (DLF) (ECF No. 119 at 25-29); *United States v. Kelly*, No. 21-cr-708 (RCL) (ECF No. 101 at 10).

[3] This last line, which incorporates aspects of the lead and concurring opinions in *United States v. Fischer*, 64 F.4th 329, 340 (D.C. Cir. 2023) (opinion of Pan, J.); *id.* at 352 (Walker, J., concurring), was provided in *United States v. Nordean, et al*, 21-cr-175 (TJK) (ECF No. 767 at 31-32), *United States v. Kelly*, No. 21-cr-708 (RCL) (ECF No. 101 at 10), and *United States v. Thomas*, No. 21-cr-552 (DLF) (ECF No. 150 at 24).

[4] *United States v. Carpenter*, No. 21-cr-305 (JEB) (ECF No. 97 at 11); *United States v. Kelly*, No. 21-cr-708 (RCL) (ECF No. 101 at 10).

[5] Redbook 7.101; The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit § 4.09; Third Circuit Pattern Jury Instructions 7.01.

With respect to the first element of attempt, you may not find the defendant guilty of attempt to commit obstruction of an official proceeding merely because the defendant thought about it. You must find that the evidence proved beyond a reasonable doubt that the defendant's mental state passed beyond the stage of thinking about the crime to actually intending to commit it.

With respect to the substantial step element, you may not find the defendant guilty of attempt to commit obstruction of an official proceeding merely because the defendant made some plans to or some preparation for committing that crime. Instead, you must find that the defendant took some firm, clear, undeniable action to accomplish his intent to commit obstruction of an official proceeding. However, the substantial step element does not require the government to prove that the defendant did everything except the last act necessary to complete the crime.

## AIDING AND ABETTING[6]

In this case, the government further alleges that the defendant committed obstruction of an official proceeding, as charged in Count Five, by aiding and abetting others in committing this offense. This is not a separate offense but merely another way in which the government alleges that the defendant committed this offense in Count Five.

A person may be guilty of an offense if he aided and abetted another person in committing the offense. A person who has aided and abetted another person in committing an offense is often called an accomplice. The person whom the accomplice aids and abets is known as the principal. It is not necessary that all the people who committed the crime be caught or identified. It is sufficient if you find beyond a reasonable doubt that the crime was committed by someone and that the defendant knowingly and intentionally aided and abetted that person in committing the crime.

In order to find the defendant guilty of obstruction of an official proceeding because the defendant aided and abetted others in committing this offense, you must find that the government proved beyond a reasonable doubt the following elements:

First, that others committed obstruction of an official proceeding by committing each of the elements of the offense charged, as I have explained above.

Second, that the defendant knew that obstruction of an official proceeding was going to be committed or was being committed by others.

Third, that the defendant performed an act or acts in furtherance of the offense. Fourth, that the defendant knowingly performed that act or acts for the purpose of aiding, assisting, soliciting, facilitating, or encouraging others in committing the offense of obstruction of an official proceeding.

---

[6] 18 U.S.C. § 2(a); Third Circuit Model Jury Instructions 7.02.

Fifth, that the defendant did that act or acts with the intent that others commit the offense of obstruction of an official proceeding.

To show that the defendant performed an act or acts in furtherance of the offense charged, the government must prove some affirmative participation by the defendant which at least encouraged others to commit the offense. That is, you must find that the defendant's act or acts did, in some way, aid, assist, facilitate, or encourage others to commit the offense. The defendant's act or acts need not further aid, assist, facilitate, or encourage every part or phase of the offense charged; it is enough if the defendant's act or acts further aided, assisted, facilitated, or encouraged only one or some parts or phases of the offense. Also, the defendant's acts need not themselves be against the law.

In deciding whether the defendant had the required knowledge and intent to satisfy the fourth requirement for aiding and abetting, you may consider both direct and circumstantial evidence, including the defendant's words and actions and other facts and circumstances. However, evidence that the defendant merely associated with persons involved in a criminal venture or was merely present or was merely a knowing spectator during the commission of the offense is not enough for you to find the defendant guilty as an aider and abettor. If the evidence shows that the defendant knew that the offense was being committed or was about to be committed, but does not also prove beyond a reasonable doubt that it was the defendant's intent and purpose to aid, assist, encourage, facilitate, or otherwise associate the defendant with the offense, you may not find the defendant guilty of [named crime] as an aider and abettor. The government must prove beyond a reasonable doubt that the defendant in some way participated in the offense committed by others as something the defendant wished to bring about and to make succeed.

A defendant may be found guilty of the offense charged in Count Five if the defendant obstructed an official proceeding, attempted to obstruct an official proceeding or aided and abetted obstruction of an official proceeding. Each of these three ways of committing the offense is described in the instructions that I have given you. If you find beyond a reasonable doubt that the defendant committed the offense of obstruction of an official proceeding in any one of these three ways, you should find the defendant guilty of Count Five, and you need not consider whether the defendant committed the offense of obstruction of an official proceeding in the other two ways.

## IV    There Is No Support For Defendant's Proposed Definition

Defendant's proposed instruction varies from the Government's in that Defendant asks that this Court instruct the jury that it must find that he acted with the "intent to procure an unlawful benefit either for himself or for some" third party, ECF No. 79 at 3 and ECF No. 90-1 at 39. However, Defendant cites to no controlling authority for this proposition. To the contrary, he cites generally to *United States v. Reffitt*, No. 21-cr-32 (DLF) (ECF No. 90-1 at 39) in support of his requested definition. Of significant note though, this Court in *Reffitt* instructed the jury in

6

substance the same as the Government has requested in this case and not as the Defendant has proposed. No instruction of "unlawful benefit" was given in that case.

Defendant's sole remaining source of support for his proposed "unlawful benefit" definition is Judge Walker's concurring opinion in in *United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023). However, in *Fischer* the D.C. Circuit held that 18 U.S.C. § 1512(c)(2) "encompasses all forms of obstructive conduct, including . . . efforts to stop Congress from certifying the results of the 2020 presidential election." *Id.* at 335. The court explained that "the meaning of the statute is unambiguous . . .§ 1512(c)(2) applies to all forms of corrupt obstruction of an official proceeding, other than the conduct that is already covered by § 1512(c)(1)." *Id.* at 336. This "broad interpretation of the statute — encompassing all forms of obstructive acts — is unambiguous and natural, as confirmed by the 'ordinary, contemporary, common meaning' of the provision's text and structure." *Id.* at 337 (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). This portion of the opinion was authored by Judge Pan and joined by Judge Walker, and thus constitutes *Fischer*'s binding holding.

### A. The Circuit Court's decision in *Fischer* does not authoritatively construe "corruptly" in 18 U.S.C. § 1512(c)(2).

The Court in *Fischer* did not pronounce an authoritative holding on the meaning of "corruptly" in Section 1512(c)(2). The district court's dismissal of the Section 1512 count in those cases (consolidated on appeal) was based on its view that the *actus reus* of the offense requires a nexus to documents, not any concern about the statute's *mens rea* element; accordingly, the definition of "corruptly" was not extensively briefed by the parties or squarely presented on appeal, and the Court therefore had no cause to resolve the issue. Furthermore, the sole concurring opinion in *Fischer* that sought to define "corruptly" did not command sufficient support to render that definition a holding of the Court.

### 1.  *Fischer* did not decide how to interpret "corruptly" in Section 1512(c)(2).

The panel in *Fischer* produced three opinions. In the portions of the lead opinion (Pan, J.) joined in full by the concurring judge (Walker, J.), *Fischer* relied on Section 1512(c)(2)'s text and structure as well as case law interpreting the statute, *see id.* at 335-39, to conclude that Section 1512(c)(2) "encompasses all forms of obstructive conduct, including . . . efforts to stop Congress from certifying the results of the 2020 presidential election." *Id.* at 335. In a section of the lead opinion that Judge Walker did not join, Judge Pan reasoned that "[t]he requirement of 'corrupt' intent prevents [Section] 1512(c)(2) from sweeping up a great deal of conduct that has nothing to do with obstruction," but refrained from defining "the exact contours of 'corrupt' intent" because "the task of defining 'corruptly'" was not before the Court. *Id.* at 340 (opinion of Pan, J.). Judge Walker, believing that defining "corruptly" was necessary to "make sense" of Section 1512(c)(2)'s act element," wrote a concurring opinion in which he proposed defining the term to mean to "act with an intent to procure an unlawful benefit either for oneself or for some other person." *Id.* at 352 (Walker, J., concurring) (citation omitted). The dissenting opinion (Katsas, J.) criticized the concurrence's definition of "corruptly" because it "required transplanting" into Section 1512(c)(2) an interpretation "that appears to have been used so far only in tax law," but did not endorse any other definition of the term. *Id.* at 381 (Katsas, J., dissenting).

As explained in both the lead and dissenting opinions in *Fischer*, the definition of "corruptly" was not squarely presented in that case and therefore was not resolved. *See id.* at 340-41 (opinion of Pan, J.) ("expressing [no] preference for any particular definition of 'corruptly'" because "the allegations against appellees appear to be sufficient to meet any proposed definition of 'corrupt' intent"); *id.* at 341 (noting that the dissent also "declines to settle on a precise meaning of 'corruptly' at this time" and thus "share[s] much common ground" with the lead opinion "on

the issue of *mens rea*"); *id.* at 379-81 (Katsas, J., dissenting) (surveying possible definitions of "corruptly" but declining to adopt any particular one). Although the concurrence would have determined that "corruptly" means "a criminal intent to procure an unlawful benefit," *id.* at 352 (Walker, J., concurring), the resolution of that *mens rea* issue was not necessary to the court's holding concerning the *actus reus* of the offense—which Judge Walker joined by concurring in all but a section and a footnote in the lead opinion and concurring in the judgment—and his views on the meaning of "corruptly" were not adopted by the other judges on the panel.

Reading *Fischer* to have left unresolved the definition of "corruptly" in Section 1512(c)(2) is consistent with how the case was litigated. Although the defendant argued below that Section 1512(c)(2)'s *mens rea* requirement was unconstitutionally vague, *see United States v. Miller*, 589 F. Supp. 3d 60, 65 (D.D.C. 2022), the district court did not address that argument and specifically declined to interpret "corruptly" when adjudicating the government's reconsideration motion, *see United States v. Miller*, 605 F. Supp. 3d 63, 70 n.3 (D.D.C. 2022). The question presented in *Fischer* concerned Section 1512(c)(2)'s *actus reus* requirement, *see* Brief for the United States, *United States v. Fischer*, No. 22-3038, at 2-3 (whether Section 1512(c)(2) covers the defendants' "alleged conduct"), and the government's opening 68-page brief devoted only three pages to addressing "corruptly" when discussing limitations on the statute's reach. *See Fischer*, 64 F.4th at 340 (opinion of Pan, J.) (noting that the parties addressed "corruptly" "only peripherally" in the briefs). With respect to defining "corruptly" in Section 1512(c)(2), the Court in *Fischer* did not have the "benefits of the normal litigation process," *id.*, which in turn risks an "improvident or ill-advised" ruling on an issue not squarely presented, *United States v. West*, 392 F.3d 450, 459 (D.C. Cir. 2004).

Relatedly, treating the concurrence's "corruptly" definition in *Fischer* as a binding holding is in tension with the party-presentation principle, under which courts "rely on the parties to frame issues for decision and assign courts the role of neutral arbiter of matters the parties present." *Sineneng-Smith v. United States*, 140 S. Ct. 1575, 1579 (2020 (citing *Greenlaw v. United States*, 554 U.S. 237, 243 (2008)). The concurrence's suggestion, *Fischer*, 64 F.4th at 352 n.1 (Walker, J. concurring), that the parties adequately presented the interpretation of "corruptly" is mistaken. The concurrence observed that the defendants had "raised the issue below," *id.*, without acknowledging that the district court never adjudicated the vagueness challenge or defined "corruptly." And although the concurrence relied on "lengthy discussions by several district judges in similar cases," *id.*, those judges also declined to offer definitive interpretations of "corruptly" in those rulings. *See, e.g.*, *United States v. Montgomery*, 578 F. Supp. 3d 54, 84 n.5 (D.D.C. 2021 ("[B]ecause the Court has yet to hear from the parties on the proper jury instructions, the Court will leave for another day the question whether this formulation [of corruptly]—or a slightly different formulation—will best guide the jury."). In short, the concurrence's interpretation of "corruptly" did not result from the "crucible of litigation," *Fischer*, 64 F.4th at 340 (opinion of Pan, J.), and thus should not be treated as authoritative.

### 2. Even if the *Marks* rule applied, it would not counsel in favor of defining "corruptly" using the definition provided by the concurrence in *Fischer*.

There is no reason for this Court to turn to *United States v. Marks*, 430 U.S. 188 (1977), for guidance on how to interpret *Fischer*'s holding. In *Marks*, the Supreme Court held that, "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds[.]'" 430 U.S. at 193 (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15 (1976) (plurality op.)). *Marks* is inapposite for several reasons.

*First*, there *is* a "single rationale explaining the result" in *Fischer* that a majority of the Court adopted: all but Section I.C.1 (declining to interpret "corruptly") and footnote 8 of the lead opinion. That opinion held in Section I.A that Section 1512(c)(2) was "unambiguous": it "applies to all forms of corrupt obstruction of an official proceeding" other than the document destruction and evidence tampering already covered in Section 1512(c)(1). *Fischer*, 64 F.4th at 336. Thus, unlike the situation described in *Marks*—where more than five Justices agreed on a result, but no five Justices agreed on a rationale—here, a majority of the Court did agree on a rationale explaining the result: Section 1512(c)(2)'s unambiguous statutory text describing the *actus reus* of the offense.

In this respect, the *Fischer* lead opinion resembles those that have commanded a five-Justice majority in the Supreme Court, with one Justice writing a concurring opinion explaining his or her disagreement with aspects of the majority opinion but joining it anyway. *See, e.g.*, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352-53 (2011) (Thomas, J., concurring; *Arizona v. Gant*, 556 U.S. 332, 354 (2009 (Scalia, J., concurring); *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 408 (2002) (O'Connor, J, concurring). In such a case, the majority opinion controls and *Marks* has no applicability. *See* Richard M. Re, *Beyond the Marks Rule*, 132 Harv. L. Rev. 1942, 2001-02 nn.311, 322 (2019) (noting that appellate courts have never applied the *Marks* rule to *Concepcion* and *Gant*). Here, Judge Walker joined the portion of the lead opinion holding that Section 1512(c)(2) encompasses all forms of obstructive conduct. That is *Fischer*'s clear holding. The fact that Judge Walker's understanding of the statute's *mens rea* requirement informed his decision to join the majority opinion does not make that understanding a holding of the court. *Cf. King v. Palmer*, 950 F.2d 771, 784 (D.C. Cir. 1991) (en banc) (observing that "the result is binding

even when the Court fails to agree on reasoning") (citing *National Mut. Ins. Co. v. Tidewater Transfer Co.,* 337 U.S. 582, 655 (1949) (Frankfurter, J., dissenting)).

*Second*, as both the lead opinion and the concurrence in *Fischer* recognized, the D.C. Circuit has never applied *Marks* to its own cases. *See Fischer*, 64 F.4th at 341 n.5 (opinion of Pan, J.); *id.* at 362 n.10 (Walker, J., concurring). Indeed, "only one federal appellate court has done so." *Id.* at 341 n.5 (opinion of Pan, J.) (citing *Binderup v. U.S. Att'y Gen.*, 836 F.3d 336, 356 (3d Cir. 2016) (en banc)). Insofar as this Court "needs *some* rule to decide the holding" of *Fischer*, 64 F.4th at 362 n.10 (Walker, J., concurring), that rule is apparent: it should follow the parts of the opinion agreed upon by a majority of the panel, namely, that Section 1512(c)(2)'s plain text encompasses all forms of obstructive conduct.

Applying the concurrence's view of *Marks* to *Fischer* would be particularly "problematic." *King*, 950 F.2d at 782; *see Fischer*, 64 F.4th at 362 n.10 (Walker, J., concurring) (suggesting that his "reading of 'corruptly' may . . . be controlling" under *Marks*). As this Circuit Court has observed, when all the Justices but one "do not subscribe to a given approach to a legal question, it surely cannot be proper to endow that approach with controlling force, no matter how persuasive it may be." *Id.* So too here a single opinion that "lacks majority support," *id.*, because it decides a question the other members of the panel expressly declined to resolve should not become the law of the circuit.

*Third*, even were this Court to apply a *Marks* analysis to *Fischer*, it would not require the Court to adopt the concurrence's view of the meaning of "corruptly" in Section 1512(c)(2). In *King*, the Circuit Court sitting *en banc* held that "*Marks* is workable—one opinion can be meaningfully regarded as 'narrower' than another—only when one opinion is a logical subset of other, broader opinions. In essence, the narrowest opinion must represent a common denominator

of the Court's reasoning; it must embody a position implicitly approved by at least five Justices who support the judgment." 950 F.2d at 781; *see generally Beyond the Marks Rule, supra*, at 1994-95 (noting that the D.C. Circuit has adopted a narrower reading of *Marks* than other courts of appeals); *see also United States v. Duvall*, 740 F.3d 604, 618 (D.C. Cir. 2013 (Williams, J., concurring in denial of rehearing en banc). But the concurrence's reading of "corruptly" does not "embody a position implicitly approved by at least [two judges] who support the judgment"; to the contrary, a "majority of the panel . . . expressly declined to endorse the concurrence's definition of 'corruptly.'" *Fischer*, 64 F.4th at 341 n.5 (opinion of Pan, J.).

Moreover, the concurrence's definition was "not one with which [the lead] opinion 'must *necessarily agree as a logical consequence* of its own, broader position' because [the lead] opinion t[ook] no position on the exact meaning of 'corruptly.'" *Id.* (quoting *King*, 950 F.2d at 782). To be sure, Judge Walker contended that his opinion was "narrower" than the lead opinion because he "read[s] [Section 1512](c)(2) to cover only *some* of the conceivable defendants the lead opinion might allow a court to convict," *id.* at 362 n.10 (Walker, J., concurring). But that contention proceeds from the mistaken premise that the lead opinion adopted "all th[e] formulations" of "corruptly" that it considered, *id.*, when in fact it declined to adopt a specific definition. Rather, the lead opinion resolved only the narrow question of whether an indictment grounded upon the defendants' assaultive conduct properly stated a violation of Section 1512. The Court had no need to delineate the world of "conceivable defendants" that could be convicted under the statute. *Id.* at 339-41 (opinion of Pan, J.). Nor did the Court have any need to resolve the meaning of the term "corruptly" at the motion-to-dismiss stage. The indictments in *Fischer* all alleged that the defendants acted "corruptly," as the statute requires, and any dispute about the meaning of that term could have no bearing on the sufficiency of the indictment for purposes of a motion to dismiss.

*See United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018) (indictment "echo[ing] the operative statutory text while also specifying the time and place of the offense" fairly informs a defendant of the charge against him).

With respect to the interpretation of the term "corruptly" in Section 1512(c)(2), therefore, *Fischer* contains "no governing rule," *King*, 950 F.2d at 782, and no "'narrowest' opinion . . . to resolve all future cases," *Duvall*, 740 F.3d at 611 (Kavanaugh, J., concurring in denial of rehearing en banc). The concurrence's definition of "corruptly" in *Fischer* does not bind future panels but is instead entitled to whatever "persuasive authority" it may possess. *Duvall*, 740 F.3d at 605 (Rogers, J., concurring in denial of rehearing en banc). And for the reasons given in the government's answering brief in this case, *see* Gov. Br. 35-39, the Court should conclude that the concurrence's interpretation is sufficient, but not necessary, to prove that a defendant acted corruptly for purposes of Section 1512(c)(2).

### 3.   Judge Bates Ruling in *United States v. Sheppard*

As for whether the *Fischer* holding should be read more broadly, Judge Bates directly addressed this same argument recently in *United States v.Sheppard*, 21-cr-0203-JDB (8/2/2023 Memorandum & Order) (ECF 105). In a lengthy written opinion, Judge Bates denied the defendant's motion for a new trial and rejected his claim that the jury was mis-instructed on the definition of "corruptly." Specifically, Judge Bates rejected the contention that *Fischer* articulated a binding definition of "corruptly" mirroring that made by defendant Alam – that a jury must find that the defendant acted with the intent to procure an unlawful benefit either for himself or another person. *Sheppard*, ECF 105 at 11. In analyzing the potential impact of the *Fischer* opinion on the on the definition of "corruptly," Judge Bates first noted that each member of the *Fischer* panel

wrote separately about the proper definition of the term "corruptly," none of those portions were joined by any other judge, and that there was no clear majority opinion on the definition. *Id*.

Judge Bates then addressed defendant Sheppard's argument that he should "apply the rule set forth by the Supreme Court in *Marks v. United States*, 430 U.S. 188 (1977), which states that— for Supreme Court cases—"[w]hen a fragmented Court decides a case and no single rationale explaining that result enjoys the assent of Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'" *Id*. at 193 (internal citation omitted). Judge Bates noted that Judges Pan and Walker of the *Fischer* court discussed the possible impact that *Marks* may have on their two opinions. Judge Pan first raised a question of whether *Marks* does, or should, apply to circuit-level decisions (as opposed to only Supreme Court decisions). *See Fischer*, 64 F.4th at 341 n.5. She observed that "only one federal appellate court has" extended *Marks* to its own opinions and argued that "there is good reason not to extend *Marks* any further." *Id*. "The *Marks* rule is 'more easily stated than applied . . . . [I]t has so obviously baffled and divided the lower courts that have considered it that it has created a degree of confusion such that it is not always useful to pursue to the utmost logical possibility.'" *Id*. (quoting *United States v. Epps*, 707 F.3d 337, 348 (D.C. Cir. 2013)). Judge Pan noted that even if *Marks* applied, the D.C. Circuit has cautioned against applying *Marks* in circumstances like *Fischer* where "a majority of the panel has expressly declined to endorse the concurrence's definition of 'corruptly.'" *Id*.

Judge Bates noted that Judge Walker believed his definition of "corruptly" "may . . . be controlling, at least if a future panel analyzes this splintered decision under *Marks v. United States*." *Fischer*, 64 F.4th at 362 n.10 (Walker, J., concurring in part). Because he "read (c)(2) to cover only some of the conceivable defendants the lead opinion might allow a court to convict,"

he argued his "opinion is a 'logical subset of another, broader opinion.'" *Id.* (quoting *United States v. Duvall*, 740 F.3d 604, 610 (D.C. Cir. 2013) (Kavanaugh, J., concurring in denial of rehearing en banc)).7

Judge Bates also noted that "[n]either judge appeared enthusiastic about the prospect of the D.C. Circuit applying *Marks* to its own decisions, and it may well be that future panels decline to do so." *Sheppard*, ECF 105 at 12 (citation omitted). Judge Bates ultimately determined that the District Court "need not decide whether to apply *Marks* because, even if it did, under D.C. Circuit precedent Judge Walker's definition of 'corruptly' is not controlling for one simple reason: it is a definition that only one judge has adopted and thus does not 'embody a position implicitly approved by at least [two panelists] who support the judgment.'" *Id.* at 12-13 (citing *King v. Palmer*, 950 F.2d 771, 781 (D.C. Cir. 1991)).

In concluding his analysis of *Fischer* and *Marks* as they were being argued by the defendant to apply to determining the *mens rea* of § 1512(c)(2), Judge Bates stated:

> When the Court runs the facts and circumstances of the current case through the tests articulated in the judges' various opinions in the binding case and adopt the results that a majority of the judges would have reached, it is not left with Judge Walker's definition; it is left with a choice of which definition to use because *Fischer* does not have a binding holding on the meaning of "corruptly," even if the Court were to apply a *Marks* analysis. In deciding the proper jury instructions for [the defendant's] trial, then, the Court chose the definition that it considered to be correct. It was not the definition [the defendant] hoped for, but nothing in *Fischer*—including one judge's concurrence and commentary that his sole opinion could control—commands a different result. At its core, *Fischer* was a case with a clear holding on the actus reus element of § 1512(c)(2), and [the defendant's] attempt to also extract a holding on that statute's mens rea element pushes *Fischer* and the boundaries of *Marks* too far.

Sheppard, ECF No. 105 at 18 (internal citations omitted).

Finally, Judge Bates noted one final practical consideration which supported his conclusion. He recognized that the lower court in *Fischer* did not decide on a meaning of

"corruptly," and that is was only peripherally discussed in the parties' briefs"; and therefore "the detailed analysis proffered by the concurrence [was] not a product of the crucible of litigation." *Id*. at 18. (citing *Fischer*, 64 F.4th at 340). He concluded that "it would be odd, in light of the D.C. Circuit's repeated warnings against misusing *Marks*, to stretch the application of the *Marks* rule to apply to a secondary issue that was not even fully briefed or decided below." *Id*. at 18-19.

**V      Conclusion**

For the foregoing reasons, the Government requests this Court instruct the jury on Count Five as proposed by the Government.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:      /s/ Rebekah Lederer
REBEKAH LEDERER
Pennsylvania Bar No. 320922
Assistant U.S. Attorney
601 D Sreet. N.W
Washington, DC 20530
(202) 252-7012
rebekah.lederer@usdoj.gov

 /s/ Joseph S. Smith, Jr.
JOSEPH S. SMITH. JR.
CA Bar No. 200108
Assistant U.S. Attorney
601 D Street, N.W.
Washington, D.C. 20530
(619) 546-8299
joseph.s.smith@usdoj.gov