𝕌𝕟𝕚𝕥𝕖𝕕 𝕊𝕥𝕒𝕥𝕖𝕤 𝔻𝕚𝕤𝕥𝕣𝕚𝕔𝕥 ℂ𝕠𝕦𝕣𝕥
𝔻𝕚𝕤𝕥𝕣𝕚𝕔𝕥 𝕠𝕗 ℂ𝕠𝕝𝕦𝕞𝕓𝕚𝕒
-------------------------------------------------------------X

UNITED STATES OF AMERICA,

                                                          Case No. 21-cr-190 (DLF)

    *- against -*

ZACHARY JORDON ALAM,

                            *Defendant.*
-------------------------------------------------------------X

## **DEFENDANT ALAM'S SECOND PROOFER FOR OFFICERS BEHIND THE SPEAKERS LOBBY DOORS**

**A.** *Timeline Set Forth in the Government's Case-in-Chief.*

1. The government has presented evidence that former Vice President Pense was "escorted" out of the Senate Chambers, under exigent circumstances, at approximately 2:12pm.

2. Then evidence suggests that Mr. Alam was destroying government property between 2:36 pm and 2:41 p.m. (*See* Count Four of Superseding Indictment Charging 18 USC 1361).

3. Pence had already left prior to Alam arriving and allegedly destroying property at the Speakers Lobby, approximately 24 minutes prior, at a minimum.

4. The shooting, upon information and belief, took place between 2:36 and 2:41 pm.

5. Then the evidence suggests that Pence remains in a secure location and does not return back to the Senate floor for hours.

6. One officer behind the Speakers Lobby doors (hereafter referred to as "the doors") Lt. Byrd stated in his extended interview that after the shooting, none of the protestors breached the Speaker Lobby doors.

7. Other officers in this case have also testified to the same fact – after the shooting, no protestor went past these doors.

**B. *Applicable Law*.**

18 USC 1512 (c) states the following:

> Whoever corruptly-- (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or (2) ***otherwise obstructs, influences, or impedes any official proceeding***, or attempts to do so . . . .

**C. *New Question Presented at the Close of the Government's Case.***

The question now becomes, what did Defendant Alam do, personally, to prevent, obstruct, influence, or impede an "official proceeding"?

**D. *Defendant Alam's Argument at the Close of the Government's Case under 18 USC 1512 (c)(2).***

To be clear - this argument and position has nothing to do with police misconduct, or whether officers behind the speaker lobby doors acted appropriately. Rather, this goes to rebut the cause of delay in the "official proceedings" and whether Mr. Alam personally caused a delay, or obstruction, or impeded such proceedings with "corrupt" intent.

Clear answers from officers behind the doors – and not a fishing expedition – are going to be that the shooting was "called in" on the radio. Then clear answers are going to be that an investigation took place afterwards. The defense of Mr. Alam is that the "shooting", regardless of proper or improper officer conduct, caused the delay in the "official proceedings". Such is vital because during the course of this trial has been inferred to now have been based on Mr. Alam's personal actions.

To further illustrate this point, there was a prior issue with "radio call" specifically regarding a shooting, which had these officers behind the doors on high alert.

Specifically, Officer McKenna has stated the following:

> After the members exited the lobby, McKENNA re-entered the House Chamber floor and reported via radio communication traffic to the command post that he heard shots fired. McKENNA was later told it was just the glass that rioters had shattered. **Lt. Bird also advised McKENNA that shots were not fired**. McKENNA corrected the previous radio communication traffic to the command post. McKENNA heard shouting and screaming from the east side but was unable to recall anything specific."

This prior radio run could have contributed to the shooting in question, especially being that the officers were on high alert. Then a combination of these two radio runs cause a delay in the "official proceedings". The jury heard about the shooting, so the jury should also hear about other causes of delay. The question that boils out of this is what did Mr. Alam do, individually, to prevent Pence from returning. These actual shots fired increased the tension levels throughout the entire Capitol building. Then there was the suspicion of more, which was a valid reason to keep people – such as Pence "in place". At this time, there was already a "false" report of gunshots being fired. So when this shooting was "called in", even the officers were probably unsure if the shots came from the police or a crowd. Overall, it is fair to say here, that under these circumstances, what really cause the delay in any "proceeding" was not Mr. Alam, but rather based on that fact that "shots" were actually fired, and someone was actually killed as a result.

Who was firing shots at whom, should be a reason as to any cause of delay.

**E.** *Conclusion.*

Defendant Alam is charged with 18 USC 1512 (c)(2), which is alleged to have remained "ongoing" – even after the shooting. In light of this, Defendant Alam must be able to present a defense to the 1512 charges, and in doing so with these officers as witnesses can establish that there was chaos behind the doors, and that any delay in the proceedings to unquestionably be attributed to the shooting that took place at the Speakers Lobby doors.

Dated:  New York, New York
      September 9, 2023    Respectfully Submitted,

              ____/s/_____
              STEVEN A. METCALF II, ESQ.
              *Attorney for Mr. Alam*
              Metcalf & Metcalf, P.C.
              99 Park Avenue, 6th Flr.
              New York, NY 10016
              (*Office*) 646.253.0514
              (*Fax*) 646.219.2012