UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 21-CR-190 (DLF) |
| v. : | |
| : | |
| ZACHARY ALAM, : | |
| : | |
| **Defendant** : | |

### GOVERNMENT'S REPONSE TO DEFENDANT'S SECOND PROFFER
### FOR TESTIMONY FROM OFFICERS BEHIND THE SPEAKER'S LOBBY DOORS

In his most recent filing, the Defendant again proffers that the testimony of three officers who were present inside of the Speaker's Lobby are relevant and necessary to his case. This proffer, as with his previous written and oral proffers, is wholly insufficient to support his argument that their anticipated testimony is relevant and necessary in this case.

The Defendant asserts in his current proffer that the testimony of Officers Byrd, Tyson, and McKenna is necessary for him to defend against Count Five of the Indictment, which charges Obstruction of an Official Proceeding under Title 18, United States Code, Section 1512(c)(2). The Defendant claims that testimony of these officers is necessary as it "goes to rebut the cause of delay in the 'official proceedings' and whether Mr. Alam personally caused a delay, or obstruction, or impeded such proceedings with 'corrupt' intent." The Defendant argues:

> Clear answers from officers behind the doors – and not a fishing expedition – are going to be that the shooting was "called in" on the radio. Then clear answers are going to be that an investigation took place afterwards. The defense of Mr. Alam is that the "shooting", regardless of proper or improper officer conduct, caused the delay in the "official proceedings". Such is vital because during the course of this trial has been inferred to now have been based on Mr. Alam's personal actions.

The Defendant's most recent proffer is woefully deficient in providing a sufficient basis for introduction of the proffered testimony for several reasons outlined below.

1

## DISCUSSION

**I.  Evidence Related to the Shooting Investigation is Irrelevant and Should Be Excluded**

The Court may only admit evidence at trial if it is relevant to the matter at hand. Fed. R. Evid. 402. Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action. Fed. R. Evid. 401. In this case, the defendants are charged, in part, with Obstruction of an Official Proceeding, 18 U.S.C. § 1512(c)(2). Relevant evidence to this charge would either support or detract from a conclusion that the defendants in fact obstructed or impeded an official proceeding, in this case the Congressional certification of the Electoral College vote.

Criminal statutes generally require the government to show that a defendant's actions were the but-for cause of the harm. Courts may, however, apply a different kind of causation, so-called duplicative causation, when there are multiple sufficient causes that could independently cause the harm. *See Burrage v. United States*, 571 U.S. 204, 214–15 (2014); *Causation*, BLACK'S LAW DICTIONARY (11th ed. 2019). Duplicative causation is the relevant standard for § 1512 because of the nature of the Defendant's actions and the facts specific to what actually unfolded at the U.S. Capitol on January 6, 2021.

In *United States v. Rivera*, the court directly addressed the question of causation as it related to the January 6 cases. No. 21-cr-060 (CKK), 607 F.Supp. 3d 1 (2022) (D.D.C. June 17, 2022). In *Rivera*, at a bench trial, the defendant argued that he did not "in fact" cause the certification delay "because both Houses of Congress had recessed by the time he had entered the Capitol itself." *Id.* The court rejected this argument and found defendant guilty because the evidence at trial showed that "even the presence of one unauthorized person in the Capitol is reason to suspend Congressional proceedings." *Id.* at 9. The court held that the government was not required to prove

that the defendant was the but for cause of the delay, because doing so would require "read[ing] terms into statutory provisions that are not there." *Id.* Additionally, the court explained that "it is likely often the case that this statute would be aimed at protests involving several people who collectively disrupt proceedings but where no individual person's presence or actions would alone disrupt proceedings." *Id.* at 9 n. 15. Thus, as a legal matter, the Defendant's causation theory as a basis to call these witnesses is misguided.

## II. The Defendant Had Already Obstructed and Impeded the Proceeding by the Time Congress Recessed

There is overwhelming evidence in this case that the Joint Session of Congress had already been impeded, and was continuing to be impeded, well before the shooting outside the House Chamber. Testimony and evidence thus far have established that the Defendant was well inside the restricted perimeter and moving toward the Capitol Building itself before the Senate was placed into emergency recess. Government's Exhibit (hereinafter G.E.) 608 is a photograph, taken by the Defendant himself, at 1:59 p.m., depicting him at the side of the Northwest Steps well inside of the restricted perimeter. G.E. 301 then documents that by 2:11 p.m. the Defendant had moved up to a landing on those steps and was helping to pull other rioter up to the landing as they climbed up the walls. This was *prior* to the emergency recess called by the Senate.

The House of Representatives, on the other hand, was still in session when the Defendant entered the Capitol Building by jumping through a broken window at the Senate Wing Door at 2:17 pm. G.E. 303. They remained in session until 2:29 p.m., during which time the Defendant had moved his way to the Crypt in the interior of the building. G.E. 303. He arrived there at 2:19 p.m., joining a large mob which overran a line of officers. By 2:30 p.m. the Defendant was not exiting the building but was instead entering an elevator to go to the fourth floor of the Capitol. G.E. 306, 307.

**III.     The Proceeding Continued to Be Obstructed Though Its Inability to Reconvene Prior to the Shooting**

After the House had called an emergency recess at 2:29 p.m., the Joint Session of Congress was unable to reconvene and resume its work due to the obvious and significant security concerns posed by the vast number of rioters, many violent and angry as was the Defendant. During the time the Defendant was in the Capitol Building prior to eventually arriving at the Speaker's Lobby Doors, he went to the fourth floor where he kicked open a closed door, then worked his way down to the third floor where he threw a section of velvet rope from a station down at officers a floor below, then walked down steps where officers were posted and then turned and ran from them. G.E. 404.1.

The Defendant next made his way to the second floor of the Capitol and joined a mob just outside of the House Main Doors. There at the House Main Doors, he was loud and disruptive, taunting an officer and then joining the mob as they pushed past the police line to get to the edge of the doors themselves. G.E. 410.1. At the House Main Doors the crowd chanted "Stop the Steal" and "Break it Down" as offices attempted to protect against a breach of the doors. *Id.*

The Defendant then left the House Main Doors and circled around down three hallways and arrived at the Speaker's Lobby Doors. When the Defendant arrived, there were three officers standing guard outside the Speaker's Lobby Door, with furniture piled behind them to provide a barricade. G.E. 411.1. The Defendant walked up to these officers while, visible through the glass of the door, members of Congress and staff were evacuating the House chamber. *Id.* Now at the front of the mob, the Defendant punched the glass repeatedly with his fist and shattered multiple glass door panes. *Id*. As he punched, he pushed up against the officers. *Id*. After they moved away, he kicked the door, then used a black helmet to smash the glass as other rioters yelled that there was a gun behind the door. *Id*. The Defendant continued to smash the windows, including the right-

4

hand glass pane, breaking it free of the frame. *Id.* Moments later a female climbed up into that opening and was shot just before she entered the Speaker's Lobby. The Defendant's continued presence as well as his actions during this time thus continued to obstruct and impede the Joint Session.

**IV.     The Proffer Itself Is Deficient in Establishing a Sufficient Connection to the Events**

The evidence in this case shows that even after the shooting, officers continued to deal with violent rioters at locations as diverse as the East Rotunda Doors, the Parliamentarian's Doors, the Upper West Terrace Doors, the Senate Wing Doors, and the Lower West Terrace Tunnel from 2:36 p.m. until after 4:00 p.m. G.E. 101. Further, officers were just able to begin the process of moving rioters away from the exterior of the building around the Northwest Terrace at 4:30 p.m. *Id.* Any assertion that the Joint Session could have reconvened immediately after the shooting is as preposterous as it is irrelevant to the 1512(c)(2) in which the Defendant is charged. Evidence of the investigation into the shooting simply misses the point.

Finally, to the extent that there was activity involved in investigating the shooting at the Capitol, the Defendant has proffered nothing to suggest that the three witnesses that he proposes to call would provide relevant and admissible testimony as to the impact any investigation had on the reconvening of the Joint Session. In fact, the Government has provided the Defendant with audio recorded interviews of the three officers which indicate that all three officers were interviewed on January 6, 2021, at U.S. Capitol Police Headquarters (a completely different building off of the U.S. Capitol complex). . These interviews started at 6:04 p.m. that day. This fact alone establishes that they would have limited to no first-hand knowledge of what, if any, investigative activity was occurring at the Capitol Building during this time.

While the shooting itself is relevant to contextualize the danger that existed when the defendant took the actions he did and the natural and probable consequences of that conduct, examining the witnesses – based on the defendant's proffer – is insufficient to provide relevant evidence for the charges (or the defense of said charges) in this trial.

## CONCLUSION

For the foregoing reasons, the Defendant's proffer does not establish a sufficient basis for calling his proposed witnesses and amounts to an irrelevant fishing expedition, notwithstanding his pleas to the contrary.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   /s/ Rebekah Lederer
Rebekah Lederer
Pennsylvania Bar No. 320922 Assistant
United States Attorney
U.S Attorney's Office for District of Columbia 601
D St. N.W, Washington, DC 20530
(202) 252-7012
rebekah.lederer@usdoj.gov

/s/ Joseph S. Smith, Jr.
Joseph S. Smith, Jr.
CA Bar No. 200108
Assistant U.S. Attorney
601 D Street, N.W. Washington, D.C. 20530
(619) 546-8299
joseph.s.smith@usdoj.gov