UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : Case No. 21-cr-190 (DLF) |
| | : |
| ZACHARY ALAM, | : |
| | : |
| Defendant. | : |

**GOVERNMENT'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTIONS FOR ACQUITTAL AND RELATED BRIEFING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this response in opposition to Defendant Zachary Alam's motion for acquittal or, in the alternative, a new trial. ECF No. 117. Defendant's motions should be denied in all respects.

**I.   Background**

The trial in this matter commenced on September 7, 2023, and concluded on September 12, 2023. On September 8th, at the close of the government's case, Defendant Alam moved for Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29 as to the felony allegation in Count Four (Destruction of Government Property) and as to Count One (Assault on a Federal Officer). Trial Tr. 966. The Court elected to defer ruling on the motion at that time. *Id*. After both sides had rested, the Court denied the Defendant's Rule 29 motion as to Destruction of Government Property, but instead elected to instruct the jury on the lesser included misdemeanor offense. Trial Tr. 1059.

On September 12, 2023, the jury issued its verdict, finding the defendant guilty of all counts before them: Count One (Assaulting, Resisting, or Impeding Certain Officers), Count Three

1

(Obstructing Officers During a Civil Disorder), Count Four (Destruction of Government Property), Count Five (Obstruction of an Official Proceeding), Count Six (Entering or Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon), Count Seven (Disorderly or Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon), Count Eight (Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon), Count Nine (Disorderly Conduct in a Capitol Building), Count Ten (Act of Physical Violence in a Capitol Building), and Count Eleven (Parading, Demonstrating, or Picketing in a Capitol Building). ECF No. 109. The Court ordered Defendant Alam to file post-trial motions by October 12, 2023, then later extended the deadline to October 25, 2023, with Government responses due on November 8, 2023. *See* 10/22/23 Minute Entry.

Alam filed the subject post-trial motions on October 26, 2023. ECF No. 117. In them, he moves the Court to grant his motion for judgment of acquittal of Count One (Assault on a Federal Officer) and Count Five (Obstruction of an Official Proceeding), or in the alternative to grant a motion for a new trial. The government respectfully files this response in opposition.

**II.    Legal Standard**

A. <u>Pursuant to Federal Rule of Criminal Procedure 29, the Court must view the evidence in the light most favorable to the government and may only grant the defendant's motion if there is insufficient evidence to sustain a conviction.</u>

Federal Rule of Criminal Procedure 29 permits the defendant to move for judgment of acquittal at the close of the government's case in chief or at the close of all evidence on the ground that the evidence presented is "insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). The Court must consider the evidence "in the light most favorable to the government" to determine if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Shi*, 991 F.3d 198, 205 (D.C. Cir. 2021) (citations omitted). Stated

otherwise, "a judgment of acquittal is warranted 'only when there is no evidence upon which a reasonable mind might find guilt beyond a reasonable doubt.'" *United States v. Khanu*, 675 F. Supp. 2d 55, 60 (D.D.C. 2009) (quoting *United States v. Byfield*, 928 F.2d 1163, 1165 (D.C. Cir. 1991)).

When considering a Rule 29 motion after a verdict, the Court "must view the evidence in the light most favorable to the verdict and must presume that the [trier of fact] has properly carried out its functions of evaluating the credibility of witnesses, finding the facts, and drawing justifiable inferences." *United States v. Campbell*, 702 F.2d 262, 264 (D.C. Cir. 1983). Credibility determinations are for the factfinder. *See United States v. Williamson*, 81 F. Supp. 3d 85, 89 (D.D.C. 2015); *see also Glasser v. United States*, 315 U.S. 60, 80 (1942) (courts should not "weigh the evidence or determine the credibility of witnesses") (superseded by statute on other grounds). "If the evidence reasonably permits a verdict of acquittal or a verdict of guilt, the decision is for the factfinder to make," and the motion must be denied. *United States v. Jabr*, No. CR 18-0105 (PLF), 2019 WL 13110682, at *4 (D.D.C. May 16, 2019) (granting Rule 29 motion as to completed § 1752(a)(1) offense, denying Rule 29 motion as to attempt to commit § 1752(a)(1), and finding the defendant guilty of same following a bench trial) (citing *United States v. Jemal*, Criminal No. 05-0359, 2007 WL 778623, at *3 (D.D.C. March 12, 2007); *United States v. Sutton*, 801 F.2d 1346, 1358 (D.C. Cir. 1986)).

> B. <u>Pursuant to Federal Rule of Criminal Procedure 33, the Court must only grant a new trial in extraordinary circumstances.</u>

Rule 33 permits the Court to vacate the judgment and grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). "In order to grant a new trial, the evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand. This power should be exercised with caution and is invoked only in those exceptional

3

cases in which the evidence weighs heavily against the verdict." *United States v. Edmonds*, 765 F. Supp. 1112, 1118 (D.D.C. 1991) (internal citations and quotation marks omitted). The defendant bears this heavy burden under Rule 33, and to meet it he "must show that (1) there was a substantial error and (2) the error affected the defendant's substantial rights." *Williamson*, 81 F. Supp. 3d at 89.

### III. Argument

#### A. The government introduced sufficient evidence for a rational factfinder to conclude the Defendant Assaulted Officers in Count One

The video and testimonial evidence introduced at Alam's trial clearly showed the Defendant's overall actions and intentions that day – from his presence at the Stop the Steal rally on the Ellipse through his violent actions at the Speaker's Lobby Door. His violent and disruptive actions were presented to the jury through videos, photographs, and the testimony of multiple witnesses, including two of the officers assaulted by the Defendant at the Speaker's Lobby Door. Alam now asks this Court to overlook this evidence and the jury's verdict. This Court should decline this invitation and deny his motions.

In his motion as it relates to Count One, Assaulting, Resisting, or Impeding Certain Officers, Alam focuses on individual words and phrases within the jury instructions, ignoring the overall instructions and the context in which those words or phrases were to be applied. He also ignores the evidence presented at trial. Alam selectively focuses on the word assault in his pleading, ignoring every other basis for criminal liability including resisting, opposing, impeding, intimidating, and interfering with officers. ECF 117 at 4. He also focuses his argument on the term "forcibly." While he concedes in his motion that to prove that a person acted forcibly "[p]hysical force or contact is sufficient but actual physical contact is not required," he never addresses this and simply states in his motion that "[he] never touched these officers…." *Id.* However, the record

is clear that Alam made physical contact with both of the testifying victim-officers. A video exhibit admitted at trial, Government's Trial Exhibit ("Ex.") 411.1, captured Alam thrusting his body forward, into the officers' chests, as he smashed his fist into the glass panels of the doors just behind their heads. Further, both officers testified to these very facts during the trial. Trial Tr. 811, 812, and 847.

Ignoring the clear evidence that his charged behavior was forcible because it involved physical contact, Alam turns instead to an alternative manner that the Government could prove that he acted forcibly - that he had the present ability to inflict bodily harm upon another and threatened or attempted to inflict bodily harm upon that person – to argue that no rational jury could have made this finding. ECF 117 at 4. In arguing this point Alam contends, without support, that "there was no threat. There was no ability to inflict bodily harm upon another." *Id*. This bald assertion contradicts the overwhelming evidence presented at trial. The Defendant was captured on video repeatedly throwing himself forward into officers as he slammed his bare fist into the glass door panels immediately behind their heads so aggressively that he shattered the panels. Ex. 411.1. Further, both victims who testified described Alam's aggressive actions and demeanor during this time. Sergeant Lively testified that he specifically remembered the defendant because "he was the loudest, the most aggressive, and he was the one punching the windows." Trial Tr. 812. Special Agent Yetter testified that he remembered the Defendant distinctively because "[a]s crazy as that day was, that was the most loud and boisterous and aggressive person, and he obviously punched right next to my face." Trial Tr at 850.

Another critical omission in Defendant Alam's Rule 29 motion as to Count One is any mention that Count One also charged that the Defendant committed the offense *with the intent to commit another felony*. Thus, even assuming for the sake of argument that the government failed

to prove physical contact between Alam and the listed victims, there is an independent legal basis to support Alam's conviction on Count One. On this matter, the jury was instructed at the close of the case that "'another felony' refers to the offenses charged in Counts Three and Five." ECF 104, at 22. The jury returned guilty verdicts as to both of those Counts - Obstructing Officers During a Civil Disorder (Count 3) and Obstruction of an Official Proceeding (Count 5) - in addition to Count One. These findings therefore form a separate independent basis to reject the Defendant's above argument regarding physical contact.

At the trial, the government introduced sufficient evidence for a rational factfinder to conclude that the Defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with officers, that he did this forcibly, and that he did make physical contact with the officers or acted with the intent to commit either of the two other felony offenses of which he was also found guilty. In fact, rational fact finders did conclude the evidence was sufficient and, after weighing all the evidence and credibility of the witness testimony, convicted on Count One.

> B. <u>The government introduced sufficient evidence for a rational factfinder to conclude that the defendant acted corruptly in obstructing the Joint Session of Congress as charged in Count Five.</u>

In Count Five, the Defendant Alam was charged with Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2). To prove that offense, the government was required to prove (1) the defendant attempted to or did obstruct or impede an official proceeding; (2) the defendant intended to obstruct or impede the official proceeding; (3) the defendant acted knowingly, with awareness that the natural and probable effect of his conduct would be to obstruct or impede the official proceeding; and, (4) the defendant acted corruptly. ECF 104 at 28. Alam challenges the jury's verdict as to Count Five by alleging that there was insufficient proof to support that he acted corruptly. However, the evidence clearly established the contrary

6

and his motion should be denied.

At the conclusion of the trial, the jury was instructed, "[t]o act 'corruptly,' the defendant must use independently unlawful means or act with an unlawful purpose, or both. The defendant must also act with 'consciousness of wrongdoing.' 'Consciousness of wrongdoing' means with an understanding or awareness that what the person is doing is wrong." ECF 104 at 29. The instructions also provided illustrative examples of such conduct, stating in part that "[o]ften, acting corruptly involves acting with the intent to secure an unlawful advantage or benefit either for oneself or for another person." *Id.*

Alam makes an unsupported claim in his motion that "the evidence in no way shape, or form established that Alam committed the element of 'corruptly.'" This is plainly incorrect, as there was ample evidence that the Defendant acted corruptly. Overwhelming evidence was presented at trial that Alam acted with "independently unlawful means" and acted "with an unlawful purpose." The evidence established that Alam attended the Stop the Steal rally then travelled down to the Capitol Building where the Joint Session of Congress was occurring, entering the restricted area. He illegally entered the Capitol Building by jumping through a shattered window at the Senate Wing Doors, Ex. 303, Trial Tr. 675-76, then roamed across four floors of the Capitol Building. Trial Tr. 675-713. While on the fourth floor of the Capitol he led other rioters as they roamed the hallways, Trial Tr. 676, and he kicked a closed office door as he walked down one hallway. *Id.*, Ex. 404.1. He then threw a velvet rope for a stanchion down at officers on a lower landing, Trial Tr. 688, running away from them afterwards. Trial Tr. 690-691. He ultimately travelled to the area immediately outside of the House Main Doors, where officers were trying to keep a large crowd of rioters from getting into the House Chambers where members and staffers were still present for the Certification vote. Trial Tr. 694.

While outside of the House Main Doors the Defendant was loud and boisterous, taunting an officer and acting so erratic that even other rioters expressed concern over his behavior. When the mob pushed forward past the officers he joined them, continuing his taunting of the officer. The crowd them pushed up to the very edge of the House Chamber Main Doors where they repeatedly yelled in unison "stop the steal" and "break to down." Ex. 401.1, Trial Tr. 700-701.

Alam then broke away from the larger crowd and travelled around the exterior of the House Chamber to the Speaker's Lobby with others. Trial Tr. 702-703. When he arrived at the Speaker's Lobby Doors the doors were closed and were barricaded from behind with furniture. Ex. 411.1. There were three uniformed officers standing in front of the doors and numerous individuals visible in the hallway behind the doors evacuating the Chamber. *Id.* At that point, the Defendant, as detailed in testimony and corroborated in video introduced at trial, began pushing himself into the officers as he repeatedly punched the glass behind them with his fists, shattering the glass. Ex. 410.1, 411.1.

As the crowd continued to become more aggressive toward the officers, the Defendant turned toward the other rioters and told them that "these guys" (the officers) were not the problem. He then turned back toward the officers and began pointing behind them toward the Speaker's Lobby and cursing. Trial Tr. 821, 851. Ex. 410.1, Ex. 411.1. When the officers eventually moved to the side, the Defendant violently kicked the doors multiple times then took a helmet from another rioter and began smashing the glass panels, eventually breaking one entirely free from the frame. At that point another rioter jumped up into the window frame and was shot by an officer behind the door as she was attempting to enter. Ex 411.1, Tr. 708-711. Only then did the Defendant leave, although as he left the Capitol Building he was captured on video stating to another rioter, "we need guns." Trial Tr. 713, Ex. 418.

The jury found that during his time in the Capitol the Defendant committed numerous criminal offenses which are not even the subject of Alam's present motions, including Obstructing Officers During a Civil Disorder, Destruction of Government Property, Entering or Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, Disorderly or Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, and Acts of Physical Violence in a Capitol Building. The evidence supporting the jury's verdict on each of these counts provides compelling support that the Defendant used independently unlawful means or acts, and therefore acted corruptly.

Further, it is clear from the overwhelming direct and circumstantial evidence presented at trial that Alam intended to obstruct the lawful conduct of the certification vote. He attended the rally opposing the certification, marched to the Capitol, and entered the Capitol Building illegally. He traversed four floors of the building and joined the mob which pushed up to the Main Doors to the House Chamber chanting stop the steal and break it down. He then continued around the exterior of the Chamber to the Speaker's Lobby Doors where he came upon barricaded doors, with uniformed officers guarding the doors and numerous individuals evacuating on the other side. At this point he continued to advance, assaulting the officers, smashing the windows with his bare fists and with a helmet and not stopping until another rioter was shot.

Additional evidence of his knowledge and intent was presented to the jury though the notebook that was seized from the Defendant during the execution of a search warrant within a few weeks of January 6, 2021. The notebook included multiple entries relevant to the Capitol Building and the certification. In the notebook, the Defendant had a drawing of the Capitol, with

"House" and "Senate" identified, as well as the Rotunda. On the opposite page "Bicameral legislature" and Speaker's Lobby" were written, as well as "How are you so patriotic? It's b/c I love America, b/c of American-made trucks and God-made country." Later in the notebook an entry referenced "Video" and listed several bullet points on that page and the following page, among them "Why I did what I did. Explanation," "Call out Trump," "Hire editor for intro," "Wanted a civilized discussion but the doors wouldn't open," and "Call out Pence – should have been over." Ex. 717.1 In addition, there were numerous hand-written entries indicating general consciousness of guilt and intent to flee to avoid prosecution, including "turn off phone, put in plastic bag, put in tire. Stash tire," "consolidate crypto," "delete Pics on FB," and "Trade truck for car." *Id.*

  The evidence at trial clearly established that the Defendant acted corruptly and that he intended to obstruct the Congressional certification. A rational jury could, and did, find him guilty of Count Five.

**IV.     Conclusion**

For the reasons outlined above, the Court should deny Defendant Alam's motion for acquittal and motion for a new trial.

                                            Respectfully submitted,

                                            MATTHEW M. GRAVES
                                            United States Attorney
                                            D.C. Bar No. 481052

By:    */s/ Joseph S. Smith, Jr.*
          Joseph S. Smith, Jr.
          CA Bar No. 200108
          Assistant U.S. Attorney
          601 D Street, N.W.
          Washington, DC 20001
          (619) 546-8299
          joseph.s.smith@usdoj.gov

          */s/ Rebekah E. Lederer*
          REBEKAH E. LEDERER
          Assistant United States Attorney
          Bar No. PA 320922
          601 D Street, N.W.
          Washington, D.C. 20001
          (202) 252-7012
          Rebekah.Lederer@usdoj.gov