United States District Court
For the District of Columbia

UNITED STATES OF AMERICA,

-*v*-

ZACHARY JORDON ALAM,

      *Defendant*.

Docket No. 1:21-CR-00901-DLF

# SENTENCING MEMORANDUM FOR DEFENDANT "ZACH" ALAM

      Steven A. Metcalf II, Esq.
      **Metcalf & Metcalf, P.C.**
      99 Park Avenue, Suite 810
      New York, NY 10016
      *Office*:    646.253.0514
      *Fax:*      646.219.2012
      *Email*:  metcalflawnyc@gmail.com

      *Attorney for Defendant Alam*

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT……………..………..………………… 3

II. LAW AND ARGUMENT ....................................................... 7

III. AN INDIVIDUALIZED ASSESSMENT OF MR. ALAM AND HIS PERSONAL CHARACTERISTICS WARRANTS A LOW-END GUIDELINE SENTENCE …………………………………………………………… 9

IV. THE SERIOUSNESS OF THE OFFENSE, RESPECT FOR THE LAW, AND JUSTPUNISHMENT FOR THE OFFENSE…..………………………………………….. 12

    A. ADEQUATE DETERRENCE TO FUTURE CRIMINAL CONDUCT…………………………………………….. 13

    B. THE NEED TO AVOID UNWARRANTED SENTENCING DISPARITIES UNDER SECTION 3553(A)(6). ………………… 16

V. CONCLUSION ........................................................................................... 18

## I.     PRELIMINARY STATEMENT

The most important task in determining one's prison sentence, and what is just, necessary, not greater than sufficient: is the quintessential task to determine where someone has been, what he lost, where he can go in the future, and their true heart on the day he stands up tall for sentencing.

Regarding January 6, 2021 (hereafter referred to as "J6" or "January 6th"), a "single day", even if full of multiple mistakes, should not determine that person's character, true heart, the positive changes that he can make in the future, or where that person truly resides. The interesting aspect of federal sentences is that in presenting a person's history and how they impact others is where we discover what Justice represents in a particular case. During sentencing, judges perform a quintessential task constantly and effectively utilizing their own humanity and experience, and that of the person standing before them – ready to be sentenced – and whether such person deserves to be in custody, and for how long.

Depending on the defendant's age, family circumstances, where he is in life on that day – the distinction between years in prison can make all the difference.

Here, Mr. Alam is lost in this world. He is a loner, one who went to the capitol on his own, and acted at times in a manner he may have believed others wanted him to act. Alam wanted to fit in, it did not matter with whom, Alam just wanted to fit in somewhere because he has been rejected by everyone else in his life.

For example, one major aspect in his life is when his father essentially disowned him; whereas, Alam's relationship with mother is now becoming positive.[1]

With regards to a just sentence, we are faced with an astronomical difference in the government's position from that of the defense. Respectfully, it is submitted that the government should not be shooting so high, in terms of prison years. Specifically, the government is recommending "136 months of incarceration, three years of supervised release, $4,484 in restitution, and a mandatory assessment of $655" on this matter. *See* ECF 123 at p. 1. The government, unexpected to the defense, now seeks more than 11 years for Mr. Alam. The government is justifying its request in explaining that the "Court [may] depart or vary upwards to sentence" Mr. Alam. *See* ECF 123 at p. 1.

Further, the government over emphasized that "A jury convicted Alam of seven felonies and three misdemeanors for his actions on January 6, and his conduct warrants a significant period of incarceration." *See* ECF 123 at p. 3.

The seriousness of this conviction is undisputed, but over eleven (11) years of incarceration on this matter against Alam is extremely excessive.

---

[1] *See* ECF Doc. 121 at p. 25, ¶ 27 (highlighting that "the defendant is in the process of rebuilding his relationship with his mother."); *See also* Karyn Alam letter dated April 9. 2024 attached as **Exhibit A** (explaining some hostility when she was the one who "identified Zachary to the FBI after the January 6th attack on the US Capitol.").

Such government request is excessive, when an officer was not physically injured and the assaults on the officers are heavily in dispute. The overall basis of the government's submission is based on the entire crowd. Yet, Alam went to the Capitol alone. He was not part of any group, or affiliation. He was not even with another single human being. The property damage he caused remains undisputed, but Alam is grouped with a huge category of other people's actions. Rather, Alam went to the Capitol because an attorney "friend" persuaded Alam to meet on that morning. Then such friend did not meet Alam, so he acted alone that day, and his actions on that day should be judged in isolation.

Again, the government's request is a bit over excessive, especially when the guidelines are the guidelines.[2] Conversely, the recommendation of final presentencing investigation report more accurately reflects a just sentence in this matter. *See* ECF 125.  Alam has a total offense level of 23, however, he also falls into a category III. Counts 1-8, excluding count 2, reflect a guideline provision of 57 to 71 months. That equates to 4.75 years of incarceration on the low end of the

---

[2] In the PSR section of "Victim Impact" the following is highlighted:

> Mandatory restitution applies in these Title 18 offenses. This offense involved a large crowd of individuals who gathered outside the US Capitol, some of whom ultimately forced entry inside the building. Those individuals' actions included, but are not limited to, breaking windows, damaging property, and assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The incident resulted in substantial damage to the US Capitol . . .".

*See* ECF Doc. 121 at p. 10, ¶ 33.

guidelines. The recommended sentence is on the lowest end of such guidelines, 57 months in custody. *See* ECF 125 at p. 1.

Going back to my statement that Alam is "lost in this world"[3], and does not really have anyone "close to him" stems from his childhood and ethnicity. His father is of Palestinian descent, and Alam's mother is from Pennsylvania Dutch descent. *See* ECF Doc. 121. at p. 24, ¶ 96.

Most importantly, the father put a great deal of pressure on Alam to become a medical doctor. This is not to say that Alam suffered a horrific or under-privileged childhood. Rather, his father put on pressure, which Alam could not handle; then Alam went to medical school, and shortly dropped out, which was the clastic event for his relationship with his father. After being arrested on this matter, the strained relationship made another wrong turn, where the conversations between the two were unpleasant, to say the least. After leaving medical school Alam then went to live with his mother in a suburban area of Virginia. Job opportunities were scarce, and a strained relationship between Alam and his mother then manifested.

Alam then went out on his own, feeling rejected by the world, and most importantly suffered the feeling of rejection from his own family. What this Court will hear is that Alam then lived in a storage unit, where he would sneaking in-and-

---

[3] *See* ECF Doc. 121 at p. 26, ¶ 101 (explaining that Alam's mother has visited Alam one or two times while Alam during his current incarceration, and the mother's take is that "while he is incarcerated . . . he 'needs to find himself.' ").

out so others would not see that he was essentially living in the storage unit, and out of his old truck. In sneaking out at 5:00 am in the morning, Alam would go to a local gym to shower, and get ready for the day with proper hygiene. Then COVID hit this world, and all gyms closed. Something then changed in Alam. This is how Alam ended up in his position on January 6, 2021, and sheds light to his behavior to be accepted on J6.

Overall, Defendant Alam requests that he is sentenced to 57 months, or 4.75 years of incarceration, which is on the low end of the guidelines. *See* ECF 125 at p. 1.

## II.  LAW AND ARGUMENT

Defendant Alam requests a sentence on the low end of his sentencing guidelines, which is 57 months.

In support of such request, even the PSR highlights that "[a]dditionally, Count 4 embodies conduct treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to Count 5. Therefore, Count 4 groups with Counts 1, 3, 5, 6, 7, and 8 under USSG § 3D1.2(c)." *See* ECF Doc. 121 at p. 12, ¶ 56.

Further, "Pursuant to USSG § 3D1.3, for counts grouped pursuant to USSG §3D1.2(a)-(c), the offense level applicable to a Group is the offense level which produces the highest offense level. The prevailing guideline is USSG § 2J1.2." *See*

ECF Doc. 121 at p. 12, ¶ 57. The base offense level, specific offense characteristics, and all variances and enhancements have been considered. The PSR overall states under the section entitled "Guideline Provisions" states that:

> Counts 1-8: Based upon a total offense level of 24 and a criminal history category of III, the guideline imprisonment range is 63 to 78 months.
>
> . . .
>
> If the sentence imposed on the count carrying the highest statutory maximum is adequate to achieve the total punishment, then the sentences on all counts shall run concurrently, except to the extent otherwise required by law. Further, the maximum sentence which may be imposed on Count 3 is 60 months; therefore, the guidelines range for Count 3 is 60 months. USSG §5G1.1(c)(1).

*See* ECF Doc. 121 at p. 29, ¶ 134-135.

In analyzing the 3553(a) factors, the Court has the discretion to fashion the sentence it deems is just so long as it is no greater than necessary to accomplish the purposes of the sentencing statute.

We respectfully submit that the recommendation of the low end of the guidelines is appropriate, where the 3553(a) factors strongly support such sentence, which is no greater than necessary to accomplish the purposes of the sentencing statute.

### III. AN INDIVIDUALIZED ASSESSMENT OF MR. ALAM AND HIS PERSONAL CHARACTERISTICS WARRANTS A LOW-END GUIDELINE SENTENCE

In determining the particular sentence to be imposed, 18 U.S.C. § 3553(a)(1) directs the Court to consider the "history and characteristics of the defendant." This ensures "that the punishment will suit not merely the offense but the individual defendant." *Pepper v. United States*, 562 U.S. 476, 488 (2011) (citation omitted). Just as it is necessary for the Court to understand "what set a defendant upon [an] illegal course". *Id.* at 332. Moreover, its "a court's duty is always to sentence the defendant as [s]he stands before the court on the day of sentencing." *Pepper v. United States*, 562 U.S. 476, 492 (2011) (*citing United States v. Bryson*, 229 F.3d 425, 426 (2d Cir. 2000) (*per curiam*)).

Section 3553(a) requires a sentencing court to consider additional factors when determining its sentence. These additional factors include the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the range established by the Sentencing Guidelines, any pertinent policy statement from the Sentencing Commission, the need to avoid unwarranted sentencing disparities and the need to provide restitution to any victims. Consideration of these additional factors supports a probation sentence in this case.

In *Booker*, the Supreme Court held that mandatory application of the Sentencing Guidelines violated a defendant's Sixth Amendment rights. *United*

*States v. Booker*, 543 U.S. 220 (2005); *See Kimbrough v. United States*, 552 U.S. 85, 100-01 (2007); *United States v. Cavera*, 550 F.3d 180, 187 (2d Cir. 2008). Essentially, the rigid framework of the Guidelines was replaced with a process that makes the Guidelines merely advisory, and that requires judges to consider the factors specified in 18 U.S.C. § 3553(a) to determine a sentence that is "sufficient, but not greater than necessary" to accomplish the goals of sentencing. *Kimbrough*, 552 U.S. at 101.

> The post *Booker* goals include the need for the sentence imposed to:
>
> (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense;
>
> (2) afford adequate deterrence to criminal conduct;
>
> (3) protect the public from further crimes of the defendant; and
>
> (4) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2).

With this framework in mind, § 3553(a) provides for variances from the advisory Guidelines range based on, *inter alia*, "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1); *Kimbrough*, 552 U.S. at 108-10.

Additionally, *post-Booker* decisions have specified the procedure a district court must follow in sentencing, where the Guidelines serve as only a "starting point" in determining a sentence, and a sentencing court "may not presume that the Guidelines range is reasonable." *Gall v. United States*, 552 U.S. 38, 50 (2007). All of the sentencing factors enumerated under 18 U.S.C. § 3553(a) must be considered for the District Court to "make an individualized assessment based on the facts presented." *Gall*, 522 U.S. at 50; *see also United States v. Rigas*, 583 F.3d 108, 116 (2d Cir. 2009).

Put differently, courts should utilize the "most up-to-date picture" of a defendant's "history and characteristics", and one much more detailed than the PSR, which seems to not even confirm who Christmann is, and how dramatically he has changed his life around for the better. *Pepper*, 562 U.S. at 492.

For example, in *Pepper*, a defendant was convicted of narcotics trafficking, sentenced, and later resentenced as a result of other proceedings. By the time of his resentencing, the defendant "had been drug free for nearly five years, had attended college and achieved high grades, was a top employee at his job slated for a promotion, had reestablished a relationship with his father, and was married and supporting his wife's daughter." *Pepper*, 562 U.S. at 492. The Supreme Court emphasized that the District Court should have applied the § 3553(a) factors to the man standing before it on resentencing, rather than ending the analysis of his "history

and characteristics" at the time of the first sentencing. *Id.; United States v. Gonzales*, 163 F. Supp. 3d 1078, 1126 (DNM), *aff'd*, 844 F.3d 929 (10th Cir. 2016) ("a court may consider 'post offense rehabilitative efforts' in deciding whether to grant" a variance); *United States v. Rutherford*, 323 F. Supp. 2d 911, 914 (E.D. Wis. 2004) (same).

Here, if Mr. Alam is sentenced to incarceration for a time longer than five years, his life and future will be greatly impacted in a negative way. For example, his re-entry time will take place at a later age, where it will be more difficult for him to make positive changes, and obtain gainful employment. Such will adversely affect his ability to make actual steady progress.

We respectfully submit that each of these factors should be considered – where the imposition of over 57 months or five-years' incarceration will adversely Alam's ability to succeed in the future.

We ask this Court to take a look at each of these factors, as a whole, in making its determination.

### IV. THE SERIOUSNESS OF THE OFFENSE, RESPECT FOR THE LAW, AND JUST PUNISHMENT FOR THE OFFENSE.

An incarceration sentence of 4.75 years, or 57 months is appropriate and sufficient to reflect the seriousness of the offense of which Mr. Alam was convicted and to promote respect for the law and to provide just punishment.  As Mr. Alam traveled alone, did not physically injure anyone, and left after a US Capitol Officer

shot another individual right in front of Alam – when such gun was aimed at Alam – a sentence of an overly lengthy incarceration may undercut respect for the law. *Gall v United States*, 552 U.S. 38, 54 (2007) (highlighting "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing").

A. **ADEQUATE DETERRENCE TO FUTURE CRIMINAL CONDUCT.**

Imposing a sentence of 57 months, under these circumstances, will time have a bearing on deterrence. Empirical research shows no relationship between sentence length and deterrence. In a pre-Guideline study of specific deterrence, no difference in deterrence was found as a result of sentence severity, including between probation and imprisonment. *See* ANDREW VON HIRSCH, *et al.*, *Criminal Deterrence and Sentence Severity: An Analysis of Recent Research* (1999) (concluding "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance," and that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences generally is capable of enhancing deterrent effects.").

"There is generally no significant association between perceptions of punishment levels and actual levels . . . implying that increases in punishment levels do not routinely reduce crime through general deterrence mechanisms." GARY

KLECK, *et al.*, *The Missing Link in General Deterrence Theory*, 43 Criminology 623 (2005).

In addition to the ineffectiveness of imprisonment on deterrence, an over-emphasis on general deterrence poses the ethical problem of punishing one person to promote deterrence of others. "Judicial punishment can never be administered merely as a means for promoting another good either with regard to the criminal himself or to civil society, but must in all cases be imposed only because the individual on whom it is inflicted has committed a crime. For one man ought never to be dealt with merely as a means subservient to the purpose of another." IMMANUEL KANT, *The Science of Right*, 195 (W. Hastie trans., 1790).

Despite the government's position, Alam has become a public figure of scrutiny on both the left and the right of the political mayhem ensuing following the mayhem on J6. While other defendants have benefitted from public support and the opportunity to publicly tell their side of the story and why they protested that day, Alam has been villainized as an *Antifa activist*, anarchist, and even a federal agent, banned from so-called patriot groups.

Nonetheless, Alam has followed defense counsels' advice and has basically remained silent in the media realm area, thereby showing his acknowledgment of the seriousness of his charges, and his soon to be convictions.

Such actions over the last three years establish that deterrence has already been achieved. General deterrence simply is not a good reason for a lengthy prison term, or any in custody time frame if such is not necessary.

Rather, Alam has shown specific deterrence, and acknowledges the seriousness of his actions on J6. In acknowledging such, Alam has not made any outrageous, or dishonest statements to the public or the media, which also shows respect for the law – and this Court and the institution in which it stands for.

In defending this case, Alam has become a *notorious* public figure and at the center of controversy in certain circles. His controversy is not based on his actions that day, but rather, because he was a main witness to the government taking the life of unarmed demonstrator Air Force veteran Ashli Babbitt. Under such scrutiny, Alam still held his head up, and withstood all the blows thrown at him from the public and adverse rulings in court during his trial .

Again, with respect for the law, and this Court, Alam has stood tall and has not done anything outlandish in the public or the media. Being in a position where Alam could have easily spoken about the Babbitt shooting, and basically refusing to do so established that he has already been deterred, and has shown deterrence.

B. **THE NEED TO AVOID UNWARRANTED SENTENCING DISPARITIES UNDER SECTION 3553(A)(6).**

A low-level guideline sentence of 57 months in this case would not cause sentencing disparities between Mr. Alam and similarly situated individuals. Sentences of less incarnation on J6 cases have already been imposed on various January 6th defendants. *See United States v. Bledsoe*, 21-CR-00204 (BAH) (sentencing 48 months' incarceration, 36 months' supervised release, $2,000.00 fine, $2,000.00 restitution); *United States v. Seefried*, 21-CR-00287 (TNM) (sentencing Defendant to 24 months' incarceration, 12 months' supervised released, $2,000.00 restitution); *United States v. Priloa*, 22-CR-00242 (TSC) (sentencing 15 months' incarceration, 12 months' supervised release, $2,000.00 restitution); *See also United States v. Dustin*, 21-CR-00161 (RBW) (sentencing 36 months' incarceration, 36 months' supervised release, $2,000.00 fine, $2,000.00 restitution); *United States v. Wood*, 21-CR-00223 (APM) (sentencing 12 months' home detention, 36 months' probation, 100 hours' community service, $2,000.00 restitution).[4]

---

[4] In addition, the following cases are worth mention: *United States v. Allan*, 21-CR-00064 (CKK) (sentencing 21 months' incarceration, 36 months' supervised release, $2,000.00 restitution); *United States v. Decarlo*, 21-CR-00073 (BAH) (sentencing 48 months' incarceration, 36 months' supervised release, $2,500.00 fine); *United States v. Ochs*, 21-CR-00073 (BAH) (sentencing 48 months' incarceration, 36 months' supervised release, $5,000.00 restitution); *United States v. Jensen*, 21-CR-00006 (TJK) (sentencing 60 months' incarceration, 36 months' supervised release, $2,000.00 restitution); *United States v. Hughes*, 21-CR-00106 (TJK) (sentencing 46 months' incarceration, 36 months' supervised release, $2,000.00 restitution);

Similarly, in regard to January 6th there are various cases, this Court has sentenced defendants convicted 18 U.S.C. § 1512(c)(2), 2, including: *United States v. Colt*, 21-CR-00074 (DFL) (sentencing Defendant to 15 months' incarceration, 36 months' probation, 100 hours' community service, $1,000.00 restitution); *United States v. Calhoun*, 21-CR-00116 (DFL) (sentencing Defendant to 18 months' incarceration, 24 months' supervised release, $2,000.00 restitution); *United States v. Gray*, 22-CR-00338 (DFL) (sentencing Defendant to 12 months' and 1 day incarceration, 12 months' supervised release, $2,000.00 restitution); *United States v. Isaacs*, 22-CR-00338 (DFL) (sentencing Defendant to 12 months' and 1 day incarceration, 12 months' supervised release, $2,000.00 restitution).

Overall, the guidelines are the guidelines, where the government seeking a upward variance should be denied. Instead of the defense, in turn, seeking a downward variance, the lowest end of the guidelines should be applied, which is fair.

Scores of protesters had demonstrated on the Capitol grounds and in the Capitol building before and after January 6th, without similar repercussions by the government. Stated otherwise, 18 USC 1512 Obstruction of an Official proceeding has never been used in this fashion to prosecute demonstrators before or after J6.

Again, before and during Alam being incarcerated on this matter, he has been abandoned by the few members he was close to in his family. Nonetheless, he has

sought only to help others around him. Upon information and belief, he was committed to assisting his cell mates in various different ways, all while being detained in what is known as "The Hole" in the DC Jail. This behavior proved Alam has a big heart, a willingness to put others before himself and to serve others despite being abandoned by all those he loves when he needed them the most.

## V. CONCLUSION AND SENTENCING RECOMMENDATION

For the reasons set forth above, it is respectfully prayed that this Court impose the low-end of the guidelines sentence through implementation of the PSR recommended sentence and commensurate with this sentencing application.

*Steven A. Metcalf, Esq.    /s/*
_____
STEVEN A. METCALF II, ESQ.
**Metcalf & Metcalf, P.C.**
99 Park Avenue, Suite 810
New York, NY 10016
*Office* 646.253.0514
*Fax* 646.219.2012
*Attorneys for Defendant Alam*

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a copy of the instant Motion was served via ECF this 15th day of April, 2024 on all counsel of record.

/s/ *Steven A. Metcalf II*

_____

**STEVEN A. METCALF II, ESQ.**