𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔆𝔬𝔲𝔯𝔱
𝔉𝔬𝔯 𝔱𝔥𝔢 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔬𝔣 𝔆𝔬𝔩𝔲𝔪𝔟𝔦𝔞

(𝔉𝔦𝔩𝔢𝔡 𝔘𝔫𝔡𝔢𝔯 𝔖𝔢𝔞𝔩)

UNITED STATES OF AMERICA,

**TO BE FILED UNDER SEAL**

-*v*-

Doc. #: 21-CR-00901 (DLF)

JACHARY JORDON ALAM,

*Defendant.*

## SECOND SENTENCING SUPPLEMENTAL MEMORANDUM FOR DEFENDANT ALAM

STEVEN A. METCALF II, ESQ.
**Metcalf & Metcalf, P.C.**
99 Park Avenue, Suite 810
New York, NY 10016
*Office*:  646.253.0514
*Fax:*    646.219.2012
*Email*:  metcalflawnyc@gmail.com

*Attorneys for Defendant Alam*

"[W]e treat departures and variances like two roads, one of which
can always get you to every place that the other may lead,
yet each of which has acquired its own set of directions."

*United States v. Fletcher*, 56 F.4th 179, 187 (1st Cir. 2022), *cert. denied*, No. 22-7130 (U.S. Apr. 24, 2023).

### TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT……..……:……………….…………………   3

II.    GUIDELINE CALCULATION …………………………………………………   4

III.    ███████████ …………………………………………..   6

      A.   *Overview of* ████████ *Considerations for Mr. Alam*………………   7
      B.   *Time Already Spent and the Potential for Rehabilitation*………………..   9
      C.   *The Role of Rehabilitation in Sentencing*…………………………………   9
      D.   *The Dangers of Incarceration and the Need for a Supportive Environment*…   10
      E.   *Humanitarian Considerations and the Need for Compassionate Sentencing*…   10

IV.    LAW AND ARGUMENT ……………………………………………………   11

      POINT ONE: ██████ ████ ███████ SUPPORT A SUBSTANTIAL DOWNWARD DEPARTURE BASED ON ██████████ AND ███████ AS MITIGATING FACTORS ……… ……..………………   11

      A.   ██████████ ████████████ ████████ ████   12
      B.   █████████████████………..…………………………………   14

      POINT TWO: APPLICATION OF THE 18 U.S.C. § 3553(A) FACTORS: REQUEST FOR DOWNWARD DEPARTURE, VARIANCES, OR A NON-GUIDELINE SENTENCE ………………………………………………………17

      A.  *The History and Characteristics of the Defendant and the Nature of the Offense Under § 3553(a)(1)*…………………………………………………   18
      B.  *The Seriousness of the Offense, Respect for the Law, and Just Punishment for the Offense Under § 3553(a)(2)*…………………………   19
      C.  *Adequate Deterrence to Future Criminal Conduct*…………………………   20

V.    CONCLUSION AND SENTENCING RECOMMENDATION …………...............................   21

## SECOND SUPPLEMENTAL FILING TO DEFENDANT ALAM'S
## SENTENCING MEMORANDUM

Defendant Alam, by his undersigned counsel, hereby respectfully files the instant application in conjunction with his leave application to file such "second supplemental" under seal.

Mr. Alam 's world is different from all the others who undoubtedly will be present in the courtroom this August, the date of his sentencing. What has recently been addressed in this matter is the ██████ ██████ ██████ ██████.

### I.   PRELIMINARY STATEMENT

The defense submits the instant supplemental seeking a downward departure and variance from the sentencing guidelines and urges the Court to consider alternative sentencing options that emphasize treatment over incarceration. Defendant Alam stands before this Court as an individual whose actions on January 6, 2021, were fueled by ██████ and ██████, including ██████ ██████, rather than any true criminal intent. Further, the environment of incarceration poses a significant risk of further radicalization, a risk that can be mitigated through appropriate ██████ ██████.

If the proposed guidelines on Alam are deviated from, slightly, and he is ultimately sentenced in the 40-month range, as such is just, necessary, not greater than sufficient. Specifically, a deviation from the low end of the guidelines[1] of two to three years will certainly benefit Mr. Alam as well as others who suffer from or have gone through life with an ██████ ██████. We hereby, respectfully request this honorable Court consider Mr. Alam be

---

[1] As will be addressed below, it is acknowledged that the government takes a different position on the guidelines of that in the PSR, and that as of today the Section 1512 charges are dismissed, and no longer relevant. (*See* ECF Doc. 121 Government's material/factual inaccuracies in the PSR at p. 2)(objecting to guidelines, and stating that after taking out Count 5, which has now been withdrawn or dismissed, "[t]he combined offense level after grouping is now 26, the adjusted offense level for both Counts 3 and 8.").

sentenced in the 40-month range, and that such be applied as a downward departure from the proposed PSR guidelines[2] because such time, will make all the difference in the world for others, when they will need it the most.

## II.   GUIDELINE CALCULATION

1.    It is acknowledged that the Government takes a different stance on the guidelines from that referenced in the PSR.

2.    First, the PSR "Base Offense Level" is based on the guidelines for 18 U.S.C. § 1512(c)(2), and USSG §2J1.2 of the guidelines. (*See* ECF Doc. 121 "PSR" at p. 12 of 35, ¶ 58). "That section provides that an offense involving Obstruction of an Official Proceeding and Aiding and Abetting has a base offense level of 14. USSG §2J1.2(a)." (*See* ECF Doc. 121 "PSR" at p. 12 of 35, ¶ 58).

3.    Second, the PSR then added eight levels because the "offense involved causing or threatening to cause physical injury to a person, or property damage, in order to obstruct the administration of justice [to wit: The defendant caused property damage to the Speaker's Lobby doors and threatened to cause physical injury since the window could have shattered onto the officers behind it, and his attempts to push through the doors with other rioters also constituted a threat to cause physical injury . . .". (*See* ECF Doc. 121 "PSR" at p. 12 of 35, ¶ 59) (*citing* USSG §2J1.2(b)(1)(B)).

---

[2] A "time served" or 40-month range sentence will allow Mr. Alam to rehabilitate himself after serving more than three-and-a-half years in the federal prison system. We ask your Honor to consider our requests, first, because Mr. Alam's actions were based on emotional and ███████. ███████ Second, because Mr. Alam's actions were in the heat of moment rather than based a specific criminal intent; Third, because at the time of his release, Alam can possibly be in his mid-thirties, and hopefully receive the treatment he needs to turn his life around; and lastly, because Mr. Alam's actions were based on one afternoon, and of short duration, he is without question worthy of a second chance – a chance to given to one who has recognized the severity of his actions that day after reliving such at trial and the ability to restart his life before he is too old to be a contributory member of society again.

4.      Fourth, the PSR sets forth a "total criminal history score is 6. According to the sentencing table in USSG Chapter 5, Part A, a criminal history score of 6 establishes a criminal history category of III." (*See* ECF Doc. 121 "PSR" at p. 19 of 35, ¶ 78).

5.      Overall, the PSR in this matter states "Guideline Provisions: Counts 1-8: Based upon a total offense level of 24 and a criminal history category of III, the guideline imprisonment range is 63 to 78 months." (*See* ECF Doc. 121 "PSR" at p. 30 of 35, ¶ 134).

6.      It is acknowledged that the government takes a different position on the guidelines. (*See* ECF Doc. 121 Government's material/factual inaccuracies in the PSR at p. 2 of 11)(objecting to the PSR guidelines, and setting forth that "[t]he combined offense level after grouping is now 26, the adjusted offense level for both Counts 3 and 8.").

7.      The government's position on Count 3, 18 U.S.C. § 231(a)(3) --Obstructing Officers During a Civil Disorder and Aiding and Abetting, is under U.S.S.G. § 2A2.4, "Obstructing or Impeding Officers" – a base offense level of 10. (*See* ECF Doc. 121 Government's material/factual inaccuracies in the PSR at p. 4 of 10)(*citing* U.S.S.G. § 2A2.4(a)). Three levels are added based on the Specific Offense Characteristics, in that under U.S.S.G. § 2A2.4(b)(1): "If (A) the offense involved physical contact … increase by 3 levels." (*Id.*). Overall, the base offense level for Count 3 is argued to be a level 14, because under U.S.S.G. §2A2.2(a) the conduct constated "aggravated assault". (*Id.*).

8.      Then the government argues for a 4-level increase because the specific offense characteristics of a dangerous weapon, under U.S.S.G. § 2A2.2(b)(2). (*Id.* at p. 5). Then a 6-level increase because the victim was a government employee, under U.S.S.G. § 3A1.2(a), (b). (*Id.*). Lastly, a 2-level increase under U.S.S.G. § 3C1.1 because "defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the

investigation, prosecution, or sentencing of the instant offense of conviction . . .". (*Id.*).

9.      Overall, assuming the government's position is correct, the grouping of Count Three and Count Eight lead to a **total offense level of 26 and a criminal history category of III** – the guideline imprisonment range is **78 to 97 months**.

### III.   ████████████████████████

10.     Counsel has reached out to Defendant Alam, and his family, specially his mother, to determine if Defendant Alam has ████████████████  ████████████████ ████████████████████████ As highlighted before, in the first supplemental, Mr. Alam ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████

11.     ████████████████████████████████ ████████████████████████████████████████ ██████ ██████████████████████████ ████████████ ██████████

12.     ████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████

13.     All the information that counsel was able ████████████████████ ████████████████████████████████████████ ████████████████; and ████████████████████████████████ .

█████████████████████████████████████████.

14.     The rationale or reasons for Mr. Alam being ████████████████████████ are still somewhat unknown,[3] but the following is what information can be provided as to what information has been obtained regarding Mr. Alam's ████████████. (*See* Email from Karyn Alam dated 4/29/2024 attached as **Exhibit C**).

15.     With that being stated, Alam has several rehabilitative needs.

**A.**     █████████████████████████████████████

16.     Mr. Alam's behavior during the events of January 6th was marked by a loss of temper, but also contained by a degree of self-control that suggests he is not beyond redemption.

17.     His actions were not those of a hardened criminal, but rather of an individual struggling with emotional instability. This instability has roots in his troubled upbringing, as previously detailed, and has manifested in ways that suggest a strong potential for rehabilitation.

18.     █████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████

19.     █████████████████████████████████████████
████████████████████████████████████████████████

---

[3] ███████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████

20.

21.

22.

23.     In emphasizing this point, I can only rely on the words of Alam's mother, who concluded her second letter to this Court with:



(*See* Email from Karyn Alam dated 4/29/2024 attached as **Exhibit C**).

**B.**   *Time Already Spent and the Potential for Rehabilitation*

24.    Mr. Alam has already spent a significant amount of time in custody, during which he has had the opportunity to reflect on his actions and their consequences. This period has served as a critical time for Mr. Alam to begin understanding the gravity of his actions and the underlying issues that contributed to them.

25.    However, additional incarceration would serve only to punish him further without addressing the root causes of his behavior. The best outcome for society, and indeed the justice system, is to truly rehabilitate Mr. Alam, guiding him toward becoming a productive citizen—the kind of individual we would want walking amongst our family and friends.

**C.**   *The Role of Rehabilitation in Sentencing*

26.    It is crucial to recognize that while Mr. Alam's actions on January 6th were fueled by anger, his decision to direct that anger at a window rather than an officer demonstrates his capacity for discernment even in moments of intense emotion.

27.    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**D.**   *The Dangers of Incarceration and the Need for a Supportive Environment*

28.     Mr. Alam took on a persona and sought acceptance within a glorified group that, at the time, he perceived as a brotherhood. This group provided a sense of belonging and inclusivity that Mr. Alam had been seeking for much of his life. However, this is precisely the type of environment that the prison system would offer him—a setting where similar groups thrive, potentially reinforcing the very attitudes and behaviors that led to his involvement on January 6th. Such an environment would be detrimental to his rehabilitation and would likely hinder his ability to reintegrate into society as a reformed individual.

29.     Mr. Alam does not need further exposure to environments that foster delusional beliefs about violent groups. What he needs is guidance—structured, compassionate support that can help him distinguish between destructive ideologies and positive societal contributions. The defense shares the Court's concern about individuals who live in a delusional state regarding violent groups, and we believe that the best way to address this concern is through targeted rehabilitation efforts, not further incarceration.

**E.**   *Humanitarian Considerations and the Need for Compassionate Sentencing*

30.     The defense urges the Court to adopt a humane approach, recognizing that Mr. Alam is an individual in need of ▬▬▬▬ not punishment. Incarceration would deprive him of the opportunity to receive the care he needs and would place him in a setting where the potential for positive change is minimal.

31.     In the spirit of a justice system that seeks to rehabilitate, not merely to incarcerate, we ask the Court to consider alternative sentencing options that emphasize ▬▬▬▬▬▬, community service, and a structured environment where Mr. Alam can learn to manage his

emotions constructively. This approach is not only in the best interest of Mr. Alam but of society as a whole.

32.     Specially, we request that this this Court not that the government's approach of an upward departure from the guidelines, and rather downward depart as Mr. Alam clearly has ████████████████, which clearly require treatment as opposed to an astronomical prison sentence, as the government requests.

### IV.  LAW AND ARGUMENT

It is respectfully submitted that Mr. Alam be granted a substantial downward departure under ████████████████████, as well as those factors highlighted in 18 U.S.C. § 3553. For the reasons stated below, the defense respectfully requests that this Court grant a downward departure from the sentencing guidelines under ██████████████, and impose a sentence that prioritizes treatment and rehabilitation over incarceration. Mr. Alam's actions, while serious, are the result of underlying issues that can and should be addressed through appropriate therapeutic interventions, not imprisonment.

This approach will ensure that Mr. Alam receives the support he needs to reintegrate into society as a positive and productive member, rather than being further entrenched in a system that often exacerbates the very problems it seeks to address.

### POINT ONE:

**SECTIONS ███████ ███ ████████ SUPPORT
A SUBSTANTIAL DOWNWARD DEPARTURE BASED ON
████████████ AND ████████████████ AS MITIGATING FACTORS**



The defense submits this sealed motion seeking a downward departure from the sentencing guidelines first under █████████████ and urges the Court to consider alternative sentencing options that emphasize treatment over incarceration. Defendant Alam, stands before

this Court as an individual whose actions on January 6, 2021, were influenced by deep-seated emotional and ███████████, including ██████████████ conditions, rather than any true criminal intent. The environment of incarceration poses a significant risk of further radicalization, a risk that can be mitigated through appropriate ██████████████ and ████████.

First, ███████████ addresses departures from the sentencing guidelines in cases where there are circumstances that were not adequately considered by the Sentencing Commission when formulating the guidelines. Courts are equipped with broad discretion, under section ████, to consider unique circumstances, including ████████████, which may warrant a departure from the typical sentencing range.

**A.** ████████████████████████████████████████ ████████████████████████████████ or inadequately treated, can be considered under ███████ if they significantly contribute to the offense or affect the defendant's ability to understand the nature of their actions.

This Court has the power to depart downward if the ████████████ is not adequately considered by the guidelines, especially if the condition significantly reduces the defendant's culpability or ability to control their behavior.

Regarding unidentified circumstances, if a defendant presents with ████████████ ████ issues that clearly affect their behavior, these can be seen as "unidentified circumstances" under ███████. The court may recognize that the Sentencing Guidelines did not account for such a condition, especially if it is unusual or extreme in its impact on the defendant's actions.

Regarding the combination of circumstances, under ███████, the court may consider a combination of factors, ████████████, even if none of them alone would justify a

departure. If the combination of circumstances, including ███████████████████ ████, makes the case exceptional, a downward departure may be warranted.

Overall, an application of ██████ for ████████████████ has allowed Courts to recognized that defendants with ████████████████████, which clearly manifest in their behavior and contribute to the commission of the offense, may be less culpable than defendants who acted without such impairments. In such cases, § ██████ allows for a tailored sentencing approach that considers the need for ███████████████ rather than purely punitive measures.

The lack of treatment or recognition is a relevant factor if a defendant's █████████████ were not recognized or treated before the offense, this can further support a downward departure under ████████ The failure of the system to diagnose or treat the condition can be seen as a mitigating factor that reduces the defendant's culpability.

In cases involving █████████████████████, the decision-making process is particularly complex. As exemplified in *Neal* and *Kimbrough*, rigid adherence to sentencing guidelines can sometimes lead to unjust outcomes when unique aspects of a defendant's situation are not adequately considered. *Neal v. United States*, 516 U.S. 284 (1996); *Kimbrough v. United States*, 552 U.S. 85 (2007). The Court has the discretion to depart from the guidelines to ensure that justice is served, especially when ███████████████ are a significant factor.

In sum, the flexibility of U.S.S.G. ████████ allows courts to consider a wide range of mitigating factors, including ██████████████████, when determining a sentence. If these issues significantly contributed to the offense, a downward departure may be appropriate to ensure that the sentence reflects the defendant's actual culpability and the need for treatment.

**B.**  ██████████████████████████████.

While ████████████████ is specifically addressed under § ██████, it can also be considered under § ██████ if the ████████████ do not fit neatly into the ████████████████ criteria but still significantly impacted the defendant's actions or understanding.

The nexus between ████████████ and judicial discretion underscores the importance of placing these complex decisions in the hands of honorable judges like Your Honor, who are best equipped to consider the full scope of the defendant's circumstances. Mr. Alam's actions were influenced by ███████████████████████████ that contributed to his impaired judgment on January 6th. These circumstances justify the Court's discretion in granting a downward departure under ██████████████████.

Additional considerations regarding Alam and ████████████████ is that the Bureau of Prisons (BOP) offers various inmate programs aimed at rehabilitation, including ████████████ ██████. However, these programs have proven largely ineffective in addressing the deep-seated ███████████████ that many inmates face. In contrast, outpatient facilities provide a more flexible and less restrictive environment, allowing patients to engage in therapy and other forms of treatment that are better suited to their specific needs. Research indicates that outpatient ███████ ████████████, combined with strict monitoring, can lead to better outcomes, including lower recidivism rates.

Another relevant factor is the need for consistency in sentencing after comprehensive ███████████████. Consistency in sentencing is important, but it must be achieved only after a thorough understanding of the individual's █████████████████ A one-size-fits-all approach risks overlooking the unique circumstances that contribute to criminal behavior. The defense strongly recommends that Mr. Alam obtain the treatment he needs, rather than a lengthy

prison sentence. Alternatively, Alam's supervised release conditions can encompass a ███████████████, and then comprehensive treatment to follow.

The Federal Sentencing Commission has made significant strides in advancing the fairness and effectiveness of sentencing in the United States over the past two decades. The Commission's work in promoting judicial discretion, particularly in cases involving complex factors such as ████████, has been instrumental in allowing courts to take a more individualized approach to sentencing. This progress has enabled courts to consider alternative sentencing options that prioritize rehabilitation over punishment. Alternatives and creative treatment conditions as opposed to lengthy prison sentences fit into the Federal Sentencing Commission goals and strides in achieving fairness with respect to ███████████.

For the reasons stated above, the defense respectfully requests that this Court grant a downward departure from the sentencing guidelines under ████████████████, and impose a sentence that prioritizes treatment and rehabilitation over incarceration. Zachary Alam's actions, while serious, are the result of underlying issues that can and should be addressed through appropriate therapeutic interventions, not imprisonment.

The defense proposes that Mr. Alam's sentence encompass a rigorous ███████████ and, if necessary, a comprehensive █████████████, similar to the sentence given to Nicholas Rodean. *US v. Rodean*, 1:21-CR-57 (RCL). This approach will ensure that Mr. Alam receives the support he needs to reintegrate into society as a positive and productive member, rather than being further entrenched in a system that often exacerbates the very problems it seeks to address.

The *Rodean* case provides a compelling precedent for the Court to consider when determining the appropriate sentence for Mr. Alam. In *Rodean*, Judge Royce C. Lamberth faced a

defendant who, like Mr. Alam, participated in the events of January 6th while suffering from ███████████████████ conditions. Rodean was diagnosed with autism spectrum disorder after the fact, which played a significant role in his actions during the Capitol breach.

Judge Lamberth recognized that Rodean's ███████████████ were not fully understood at the time of the offense, and he emphasized the importance of treating the underlying condition rather than merely penalizing the symptoms on display. As a result, Rodean was sentenced to 240 days of home confinement rather than imprisonment, with a focus on ensuring that he received the ███████████████ necessary to address his condition.

The parallels between the *Rodean* case and the instant matter are striking. Both individuals were involved in the events of January 6th, and both acted under the influence of ███████████ ███████████████. In Mr. Alam's case, his actions were driven by deep-seated ███████████████ that remain unaddressed. Like *Rodean*, Mr. Alam would benefit far more from ███████████████ than from incarceration, which would do little to address the root causes of his behavior.

Judge Lamberth's decision in *Rodean* highlights the importance of focusing on treatment rather than punishment in cases involving ███████████████. By addressing the underlying condition, the Court can help ensure that the defendant is rehabilitated and able to reintegrate into society as a productive member. This approach is not only in the best interest of the defendant but also serves the public by reducing the likelihood of recidivism.

Specifically, we are requesting that based under the ███████████████████, and Mr. Alam's nature and circumstances, that he be sentenced to a downward departure, and consequently be sentenced – if possible to a term of incarceration no more than forty (40) months.

## POINT TWO:

### APPLICATION OF THE 18 U.S.C. § 3553(A) FACTORS:
### REQUEST FOR DOWNWARD DEPARTURE, VARIANCES, OR A NON-GUIDELINE SENTENCE

It is well settled that a sentencing court must follow the three-step process the *Gall* Court set forth. *Gall v. United States*, 552 U.S. 38 (2007) (highlighting the court should begin all sentencing proceedings by correctly calculating the applicable guideline range, and that "to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark").

First, the court must properly determine the guideline range.

Second, the court must determine whether to apply any of the guidelines' departure policy statements to adjust the guideline range.[4]

Third, the court must consider all the factors set forth in 18 U.S.C. § 3553(a) as a whole, including whether a variance[5] is warranted and appropriate. *United States v. Stone*, 432 8 F.3d 651, 655 (6th Cir. 2005); *United States v. Talley*, 431 F.3d 784, 786 (11th Cir. 2005).

### A.   *The History and Characteristics of the Defendant and the Nature of the Offense Under § 3553(a)(1).*

Sentencing Guidelines are no longer mandatory and are not even presumed to be reasonable; instead, it is respectfully submitted that the guidelines should be considered as just one of many factors to be weighed when selecting a disposition that is sufficient but not greater than necessary to satisfy the purposes and goals set forth in § 3553(a).[6] *Gall v. United States*, 552 U.S.

---

[4] *See* 18 U.S.C. § 3553(a)(5); *See also United States v. McBride*, 434 F.3d 470 (6th Cir. 2006) (guideline 7 departures are still a relevant consideration for determining the appropriate guideline sentence); *United States v. Jordi*, 418 F.3d 1212 (11th Cir. 2005) (highlighting that "the application of the guidelines is not complete until the departures . . . are appropriately considered"); *see also United States v. Lofink*, 564 F.3d 232 (3d Cir. 2009) (holding that district court's failure to rule on the defendant's departure arguments constitutes procedural error).

[5] Hereafter in stating a "variance", such shall be construed to mean "a sentence outside the advisory guideline system".

[6] *United States v. Mohammed*, 459 F.3d 979 (9th Cir. 2006) (highlighting in light of *Booker*, Courts should "treat such so-called departures as an exercise of *post-Booker* discretion to sentence a defendant outside of the applicable

38, 49-50 (2007); *United States v. Fernandez*, 443 F.3d 19 (2d Cir. 2006). As delineated in case law, a court must conduct its own evaluation of the § 3553(a) factors and may "reject [after due consideration] the advice of the Guidelines." *Kimbrough v. United States*, 552 U.S. 85, 101 (2007).

Downward departure may be warranted "[i]f reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted." U.S.S.G. § 4A1.3(b)(1). While the "policy statements" highlight that the "in the case of a downward departure, the specific reasons why the applicable criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes". [7]

Here, this submission proceeds with two respectful requests under 18 U.S.C. § 3553(a), whereby Defendant Alam is asking the Court to: (1) grant a downward departure in the guidelines range; or (2) grant a variance sentencing him outside of the applicable guideline range.

There are various separate, discrete, distinct, and compelling reason to deviate or depart from the calculated advisory guidelines in sentencing Alam in this case, such as the following: (1) his criminal history contains minor offenses committed by Alam when he was confused as to who he was; (2) being placed at a criminal history Category III is substantial and sufficient punishment in and of itself; (3) his various personal characteristics including the loss of his relationship with

---

guidelines range" and subject it to a "unitary review for reasonableness, no matter how the district court styles its sentencing decision"); *see also United States v. Brown*, 578 F.3d 221 (3d Cir. 2006) (vacating and remanding where district court failed to distinguish whether above guideline sentence was product of a departure or a variance); *United States v. Miller*, 479 F.3d 984 (8th Cir. 2007) (conflating departure considerations and the variance analysis can be harmless error where the ultimate sentence is not unreasonable).

[7] *See* § 4A1.3(c)(2).

his parents warrants a variance;[8] (4) his ██████████████ warrants a variance[9]; (5) the good in the Defendant's life must be weighed with and can mitigate the bad, and (6) mercy at sentencing in favor of rehabilitation warrants a variance.

**B.  *The Seriousness of the Offense, Respect for the Law, and Just Punishment for the Offense Under § 3553(a)(2).***

Courts have varied under section 3553(a)(2) based on the need to protect the public from further crimes of the defendant by, for example, varying upward due to the defendant's criminal history indicating a likelihood of recidivism or varying downward where the defendant could be deterred from future crimes through means other than imprisonment. *United States v. Grossman*, 513 F.3d 592, 597 (6th Cir. 2008) (holding a downward variance was proper where counseling, treatment, and supervised release reduced the likelihood of recidivism).

A non-guidelines sentence at or below time-served is appropriate and sufficient to reflect the seriousness of the offense of which Mr. Alam was convicted and to promote respect for the law and to provide just punishment.  In fact, a sentence of an overly lengthy incarceration may undercut respect for the law.  *Gall v United States*, 552 U.S. 38, 54 (2007) (highlighting "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing").

---

[8] *See United States v. McBride*, 511 F.3d 1293, 1298 (11th Cir. 2007) (affirming downward variance where the district court found the defendant's history of abuse and abandonment by his parents to be one of the worst it had ever seen).

[9] *United States v. McFarlin*, 535 F.3d 808, 810–12 (8th Cir. 2008) (variance to a sentence of probation was warranted in part based on the defendant's "poor health" and "need for medical care"); *United States v. Myers*, 503 F.3d 676, 687 (8th Cir. 2007) ("The district court did not abuse its discretion in finding that a shorter period of incarceration, with ██████████████ and supervised release, is the most effective sentence.").

**C.** <u>*Adequate Deterrence to Future Criminal Conduct.*</u>

Imposing the minimum or a downward departure in this case, will have little to no bearing on deterrence. Mr. Alam merely seeks a sentence that is just and just under the minimum, that of six-and-a-half years. After a ten-to-thirteen-year sentence, which the government suggests, Alam will be pushing forty years old, where he will no longer even be able to resort to a life a crime. Empirical research shows no relationship between sentence length and deterrence. In a pre-Guideline study of specific deterrence, no difference in deterrence was found as a result of sentence severity, including between probation and imprisonment. *See* ANDREW VON HIRSCH, *et al*., *Criminal Deterrence and Sentence Severity: An Analysis of Recent Research* (1999) (concluding "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance," and that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences generally is capable of enhancing deterrent effects.").

"There is generally no significant association between perceptions of punishment levels and actual levels . . . implying that increases in punishment levels do not routinely reduce crime through general deterrence mechanisms." GARY KLECK, *et al.*, *The Missing Link in General Deterrence Theory*, 43 Criminology 623 (2005).

In addition to the ineffectiveness of imprisonment on deterrence, an over-emphasis on general deterrence poses the ethical problem of punishing one person to promote deterrence of others. "Judicial punishment can never be administered merely as a means for promoting another good either with regard to the criminal himself or to civil society, but must in all cases be imposed only because the individual on whom it is inflicted has committed a crime. For one man ought never to be dealt with merely as a means subservient to the purpose of another." IMMANUEL KANT, *The Science of Right*, 195 (W. Hastie trans., 1790).

General deterrence simply is not a good reason for a lengthy prison term.  With the treatment and support, Alam is sure to turn his life around in the right direction.

### V.   CONCLUSION AND SENTENCING RECOMMENDATION

For the reasons set forth above, it is respectfully prayed that this Court impose upon Alam a term of imprisonment substantially below the advisory guidelines, and we thank you in advance for your consideration.

Dated: August 8, 2024                                    Respectfully Submitted,


                                                        *Steven A. Metcalf, Esq.     /s/*
                                                        _____
                                                        STEVEN A. METCALF II, ESQ.
                                                        **Metcalf & Metcalf, P.C.**
                                                        99 Park Avenue, Suite 810
                                                        New York, NY 10016
                                                        *Office* 646.253.0514
                                                        *Fax* 646.219.2012
                                                        *metcalflawnyc@gmail.com*

                                                        *Attorneys for Defendant Alam*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the instant Motion was served via ECF on the 9th day of August, 2024 under seal, and then to Government counsel of record, separately.

/s/ *Steven A. Metcalf II*

_____

**STEVEN A. METCALF II, ESQ.**